Andrew N. Krinsky (AK 0997)
Linda S. Roth (LR 8255)
**TARTER KRINSKY & DROGIN LLP**
1350 Broadway
New York, New York 10018
(212) 216-8000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
BRUCE M. MEISEL,                              :
                                              :     07 Civ. 11610 (PKL)
                          Plaintiff,          :
                                              :
          -against-                           :
                                              :
MICHAEL GRUNBERG,                             :     **NOTICE OF MOTION**
FANNY GRUNBERG,                               :
and ARIEL GRUNBERG,                           :     Oral Argument Requested
                                              :
                          Defendants.         :
------------------------------------------------------x

**PLEASE TAKE NOTICE** that, upon the Complaint (a copy of which is attached hereto), the Affidavit of Michael Grunberg sworn to February 28, 2008 and exhibits annexed thereto, and upon all prior pleadings and proceedings had herein, defendants Michael Grunberg, Fanny Grunberg and Ariel Grunberg by their attorneys Tarter, Krinsky & Drogin LLP, will move before the Honorable Peter K. Leisure at the United States Courthouse, 500 Pearl Street, New York, New York, at a time to be fixed by the Court, for an order pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Complaint for failure to state a claim and for such other and further relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that in support of this motion, defendants shall rely upon Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint for Failure to State a Claim.

Dated: New York, New York
February 29, 2008

                                             Respectfully submitted,

                                             TARTER KRINSKY & DROGIN LLP
                                             *Attorneys for Defendants*

By: _____
                                             Andrew N. Krinsky (AK 0997)
                                             Linda S. Roth (LR 8255)
                                             1350 Broadway
                                             New York, NY 10018
                                             (212) 216-8000

To:    ROSENBERG & GIGER P.C.
        488 Madison Avenue
        New York, New York 10022
        (212) 705-4824

        Attorney for Plaintiffs

DOC # 1

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

07 CV 11610

| | |
|---|---|
| BRUCE M. MEISEL,<br>　　　　　　　　　Plaintiff,<br><br>　against<br><br>MICHAEL GRUNBERG,<br>FANNY GRUNBERG,<br>and ARIEL GRUNBERG,<br><br>　　　　　　　　　Defendants. | C.A. No.<br><br>**COMPLAINT AND<br>JURY DEMAND** |



Plaintiff Bruce Meisel, by and through his attorneys, Rosenberg & Giger P.C., as and for his Complaint against defendants Michael Grunberg ("M. Grunberg"), Ariel Grunberg ("A. Grunberg") and Fanny Grunberg ("F. Grunberg"), alleges as follows:

### NATURE OF THE ACTION

1. This action arises from the purchase (the "Buy-Out") by defendants Michael and Ariel Grunberg (jointly, the "Purchasers") of plaintiff Bruce M. Meisel's 30% interest in a New York general partnership known as 15 and 19 West 55th Street Realty Company (the "Partnership"). Acting on behalf of and in concert with F. Grunberg, Mr. Meisel's erstwhile partner in the Partnership and the Purchasers' mother, the Purchasers fraudulently induced Mr. Meisel to sell his minority interest in the Partnership through false and misleading representations and omissions of material facts specifically intended to pressure Mr. Meisel into selling at a price that substantially undervalued the Partnership's only assets, two adjacent buildings located at 15 and 19 West 55th Street, New York, New York (the "Properties").

2. As detailed below, defendants' misrepresentations and omissions in connection with the Buy-Out included, without limitation: (a) representing to plaintiff during the parties'

Buy-Out discussions that defendants would never sell the Properties when, in fact, defendants harbored undisclosed plans to market and offer the Properties for sale; (b) supplying plaintiff with purposefully misleading and incomplete financial information that significantly undervalued the Properties and Mr. Meisel's Partnership interest, including a misleading third-party appraisal of the Properties; (c) failing to disclose defendants' plans to renovate and improve the Properties; and (d) misrepresenting certain facts in order to place unfounded pressure on Mr. Meisel by manufacturing a false sense of urgency to the negotiation and closing of the Buy-Out.

3. Through these actions, and others detailed below, defendants committed fraud and breached their fiduciary duties to Mr. Meisel, causing him significant damage.

4. Despite their previous assurances that they would not sell the Properties, within ninety days of fraudulently inducing Mr. Meisel to part with his interest in the Partnership, defendants advertised the properties for sale at a price that was more than double the false and misleading valuation of the Properties contained in the third-party appraisal that defendants presented to Mr. Meisel to persuade him to enter into the Buy-Out transaction.

5. Eventually, defendants sold the Properties to a third party, without Mr. Meisel's participation, for an amount that was twice that used as the basis for the pricing of Mr. Meisel's 30% Partnership interest in connection with the Buy-Out. Specifically, while Mr. Meisel received $7.8 million for his 30% interest (corresponding to a value of $26 million for the Properties), defendants ultimately sold the Properties for $52 million.

6. Through this action, Mr. Meisel seeks to recover, <u>inter alia</u>, his rightful portion of the sales proceeds, of which he was deprived as a direct result of defendants' inducement of the Buy-Out through fraud, breaches of fiduciary duty and other defalcations.

## PARTIES

7. Plaintiff Bruce M. Meisel is a citizen and resident of the State of New Jersey. From 1976 through July 22, 2005, Mr. Meisel was a partner in the Partnership.

8. Defendant F. Grunberg is a citizen and resident of the State of New York. Ms. Grunberg was a general partner of the Partnership at all times from the formation of the Partnership through the Buy-Out.

9. Defendant M. Grunberg is a citizen and resident of the State of Connecticut. He is F. Grunberg's son. In or about 2000, M. Grunberg began to manage the day-to-day affairs of the Partnership on behalf of F. Grunberg and as her agent.

10. Defendant A. Grunberg is a citizen and resident of the State of New York. He is F. Grunberg's son. On July 22, 2005, M. Grunberg and A. Grunberg acquired Mr. Meisel's 30% interest in the Partnership.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, in that this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12. Venue is proper in this judicial district, inter alia, pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

### The Partnership Agreement and Mr. Meisel's Thirty Percent (30%) Interest

13. In or about September of 1976, Mr. Meisel entered into a written partnership agreement with F. Grunberg and her late husband, Zvi Grunberg, establishing the Partnership (the "Partnership Agreement").

14. The Partnership Agreement states that the "purpose" of the Partnership, inter alia, is "to acquire, improve, manage and operate two (2) apartment house buildings," i.e., the Properties.

15. Since its formation, the Partnership's only assets have been the Properties.

16. Pursuant to the Partnership Agreement, the term of the Partnership was to run through December 31, 2025, but would terminate prior to that date upon, inter alia, the "sale or exchange of all or substantially all of the Partnership property by the Partnership" or the "withdrawal . . . of all the partners."

17. Following execution of the Partnership Agreement, Mr. Meisel owned a 30% interest in the Partnership, and F. Grunberg and Zvi Grunberg each owned a 35% interest. In or about 1991, prior to the events giving rise to Mr. Meisel's claims asserted herein, Zvi Grunberg died, and F. Grunberg succeeded to his 35% interest, increasing F. Grunberg's interest in the Partnership to 70%. F. Grunberg held this 70% interest at all times from the death of Zvi Grunberg through and including the closing of the Buy-Out.

18. The Partnership Agreement provided that the "business and affairs of the Partnership shall be managed by Fanny and Zvi subject to and in accordance with the provisions" of the Agreement. F. Grunberg succeeded to her husband's management responsibilities under the Partnership Agreement upon his death.

19. Under the Partnership Agreement, F. Grunberg's management responsibilities included "devot[ing] so much of [her] time as may be reasonably necessary to manage the activities and business affairs of the Partnership," including the following:

> (a) to "inspect" each of the Properties;
>
> (b) "to make all capital improvements, repairs and replacements as may be necessary or advisable to cause each of the [Properties] to be maintained as a first class apartment building";
>
> (c) to prepare and furnish "all reports of operations" to the partners and other interested parties; and
>
> (d) "to use their best efforts to dispose of vacant space."

20. Notwithstanding F. Grunberg's day-to-day management responsibilities, the Partnership Agreement explicitly required "the prior written consent of all the Partners" for the Partnership to take certain significant actions, including (a) to "sell, exchange, lease or otherwise dispose of any of" the Properties, or (b) to "make repairs, alterations or capital improvements [to the Properties] which for any one item shall exceed $10,000 or which in any fiscal year of the Partnership shall in the aggregate exceed $60,000."

21. Pursuant to the Partnership Agreement, none of the partners could "sell, transfer, assign or encumber his or her interest in the Partnership in whole or in part without the written consent of all of the other Partners."

**Negotiation of the Buy-Out**

22. After the entry of a state-court judgment in 2002 resolving the certain disputes that had arisen between the parties, new disputes arose between defendants, on the one hand, and Mr. Meisel, on the other hand, concerning the Partnership and the Properties.

23. One of these disputes focused on defendants' failure to fully utilize the Properties, thereby reducing the value of the Properties and decreasing Partnership profits. During this

period of time, and at all times leading up to the Buy-Out, there were numerous vacant apartments in the Properties in need of renovation and others rented at well below market rates, including two apartment units rented to defendant F. Grunberg for significantly reduced rent. As a result, the Properties generated substantially less rental income than could have been realized if all of the apartments were occupied by tenants paying market rents.

24. Mr. Meisel advocated to M. Grunberg and F. Grunberg that the Partnership undertake various alternative actions designed to maximize the value of the Properties and the financial returns to the Partnership.

25. In particular, Mr. Meisel recommended the following steps, among others:

> (a) renovating apartments and undertaking other physical improvements to the Properties;
>
> (b) undertaking necessary steps to rent the significant number of vacant apartments in the Properties; and/or
>
> (c) converting the Properties to condominium buildings in order to take advantage of a bullish condominium market.

26. F. Grunberg and M. Grunberg refused to take any of the steps proposed by Mr. Meisel to improve the value of the Properties and the profits of the Partnership. Pursuant to the Partnership Agreement, Mr. Meisel was unable to take any of those steps without F. Grunberg's consent.

27. In or about 2005, in light of the years of disputes among the partners to the Partnership, M. Grunberg and Mr. Meisel entered into discussions concerning various possible approaches to the winding up of the Partnership.

28. At all times during these discussions and the ensuing negotiations, M. Grunberg acted on behalf of, and as an agent for, F. Grunberg and A. Grunberg.

29. During the course of the parties' continuing discussions, Mr. Meisel made several proposals to M. Grunberg concerning the winding up or restructuring of the Partnership, including, inter alia, (a) the sale of the Properties or (b) the purchase by one partner of the other's Partnership interest.

30. In e-mail correspondence to Mr. Meisel dated April 1, 2005, M. Grunberg represented unequivocally, as he did on numerous prior and subsequent occasions, that the Grunbergs would not sell the Properties, writing that "[t]he buildings are not for sale." Concomitantly, Mr. Grunberg represented to Mr. Meisel that the Grunbergs would not part with their interest in the Partnership in any manner, assuring Mr. Meisel that "we [i.e., the Grunbergs] are not sellers."

31. Defendants also failed to accept any of Mr. Meisel's proposals for improving the Properties and otherwise increasing the value of the Partnership.

32. Defendants refused to consider any option for winding up the Partnership other than their purchase of Mr. Meisel's 30% interest.

33. In negotiating the Buy-Out of Mr. Meisel's interest, M. Grunberg commissioned an "Opinion of Value" prepared by Massey Knakal Realty Services (the "Opinion"). In the context of the parties' negotiations, M. Grunberg provided this Opinion to Mr. Meisel in March of 2007 and repeatedly used that document, and the valuation contained therein, in his negotiations with Mr. Meisel concerning the appropriate price for Mr. Meisel's 30% interest in the Partnership.

34. The Opinion identifies the "gross annual income" ("GAI") of the Properties, derived entirely from rental income, as $2,085,828. Subtracting "estimated" expenses of $1,140,494, the Opinion calculates annual "net operating income" ("NOI") at $945,333.

35. By applying various formulas to the GAI and NOI, the Opinion represents the value of the Properties to be between $22,375,000 and $33,375,000, depending on which valuation method is employed.

36. On information and belief, defendants provided Massey Knakal with the revenue data and other financial information that Massey Knakal used to calculate the GAI and NOI figures identified above.

37. As detailed below, when – almost immediately following the Buy-Out – defendants offered the Properties for sale, the GAI and NOI figures set forth in defendants' offer, also put forward through and with the assistance of Massey Knakal, were materially higher than those defendants provided to Mr. Meisel during the parties' negotiations.

38. During his negotiations with M. Grunberg, Mr. Meisel advised M. Grunberg that Mr. Meisel intended to obtain another third-party assessment of the fair market value of the Properties. Yet, despite M. Grunberg's own endorsement of and reliance upon such an assessment (i.e., the Massey Knakal Opinion), he reacted vehemently to, and intentionally interfered with, Mr. Meisel's efforts to have a similar valuation prepared.

39. In this regard, Mr. Meisel solicited an offer to purchase the Properties from the well-known and reputable New York real estate firm Grubb & Ellis. Rather than take this information into account in determining the Buy-Out price, M. Grunberg expressed outrage, describing the offer as an "intrusion" into and "hurtful meddling" with the parties' negotiations.

40. In fact, M. Grunberg went so far as to send an e-mail to Grubb & Ellis on April 1, 2005, which was intended to, and did, derail the offer (including by threatening Grubb & Ellis with legal action) and prevent Mr. Meisel from obtaining any further offers on the Properties. In this regard, M. Grunberg wrote "I wish to be provided a list of all persons whom your firm has

made overtures to and ask that you issue a letter to each stating that these properties were not on the market nor have they been on the market for decades."

**Defendants' Manufacture of False Urgency**

41.   M. Grunberg also made certain representations and engaged in tactics during his negotiations with Mr. Meisel that were designed to create a false sense of urgency to the negotiations.

42.   On March 21, 2005, M. Grunberg informed Mr. Meisel by e-mail that Mr. Grunberg had recently signed a contract to sell another property and had therefore come into liquid funds. According to M. Grunberg, these events may "offer us both an opportunity to resolve our differences (by buying you out)."

43.   In particular, M. Grunberg stressed that he had a "1031 issue looming" with respect to the sale proceeds for the other property (the "1031 Exchange Funds"), meaning that he would have only a certain period of time under the Internal Revenue Code before he was required to roll those funds into a "like-kind exchange" in order to avoid paying capital gains taxes on the proceeds. According to M. Grunberg, this gave rise to a "window of opportunity [that] has just opened and may last only days."

44.   During the negotiation of the Buy-Out, M. Grunberg repeatedly referenced the "1031 opportunity" that purportedly would permit him to purchase Mr. Meisel's interest for only a limited period of time.

45.   Through these communications, M. Grunberg represented, in effect, that defendants lacked liquid assets other then the newly acquired 1031 Exchange Funds with which to purchase Mr. Meisel's interest in the Partnership. As Mr. Meisel learned later – albeit only

after he entered into a letter agreement with defendants to sell his Partnership interest, M. Grunberg's representations were false.

46. In a further effort to increase the pressure on Mr. Meisel, M. Grunberg also simultaneously reminded Mr. Meisel that his options were quite limited under the Partnership Agreement, in that (a) Mr. Meisel had no independent ability to take the profit maximizing steps that he had suggested to the Partnership; (b) Mr. Meisel could not sell the Properties, or even his Partnership interest, to anyone but defendants without F. Grunberg's consent; and (c) F. Grunberg would not consent to such a transfer and would not authorize the sale of the Properties.

47. In this regard, M. Grunberg advised Mr. Meisel via e-mail on April 12, 2005, that: "You own a 30% interest that you do not control or manage and you can't sell to anyone but us." Mr. Grunberg added: "This opportunity now is like fruit, don't let it spoil."

48. Similarly, in a May 20, 2005 e-mail to Mr. Meisel's counsel, M. Grunberg stressed that "whatever the future holds, the majority interest [i.e., the Grunbergs] will determine how the business is managed."

**The Buy-Out Agreement**

49. After months of negotiations, Mr. Meisel ultimately agreed to sell his interest to Purchasers for $7.8 million.

50. In reaching this decision, Mr. Meisel relied, inter alia, on (1) the Opinion and the representations set forth therein, including the GAI and NOI figures and the valuation of the Properties set forth in the Opinion; (2) defendants' repeated representation that they did not intend to sell, and would not authorize the sale of the Properties; (3) defendants' steadfast refusal to convert the Properties to condominiums, undertake necessary renovations, lease vacant apartments, sell the Properties or take any other steps suggested by Mr. Meisel to maximize the

10

investment returns on the Properties; (4) Mr. Meisel's inability under the Partnership agreement to force defendants to pursue the aforementioned profit-maximizing steps; (5) Mr. Meisel's inability under the Partnership agreement to sell his 30% interest to a third party without the consent of F. Grunberg, which was not forthcoming; and (6) the supposedly short "window of opportunity" arising from defendants' representation that the only source of funding for the Buy-Out was the 1031 Exchange Funds, which would be available for only a short period of time.

51.  On June 23, 2005, Mr. Meisel signed a letter agreement with M. Grunberg and the Partnership (the "Letter Agreement"), in which M. Grunberg "agreed to buy from Meisel, all of Meisel's thirty percent (30%) interest in the Partnership for the sum of $7.8 Million Dollars."

52.  At the time of the Buy-Out, the Properties were wholly owned by the Partnership, were the only assets of the Partnership and were unencumbered by a mortgage or other debt. Therefore, the $7.8 million purchase price for Mr. Meisel's 30% interest in the Partnership corresponds to, and was predicated upon, a valuation of $26 million for the Properties (the "Buy-Out Valuation"). The Buy-Out Valuation fell well within the range of values of the Properties represented in the Opinion.

53.  Shortly after Mr. Meisel had executed the Letter Agreement, defendants retreated from their previous representations concerning the purportedly short-lived "1031 opportunity." On July 11, 2005, defendants' attorney wrote to Mr. Meisel: "It would appear that [my] clients have another use for the 1031 Exchange funds which, if they were to use it for Mr. Meisel's interest, would only unnecessarily complicate things here." Thus, despite their prior representations, the Purchasers did have access to funds other than the 1031 Exchange Funds with which to purchase Mr. Meisel's Partnership interest.

54.  The "1031 opportunity" asserted by M. Grunberg was a sham invented by defendants to create a false sense of urgency and to induce Mr. Meisel to sign the Letter Agreement and thereby accept defendants' proposed price for the Buy-Out.

55.  On July 22, 2005, as contemplated by the Letter Agreement, Mr. Meisel signed a long-form agreement entitled "Purchase, Assignment & Assumption of Partnership" (the "Buy-Out Agreement"), in which he agreed to sell his 30% interest to the Purchasers for $7.8 million.

56.  The Buy-Out Agreement was executed by both Purchasers—i.e., M. Grunberg and A. Grunberg. F. Grunberg "consented to" and signed the Buy-Out Agreement "individually and as General Partner of 15 and 19 West 55th Street Realty Company."

**The Grunbergs' Sale of the Properties**

57.  Contrary to their prior and repeated representations to Mr. Meisel – made in order to induce Mr. Meisel to enter into the Buy-Out Agreement – on October 21, 2005, only ninety days after the Buy-Out, the defendants offered the Properties for sale through Massey Knakal. The asking price was $64,000,000, almost two-and-a-half times the Buy-Out Valuation and significantly higher than the Opinion prepared by Massey Knakal and provided to Mr. Meisel by defendants during the Buy-Out negotiations.

58.  On information and belief, defendants intended to offer the Properties for sale during the entire period in which they engaged in negotiations with Mr. Meisel. During those negotiations, defendants misrepresented to Mr. Meisel that they would not sell the properties, as set forth in paragraph 30 above, in an effort to induce him to sell his 30% Partnership interest to them.

59.  The offering materials prepared by Massey Knakal on behalf of defendants to promote the sale of the Properties contain substantially higher GAI and NOI figures than in the

pre-Buy-Out Opinion and include an asking price approximately 250% higher than the value of the Properties represented to Mr. Meisel during the parties' negotiations. Those offering materials identify "projected" GAI of $2,678,085 (as compared to $2,085,828 in the Opinion) and "projected" annual NOI of $1,410,712 (as compared to $945,333 in the Opinion). These higher income figures were not provided to Mr. Meisel by defendants prior to or at the time of the Buy-Out.

60. Despite defendants' prior representation to Mr. Meisel that they would not undertake any significant renovations of the Properties, defendants' offering materials through Massey Knakal state that "plans are in place to combine the lobbies and add additional retail space." On information and belief, these plans existed at the time of the Buy-Out, but defendants purposefully failed to disclose them to Mr. Meisel.

61. Despite defendants' prior representation that they would not, as Mr. Meisel's suggested, convert the Property to condominiums as a means of maximizing the value of the Properties, defendants' offering materials through Massey Knakal tout the buildings as "PERFECT FOR CONVERSION!!!"

62. Defendants ultimately sold the Properties, without Mr. Meisel's participation, for $52,000,000, double the amount of the Buy-Out Valuation.

## COUNT I
### Breach of Fiduciary Duty

63. Plaintiff incorporates by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth in this paragraph.

64. As Mr. Meisel's partner in a New York general partnership, defendant F. Grunberg owed Mr. Meisel a fiduciary duty of utmost fairness and honesty in all transactions

13

relating to the Partnership. Defendants M. Grunberg and A. Grunberg, acting in their capacity as agents for F. Grunberg, the general partner, also owed a strict fiduciary duty to Mr. Meisel.

65.    Defendants' fiduciary duties to Mr. Meisel included obligations (1) to provide Mr. Meisel with any and all information in their possession that could reasonably bear on his consideration of their offer to buy his 30% interest in the Partnership; and (2) to refrain from misrepresenting any facts or circumstances that could reasonably bear on Mr. Meisel's consideration of that offer.

66.    Defendants breached their fiduciary duties to Mr. Meisel through the planning and implementation of their scheme, described in detail above, through which they pressured, induced and defrauded Mr. Meisel into selling his 30% interest in the Partnership at a below market price so that they could profit on his interest from the undisclosed subsequent sale of the Properties to a third party.

67.    In particular, in connection with and in furtherance of their scheme, defendants breached their fiduciary duties to Mr. Meisel through the following actions, without limitation:

   a. by representing that they were "not sellers" and would not sell the Properties, or their interests therein, and by failing to disclose their intention to do just that following the closing of the Buy-Out;

   b. by providing to Mr. Meisel and endorsing the Opinion, which significantly undervalues the Properties and misrepresents the GAI and NOI figures applicable to a proper valuation of the Partnership;

   c. by failing to disclose to Mr. Meisel the higher "projected" GAI and NOI figures incorporated into Massey Knakal's offering materials for the sale of the Properties;

   d. by failing to disclose to Mr. Meisel their plans for renovation and improvement of the Properties, including their plans to combine the lobbies and add additional retail space;

   e. by rejecting Mr. Meisel's proposal to convert the Properties to condominiums while failing to disclose their belief that the Properties were "perfect for conversion";

    f. by interfering with Mr. Meisel's attempts to ascertain the fair market value of the Properties through solicitation of offers from Grubb & Ellis and other market participants;

    g. by unreasonably withholding permission for Mr. Meisel to attempt to sell his Partnership interest at a fair market price to a third party; and

    h. by falsely representing that the only funds available to purchase Mr. Meisel's interest consisted of the 1031 Exchange Funds and that, as a result, there was only a finite "window of opportunity" to close the Buy-Out.

68. By virtue of defendants' breaches of fiduciary duties, plaintiff has suffered significant monetary damages in an amount to be determined at trial.

## COUNT II
## Fraud

69. Plaintiff incorporates by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth in this paragraph.

70. As set forth above, defendants knowingly and intentionally made the following misrepresentations of fact to Mr. Meisel prior to and in connection with the Buy-Out:

    a. that they had no intention to, and would not, sell the Properties or their interest therein;

    b. that the Properties were worth between $22,375,000 and $33,375,000 in March of 2005; and

    c. that the only monies available to fund the Buy-Out were the newly acquired 1031 Exchange Funds and that, as a result, there was only an extremely limited "window of opportunity" to close the Buy-Out.

71. Plaintiff reasonably relied on defendants' misrepresentations in agreeing to sell his Partnership interest for $7.8 million.

72. In addition, defendants knowingly and intentionally failed to disclose the following material facts to Mr. Meisel prior to and in connection with the Buy-Out:

    a. that they knew the Properties were worth significantly more than the Buy-Out Valuation;

b. that they intended to place the Properties on the market for an asking price significantly higher than the Buy-Out Valuation shortly after closing the Buy-Out;

c. that actual and accurate GAI and NOI figures for the Partnership were materially higher than the equivalent figures provided to Mr. Meisel through the Opinion in connection with the Buy-Out; and

d. that they had plans in place to undertake material renovations to the Properties, including the combination of the lobbies and the addition of retail space.

73. If defendants had disclosed any of foregoing facts to plaintiff, he would not have sold his 30% interest in the Partnership to Purchasers for $7.8 million.

74. Defendants intended through the aforementioned misrepresentations and omissions of material fact to induce, and they did thereby induce, plaintiff to sell his interest in the Partnership for $7.8 million.

75. By virtue of his reasonable reliance on defendants' misrepresentations, plaintiff has been damaged in an amount to be determined at trial.

## COUNT III
### Negligent Misrepresentation

76. Plaintiff incorporates by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth in this paragraph.

77. In the alternative, defendants made the misrepresentations and material omissions set forth in paragraphs 70 and 72, above, negligently and with reckless disregard for the truth.

78. Plaintiff reasonably relied on the negligent misrepresentations of defendants in agreeing to sell his 30% interest in the Partnership for $7.8 million.

79. In addition, if defendants had disclosed any of their negligently omitted facts to plaintiff, he would not have sold his 30% interest in the Partnership to Purchasers for $7.8 million.

80.   By virtue of his reasonable reliance on defendants' negligent misrepresentations and omissions, plaintiff has been damaged in an amount to be determined at trial.

## PRAYERS FOR RELIEF

WHEREFORE, based upon the foregoing allegations and averments, plaintiff Bruce M. Meisel, respectfully demands judgment against all defendants:

A.   Awarding plaintiff compensatory damages in an amount to be determined at trial, including (1) the amount lost by Mr. Meisel as a result of his exclusion from defendants' sale of the Properties following the Buy-Out; (2) all costs incurred by plaintiff in connection with the negotiation and execution of the Buy-Out; and (3) any other damages proximately caused by defendants' breaches of fiduciary duty, fraud and other defalcations.

B.   Awarding plaintiff punitive damages in an amount to be determined at trial.

C.   Awarding plaintiff his attorney's fees and costs incurred in connection with this action.

D.   Granting such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues and claims so triable.

Dated:   December 27, 2007
         New York, New York

                                    ROSENBERG & GIGER P.C.

                                    By: _____
                                        Matthew H. Giger (MG3731)
                                        John J. Rosenberg (RG1206)
                                    488 Madison Avenue, 10th Floor
                                    New York, NY 10022
                                    Tel (212) 705-4824
                                    Fax (212) 593-9175

                                    *Attorneys for Plaintiff*