UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BRUCE M. MEISEL,

                               Plaintiff,

                     -against-

MICHAEL GRUNBERG,
FANNY GRUNBERG,
and ARIEL GRUNBERG,

                             Defendants.
-------------------------------------------------------x

07 Civ. 11610 (PKL)

## DEFENDANTS' MEMORANDMUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*
Andrew N. Krinsky (AK 0997)
Linda S. Roth (LR 8255)
1350 Broadway
New York, New York 10018
(212) 216-8000

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................... 1

PLAINTIFF'S CLAIMS............................................................................................................. 2

ARGUMENT.............................................................................................................................. 3

POINT I –    PLAINTIFF HAS FAILED TO PLEAD FRAUD AGAINST
             FANNY AND ARIEL WITH SUFFICIENT PARTICULARITY .................. 4

POINT II –   PLAINTIFF'S FRAUD AND MISREPRESENTATION CLAIMS
             ARE BARRED BY THE ABSENC EOF JUSTIFIABLE RELIANCE ................... 6

POINT III –  PLAINTIFF KNEW BEFORE HE SOLD HIS PARTNERSHIP
             INTEREST THAT 1031 LIKE-KIND EXCHANGE MONIES
             WOULD NOT BE USED TO FUND THE PURCHASE......................................... 11

POINT IV –   PLAINTIFF'S ALLEGATIONS OF FUTURE INTENTIONS WILL
             NOT SUPPORT HIS CLAIMS OF FRAUD OR NEGLIGENT
             MISREPRESENTATIONS .................................................................................... 12

POINT V –    PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM
             IS BARRED BECAUSE THERE IS NO SPECIAL RELATIONSHIP
             BETWEEN PLAITNIFF AND DEFENDANTS .................................................... 13

POINT VI –   DEFENDANTS DID NOT OWE A FIDUCIARY DUTY TO PLAINTIFF
             IN CONNECTION WITH THE SALE OF PLAINTIFF'S
             PARTNERSHIP INTEREST .................................................................................. 14

CONCLUSION ............................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases:**

Abrahami v. UPC Constr. Co., Inc., 224 A.D.2d 231, 638 N.Y.S.2d 11 (1st Dep't 1996)................9

Ackerman v. Price Waterhouse, 252 A.D.2d 179, 683 N.Y.S.2d 179 (1st Dep't 1998)....................6

Adler v. Berg Harman Associates, 790 F.Supp. 1222 (S.D.N.Y. 1992) ..........................................4

Andes v. LeRoy Adventures, Inc., 201 A.D.2d 262, 607 N.Y.S.2d 261 (1st Dep't 1994) ................13

Banque Franco-Hellenique de Commerce Intl. et Maritime, S.A. v. Chrisophides,
106 F.3d 22 (2d Cir. 1997) ...............................................................................................................9

Bell Atlantic Corp. v. Twonbly, ___ U.S. ___, 127 S.Ct. 1955 (May 2, 2007) ..........................3

Beneficial Commerical Corp. v. Murray Glick Datsun, Inc., 601 F.Supp. 770
(S.D.N.Y. 1985)..............................................................................................................................15

Boley v. Pinelock Assoc., Ltd., 700 F.Supp. 673 (S.D.N.Y. 1988) .................................................14

Delcor Laboratories, Inc. v. Cosmair, Inc., 169 A.D.2d 639, 564 N.Y.S.2d 771 (1st Dep't 1991)...13

DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242 (2d Cir. 1987)..........................4

Ernst Iron Works, Inc. v. Duralith Corp., 270 N.Y. 165, 200 N.E. 683 (1936) ..............................6

Flickinger v. Harold C. Brown & Co., 947 F.2d 595 (2d Cir. 1991) .............................................14

Ford v. Unity Hospital, 32 N.Y.2d, 346 N.Y.S.2d 238, 299 N.E.2d 659 (1973) .............................6

Global Minerals and Metals Corp. v. Holme, 35 A.D.3d 93, 825 N.Y.S.2d 210
(1st Dep't 2006)..........................................................................................................................9, 10

In re Ames Dep't Stores, Inc., 274 B.R. 600 (Bkrtcy. S.D.N.Y. 2002) ..........................................15

In re Drexal Burnham Lambert Group, Inc., 113 B.R. 830 (Bankr. S.D.N.Y. 1990) ....................15

In re Leslie Fay Cos., Inc. Securities Litig., 918 F.Supp. 749 (S.D.N.Y. 1996) ..............................4

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007).....................................................................................3

Keywell Corp. v. Weinstein, 33 F.3d 159 (2d Cir. 1994) .................................................................9

Kirk/Marsland Advertising, Inc. v. Cunard Line Limited, 188 A.D.2d 440, 591 N.Y.S.2d 1013 (1st Dep't 1992)..................................................................................................................12

Lama Holding Company v. Smith Barney, 88 N.Y.2d, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) .........................................................................................................6

Luce v. Edelstein, 802 F.d 49 (2d Cir. 1986) ...........................................................................4, 5

McGarry v. Miller, 158 A.D.2d 327, 550 N.Y.S.2d 896 (1st Dep't 1990) ....................................6

Petrello v. White, 412 F.Supp.2d 215 (E.D.N.Y. 2006)..............................................................10

Rodas v. Manitaras, 159 A.D.2d 341, 552 N.Y.S.2d 618 (1st Dep't 1990)..................................10

Shea v. Hambro, 244 A.D.2d 39, 673 N.Y.S.2d 369 (1st Dep't 1998)...........................................8

Somin v. Total Community Mgmt. Corp., 494 F.Supp.2d 153 (E.D.N.Y. 2007) ............................5

Suthers v. Amgen, Inc.. 372 F.Supp.2d 416 (S.D.N.Y. 2005) .....................................................14

Town of Irondeqoit v. Johnson, 231 A.D. 264, 247 N.Y.S. 581 (4th Dep't 1931) ..........................6

U.S. West Financial Services, Inc. v. Tollman, 786 F.Supp. 333 (S.D.N.Y. 1992)........................12

**Rules:**

Fed. R. Civ. P. (9).....................................................................................................................3, 4

Fed. R. Civ. P. 12(b)(6) ................................................................................................................3

**Misc.:**

2A C.J.S. Agency § 218 ...............................................................................................................5

## DEFENDANTS' MEMORANDMUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

### Preliminary Statement

Defendants Michael Grunberg ("Michael"), Fanny Grunberg ("Fanny") and Ariel Grunberg ("Ariel") submit this memorandum of law in support of their motion to dismiss the Complaint herein for failure to state a claim. Plaintiff, Bruce Meisel ("Bruce"), suddenly unhappy with the $7.8 million price at which he sold his minority interest in a real estate partnership, alleges that defendants Michael, Fanny and Ariel are guilty of fraud, negligent misrepresentation and breach of fiduciary duty in connection with the sale. Bruce, however, is unable to state any legally cognizable claim against defendants. As pled in the Complaint, the sale of Bruce's partnership interest was an arms length business transaction between educated and sophisticated real estate businessmen. Bruce cannot now, more than two years after the fact, attempt to renegotiate the terms of that transaction by asserting baseless claims.

While the Complaint reveals Bruce's obvious frustration with his position as the minority partner in a real estate partnership – who was unable to make any decisions about management of the partnership or operation of the apartment buildings owned by the partnership – it entirely fails to describe any intentionally improper or even negligent conduct by defendants. After years of fighting and litigating about the partnership with both Fanny – who owned the majority interest in the partnership – and her sons Michael and Ariel, Bruce opted to sell his partnership interest to Michael and Ariel in exchange for $7.8 million dollars and an opportunity to leave his frustrations behind. Although Bruce gladly took his money, he has now opted to continue his battle with the Grunbergs

1

by commencing yet another lawsuit. Bruce's new claims, like the claims he previously asserted against Fanny, cannot be sustained and should be dismissed.

## Plaintiff's Claims

Solely for purposes of this motion, defendants assume the truth of the allegations set forth in plaintiff's Complaint. Nothing contained herein, however, should be construed as an admission by defendants of any of plaintiff's allegations.

In August 2005, Bruce sold his 30% minority interest in a real estate partnership known as 15 and 19 West 55th Street Realty Company (the "Partnership") to Michael and his brother Ariel. (Cplt.¶ 10). At the time Bruce sold his minority interest, Fanny owned a 70% majority interest in the Partnership and any sale by Bruce was subject to Fanny's approval. (Cplt. ¶¶ 17, 21). Until the sale, neither Michael nor Ariel owned any interest in the Partnership.

Although Bruce acknowledges that he was paid $7.8 million for his interest, he now claims that he set the purchase price too low because of false statements made to him by Michael. (Cplt ¶¶ 2, 5-6). Bruce claims that Michael:

► gave him an inaccurate valuation of Partnership assets (namely two adjacent apartment buildings) in the range of $22,375,000 and $33,375,000;

► falsely told him that it was a good time for defendants to buy Bruce's Partnership interest because they were looking to make a 1031 like-kind exchange in order to avoid capital gains taxes; and

► falsely told Bruce that the apartment buildings owned by the Partnership would not be renovated, sold or turned into condominiums.

(Cplt ¶ 70).

Conversely, plaintiff maintains that Michael failed to disclose:

► his knowledge that the apartment buildings owned by the Partnership were worth more than the valuation provided to plaintiff;

2

▶ defendants' intent to place the apartment buildings on the market for an asking price higher than the valuation provided to plaintiff;

▶ that the gross annual income ("GAI") and net operating income ("NOI") figures for the Partnership upon which the purchase price was based were not accurate; and

▶ defendants' plans to renovate the apartment buildings.

(Cptl. ¶72).

In January 2007, more than two years after the sale of his Partnership interest, Bruce filed the instant Complaint purporting to assert claims against Michael, Fanny and Ariel collectively for fraud, negligent misrepresentation and breach of fiduciary duty.

## Argument

When a plaintiff fails to plead sufficient facts to state a claim for relief that is plausible on its face, the complaint should be dismissed in its entirety. ***Bell Atlantic Corp. v. Twombly***, ___U.S. ___, 127 S.Ct. 1955 (May 21, 2007) (articulating new standard for motion to dismiss); *see* Fed. R. Civ. P. 12(b)(6). As recently noted by the Second Circuit, claims should be dismissed at the pleading stage of a lawsuit when plaintiff is unable to "amplify a claim with some factual allegations . . . where such amplification is needed to render the claim *plausible*." ***Iqbal v. Hasty***, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). Plaintiff's allegations must state a right to relief that is above the level of speculation. Here, whether plaintiff characterizes his claim as one for fraud, negligent misrepresentation or breach of fiduciary duty, his insistence that he was damaged by the very people who paid him handsomely for his Partnership interest and by their elderly mother with whom plaintiff had no contact simply is not plausible.

## POINT I

### PLAINTIFF HAS FAILED TO PLEAD FRAUD AGAINST FANNY AND ARIEL WITH SUFFICIENT PARTICULARITY

Fed. R. Civ. P. 9(b) requires that fraud and negligent misrepresentation be pleaded with particularity. At a minimum, this means that the allegedly false representations must be spelled out (i.e., who said what, to whom, when and plaintiff's reliance thereon) and, with respect to fraud, a factual basis for inferring scienter. *Luce v. Edelstein*, 802 F. d 49, 54 (2d Cir. 1986); *In re Leslie Fay Cos.,, Inc. Securities Litig.*, 918 F. Supp. 749, 767 (S.D.N.Y. 1996). Moreover, if a complaint purports to allege fraud or misrepresentation against multiple defendants, the complaint must inform each defendant of the nature of his participation in the fraud or negligence. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F. 2d 1242, 1247 (2d Cir. 1987); *Adler v. Berg Harman Associates*, 790 F. Supp. 1222, 1227 (S.D.N.Y. 1992).

The Complaint is completely devoid of allegations regarding misrepresentations or omissions purportedly made by defendants Ariel and Fanny. The pleadings allege only that in or about 2005 plaintiff and <u>Michael</u>, "entered into discussions concerning various possible approaches to the winding up of the Partnership" (Cplt. ¶27) and goes on to set forth the misrepresentations and omissions Michael purportedly made regarding the value of plaintiff's Partnership interest, the 1031 like-kind exchange and plans to renovate and sell the apartment buildings owned by the Partnership. Nowhere in the Complaint is there a single allegation that defendants Ariel or Fanny ever spoke to or otherwise communicated with plaintiff about the subjects which form the basis of plaintiff's Complaint. Representations attributed to "defendants" collectively are not sufficient to

4

satisfy the requirements of Rule 9(b). *Luce v. Edelstein*, 802 F. 2d 49, 54 (2d Cir. 1986).

Moreover, plaintiff's convenient allegation that Michael "acted on behalf of, and as an agent for" Ariel and Fanny (Cplt. ¶28), is not sufficient to state fraud or negligent misrepresentation claims against defendants Ariel or Fanny. As a careful reading of the Complaint reveals, Fanny was not a buyer of plaintiff's Partnership interest and thus, Michael could not have been acting as her agent when he negotiated and communicated with plaintiff regarding the sale of plaintiff's interest.[1] Similarly, although Michael handled the face to face negotiations with plaintiff, Ariel himself signed the Purchase, Assignment & Assumption of Partnership Interest (the "Sale Agreement") and related documents. (M. Grunberg Aff., Ex. A).[2]

In any event, even if Michael was somehow acting as an agent for Fanny and/or Ariel – which he was not – a principal is not liable for the acts of an agent in excess of any actual authority unless it is demonstrated that the injured party reasonably relied on the agent's acts because of some misleading conduct on the part of the principal.

---

[1] Although Michael managed the day to day operations of the Partnership for his mother, his authority to do so did not in any way make him Fanny's agent in connection with the purchase of plaintiff's Partnership interest. The appointment of an agent with respect to the operation of a business allows the agent only to act for the principal with respect to what is usual and customarily done in the business and not for any other purpose. *See*, 2A C.J.S. Agency §218.

[2] References to "M. Grunberg Aff." are to the Affidavit of Michael Grunberg sworn to on February 28, 2008 and submitted herewith.

"[W]hile a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing her lawsuit." *Somin v. Total Community Mgmt. Corp.*, 494 F.Supp.2d 153, 156 (E.D.N.Y. 2007).

*McGarry v. Miller*, 158 A.D. 2d 327, 328 550 N.Y.S. 2d 896, 897 (1st Dep't 1990); *see also*, ***Ford v. Unity Hospital***, 32 N.Y. 2d 464, 473, 346 N.Y.S. 2d 238, 299 N.E.2d 659 (1973). Since plaintiff had no contact with Ariel or Fanny, no showing of any supposedly misleading conduct by Fanny or Ariel can be alleged or made.[3] Accordingly, plaintiff's fraud and negligent misrepresentation claims against Fanny and Ariel should be dismissed.

## POINT II

### PLAINTIFF'S FRAUD AND MISREPRESENTATION CLAIMS ARE BARRED BY THE ABSENCE OF JUSTIFIABLE RELIANCE

Under New York law, it is an essential element of a claim for intentional or negligent misrepresentation that the plaintiff justifiably relied on misrepresentations allegedly made by the defendant. ***Lama Holding Company v. Smith Barney***, 88 N.Y. 2d 413, 421, 646 N.Y.S. 2d 76, 668 N.E. 2d 1370 (1996); ***Ackerman v. Price Waterhouse***, 252 A.D. 2d 179, 683 N.Y.S. 2d 179 (1st Dep't 1998). In the present action, plaintiff essentially alleges that he decided to sell his interest in the Partnership based on misrepresentations and omissions made by Michael – one of the defendants who ultimately purchased the interest. As part of his claims, plaintiff alleges in paragraphs 75 and 80 that he "reasonably relied" on defendants' misrepresentations and omissions in

---

[3] In addition, a principal can only be found liable for the conduct of an agent acting within the scope of his authority which ordinarily does not include making false representations or omissions. *See **Ernst Iron Works, Inc. v. Duralith Corp.***, 270 N.Y. 165, 200 N.E. 683 (1936)(principal not liable for loss caused by deceitful representation of agent unless the representation was authorized or apparently authorized); ***Town of Irondequoit v. Johnson***, 231 A.D. 264, 247 N.Y.S. 581 (4th Dep't 1931)(court cannot infer from existence of general agency existence of incidental authority to obtain results by fraud).

agreeing to sell his Partnership interest for $7.8 million. But these *pro forma* allegations of reliance are belied by other allegations of the Complaint which demonstrate that when plaintiff elected to sell his minority interest he could not have and did not justifiably rely on any purported misrepresentations or omissions made by Michael.

For example, paragraph 22 of the Complaint alleges:

> After the entry of a state-court judgment in 2002 resolving the certain disputes that had arisen between the parties, new disputes arose between defendants on the one hand, and [Bruce] on the other hand, concerning, the Partnership and the Properties.

Paragraph 27 of the Complaint further alleges:

> In or about 2005, ***in light of the years of disputes*** among the partners to the Partnership, [Michael] and [Bruce] entered into discussions concerning various possible approaches to the winding up of the Partnership. [Emphasis added.]

Thus, at the outset it should be recognized that, in his own pleading, plaintiff acknowledges and informs the Court of his long standing and contentious relationship with defendants – precluding any claim of reasonable reliance.

The gravamen of plaintiff's Complaint primarily pertains to the accuracy of an "Opinion of Value" prepared by Massey Knakal Realty Services ("Massey Knakal"). Michael's sin, according to plaintiff, was that Michael gave Massey Knakal's opinion to plaintiff and failed to reveal that he knew the true value of the apartment buildings owned by the Partnership was greater than the amount stated in the opinion.[4] But plaintiff's own allegations demonstrate that from the start he was skeptical of the valuation put forth by

---

[4] It is interesting to note that Massey Knakal has not been named by plaintiff as a defendant in this action – meaning, plaintiff has elected to seek no recovery from the professionals actually responsible for creating and signing off on the "Opinion of Value."

7

Massey Knakal, that he intended to get another third-party valuation of his Partnership interest (Cplt ¶ 38) and that he solicited an offer to purchase the properties owned by the Partnership from "the well known and reputable New York real estate firm Grubb & Ellis." (Cplt ¶ 39). In short, plaintiff wants this Court to simply accept his conclusory allegation of reliance even though the Complaint itself shows that the valuation plaintiff received was marked "Opinion of Value", the opinion was provided by the party on the other side of a business deal with whom plaintiff had a history of conflict and even though plaintiff expressed his disagreement with the valuation provided by turning to Grubb & Ellis to solicit offers that would support a higher valuation of plaintiff's Partnership interest.

In *Shea v. Hambro*, 244 A.D. 2d 39, 673 N.Y.S. 2d 369 (1st Dept 1998), plaintiff – a principal in an investment banking firm – alleged that he was fraudulently induced to agree to a corporate reorganization when the true reason behind the reorganization was to oust him from his roles as officer and director of the corporation. In upholding the Supreme Court's dismissal of the claim, the Appellate Division, First Department found that plaintiff had failed to show that he relied on the alleged misrepresentation. The Court found that plaintiff was a sophisticated businessman and that plaintiff had conceded the "acrimonious" nature of the negotiations during which the misrepresentations were allegedly made as well as the dissention among the parties. On that basis, the Court found that plaintiff could not claim that "he, a savvy businessman entered into the resulting agreements lulled by faith or trust in the parties across the bargaining table." *Id.* at 47. Here too, this Court should not permit plaintiff, an attorney and experienced real estate investor and developer to claim that he reasonably relied on

8

representations made to him by Michael – plaintiff's business foe with whom he had been fighting for years.

In addition, New York law places an affirmative duty on sophisticated investors to protect themselves from misrepresentations and omissions during business transactions by investigating the details of the transactions. ***Global Minerals and Metals Corp. v. Holme*** 35 A.D. 3d 93, 100, 824 N.Y.S 2d 210 (1st Dep't 2006); ***Abrahami v. UPC Constr. Co., Inc.***, 224 A.D. 2d 231, 234, 638 N.Y.S. 2d 11, 14 (1st Dept. 1996). And, when the party to whom a misrepresentation is made has hints of its falsity, a heightened degree of diligence is required and it cannot reasonably rely on such representations without making additional inquiry to determine their accuracy. ***Banque Franco-Hellenique de Commerce Intl. et Martime, S.A. v. Christophides,*** 106 F. 3d 22, 27 (2d Cir. 1997); ***Keywell Corp. v. Weinstein***, 33 F. 3d 159, 164 (2d Cir. 1994).

Plaintiff's claim that Michael prevented him from investigating the valuation or obtaining a similar valuation will not save plaintiff's fraudulent inducement or negligent misrepresentation claims. Even assuming plaintiff's allegation that Michael interfered with plaintiff's attempts to get a similar valuation was true – which it is not – such interference should have intensified plaintiff's resolve to obtain his own evaluation or otherwise protect himself. It simply makes no sense to sell your Partnership interest based on a valuation that you suspected was not accurate, that was provided to you by a buyer with whom you have a history of bad blood and that you were not permitted to investigate and then claim, after the fact, that you were somehow tricked into selling at a price that was too low.

Further, if plaintiff was thwarted in his attempts to obtain a separate valuation he could have and should have inserted protective language in the Sale Agreement. For example, the Sale Agreement could have contained a representation regarding the accuracy of the Opinion of Value – yet it did not.

> When a party fails to make further inquiry or insert appropriate language in the agreement for its protection, it has willingly assumed the business risk that the facts may not be as represented. ***Rodas v. Manitaras***, 159 A.D. 2d 341, 343, 552 N.Y.S. 2d 618, 620 (1st Dep't 1990).

***Global Minerals and Metals Corp. v. Holme,*** 35 A.D. 3d 93, 100, 824 N.Y.S 2d 210, 216 (1st Dep't 2006).

In fact, the Sale Agreement which plaintiff signed specifically provides in paragraph 8 that, "[t]here are no representations, warranties, promises, covenants or undertaking other than those expressly set forth in writing in the [Sale] Agreement." Paragraph 9 of the Sale Agreement similarly provides that, "No oral statement or prior written matter extrinsic to this [Sale] Agreement shall have any force, or effect … ." (M. Grunberg Aff., Ex. A). ***See Petrello v. White***, 412 F. Supp. 2d 215, 229 (E.D.N.Y. 2006)(where merger clause states there are no agreements outside of those spelled out in written agreement, purported reliance on prior representations was not reasonable as a matter of law).

Full releases were also exchanged by the parties at the time of the sale when plaintiff, of his free volition, sold his Partnership interest. The release which plaintiff executed and delivered to each of the named defendants is dated July 22, 2005 and states that plaintiff did:

> Remise, release and forever discharge the said [defendants] … from all, and all manner of action and actions, cause and

10

> cause of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, in admiralty, or in equity, which against [defendant] said [plaintiff] ever, had, now has or which his heirs, executors, and administrators, successors and assigns hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents.

(M. Grunberg Aff., Ex. 1 annexed to Ex. A). Thus, it is patently clear that plaintiff not only failed to take any steps to protect himself from suspected misrepresentations or omissions, he knowingly, actively and willingly released any and every potential claim he had or might have had with regard to those misrepresentations and/or omissions. Accordingly, plaintiff's claims for fraud and negligent misrepresentation should be dismissed.

### POINT III

### PLAINTIFF KNEW BEFORE HE SOLD HIS PARTNERSHIP INTEREST THAT 1031 LIKE-KIND EXCHANGE MONIES WOULD NOT BE USED TO FUND THE PURCHASE

Plaintiff also bases his fraudulent inducement and negligent misrepresentation claims on misrepresentations allegedly made by Michael about the need to make a 1031 like-kind exchange. These allegations, however, are insufficient to support plaintiff's claims. As the pleadings themselves state, plaintiff and Michael entered into a letter agreement regarding plaintiff's Partnership interest on June 23, 2005. Thereafter, on July 11, 2005 – eleven days before the sale was finalized – the buyers' attorney informed plaintiff that, "It would appear that [my] clients have another use for the 1031 Exchange funds which, if they were to use it for [Bruce's] interest, would only unnecessarily

11

complicate things here." (Cplt.¶ 53). Consequently, it is undisputed that plaintiff knew before he sold his Partnership interest that Michael and Ariel were not using 1031 monies to complete the transaction. Yet, even knowing that the 1031 issue had disappeared, plaintiff elected to promptly proceed to closing, finalize the sale of his Partnership interest and collect his $7.8 million. Moreover, the fact that ultimately Michael and Ariel did not use 1031 exchange monies to pay plaintiff is of no moment as plaintiff was fully and timely paid the agreed upon purchase price.

**POINT IV**

**PLAINTIFF'S ALLEGATIONS OF FUTURE
INTENTIONS WILL NOT SUPPORT HIS CLAIMS
OF FRAUD OR NEGLIGENT MISREPRESENTATION**

Plaintiff's allegations regarding statements Michael made and/or failed to make regarding the renovation and sale of the apartment buildings also are of no moment and cannot support plaintiff's claims for fraudulent inducement or negligent misrepresentation. Intentional and negligent misrepresentation claims can only be based on misrepresentations of present material fact and cannot be based on statements of future intentions, promises or expectations. *U.S. West Financial Services, Inc. v. Tollman*, 786 F. Supp 333, 344 (S.D.N.Y. 1992)(no action for negligent misrepresentation lies where alleged misrepresentation is promissory not factual); *Kirk/Marsland Advertising, Inc. v. Cunard Line Limited*, 188 A.D. 2d 440, 591 N.Y.S. 2d 1013 (1st Dep't 1992)(statements of future intentions not actionable as fraud).

Michael's statements regarding renovation and sale of the apartment buildings were in no way binding commitments but rather were statements of future intentions, promises or expectations that simply are not actionable as either fraud or negligent

misrepresentation. Is plaintiff really suggesting that because Michael purportedly told plaintiff during the course of discussions about winding up the Partnership that Michael and his family were not willing to renovate or sell the buildings as a solution to Partnership discord, that Michael, Fanny and Ariel effectively gave up their right in perpetuity to ever renovate or sell their own property? Such a claim is not plausible and should be dismissed.

### POINT V

### PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM IS BARRED BECAUSE THERE IS NO SPECIAL RELATIONSHIP BETWEEN PLAINTIFF AND DEFENDANTS

Generally, an action for damages will not lie for misrepresentations which are negligently made. Before a claim can be stated for negligent misrepresentation it must be established that defendant had a duty to give the plaintiff correct information based on a special relationship of trust and confidence with the plaintiff. A commercial relationship such as a relationship between a buyer and a seller does not constitute the kind of "special relationship" necessary to support a negligent misrepresentation claim. *Andres v. LeRoy Adventures, Inc.*, 201 A.D. 2d 262, 607 N.Y.S. 2d 261 (1st Dept 1994)(no special relationship could be discerned from arm's length dealings between parties); **see also,** *Delcor Laboratories, Inc. v. Cosmair, Inc.*, 169 A.D. 2d 639, 640, 564 N.Y.S. 2d 771 (1st Dep't 1991)(dinner meeting in connection with business transaction did not create special relationship).

Plaintiff is unable to allege that he and Michael had a special relationship based on trust and confidence. Their relationship was just the opposite. It was one of discord,

distrust and dislike demonstrated – as plaintiff himself has alleged in the Complaint – by years of litigation and disagreement. As a result, no claim for negligent misrepresentation will lie.

POINT VI

DEFENDANTS DID NOT OWE A
FIDUCIARY DUTY TO PLAINTIFF IN
CONNECTION WITH THE SALE OF PLAINTIFF'S
PARTNERSHIP INTEREST

A fiduciary relationship exists where one party is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relationship. ***Flickinger v. Harold C. Brown & Co.***, 947 F. 2d 595, 599 (2d Cir. 1991); ***Suthers v. Amgen, Inc.***, 372 F. Supp. 2d 416, 426-27 (S.D.N.Y. 2005). To state a claim for breach of fiduciary duty, plaintiffs must allege some factors from which a court could conclude that a fiduciary relationship has been established. ***Boley v. Pinelock Assoc., Ltd.,*** 700 F. Supp. 673, 680-81 (S.D.N.Y. 1988).

In the present action, plaintiff alleges:

> As Mr. Meisel's partner in a New York general partnership, defendant F. Grunberg owed Mr. Meisel a fiduciary duty of utmost fairness and honesty in all transactions relating to the Partnership. Defendants M. Grunberg and A. Grunberg, acting in their capacity as agents for F. Grunberg, the general partner, also owed a strict fiduciary duty to Mr. Meisel.

(Cplt.¶ 64). Plaintiff then alleges that defendants <u>collectively</u> breached their fiduciary duties by: (i) representing that they were not going to renovate or sell the apartment buildings owned by the Partnership; (ii) providing plaintiff with the Opinion of Value prepared by Massay Knakal but failing to disclose higher "projected" GAI and NOI figures regarding the apartment building; (iii) interfering with plaintiff's attempts to

14

ascertain the fair market value of the apartment buildings; (iv) falsely representing that 1031 exchange funds would be used to purchase plaintiff's Partnership interest; and (v) unreasonably withholding permission for plaintiff to sell his Partnership interest to a third-party. (Cplt ¶67). In making these omnibus allegations, however, plaintiff glosses over the fact that the misrepresentations and omissions about which he complains were made (as discussed in POINT I, *infra*) by Michael alone – not Fanny or Ariel – and were made by Michael not in his capacity as Fanny's agent in connection with the operation of the Partnership but in his separate individual capacity as a purchaser of plaintiff's Partnership interest.

As the Court noted in ***In re Drexal Burnham Lambert Group Inc.***, 113 B.R. 830, 841-42 (Bankr. S.D.N.Y. 1990), if an alleged agent's acts concerning a certain subject matter cannot be controlled and directed by the principal, there is no agency relationship with regard to that subject matter. Fanny had no control over Michael's decision to individually, or together with Ariel, purchase plaintiff's Partnership interest. If Michael wanted to buy the interest he could make an offer and, if the offer was accepted, seek Fanny's consent. But if he did not want to buy the interest, Fanny was powerless – she could not direct him to do so. The same is true for Ariel. Without a bona fide claim that Michael and Ariel were acting as Fanny's agents when they purchased plaintiff's Partnership interest, plaintiff's claim for breach of fiduciary duty fails and should be dismissed.

Finally, in New York, no fiduciary relationship exists where parties were acting and contracting at arms-length to a business transaction. ***See in re Ames Dep't Stores, Inc.***, 274 B.R. 600, 626 (Bkrtcy. S.D.N.Y. 2002); ***Beneficial Commercial Corp. v.***

*Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 772 (S.D.N.Y. 1985). Because plaintiff and Michael were nothing more than buyer and seller in a commercial transaction, plaintiff's claim for breach of fiduciary duty cannot be sustained. As discussed at length in POINT II, *infra*, it is ludicrous to even suggest that plaintiff trusted Michael or was accepting advice from him in connection with the sale of plaintiff's Partnership interest. The purchase of plaintiff's interest came in the context of resolving years of disharmony between the parties. While plaintiff would have this Court believe otherwise, it is plain that when the buy-out of plaintiff's Partnership interest was negotiated and closed, plaintiff and Michael were not sitting next to each other at the bargaining table as partners but instead, were sitting opposite each other as adversaries with no fiduciary relationship.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss should be granted and the Complaint should be dismissed in its entirety.

Dated: New York, New York
       February 29, 2008

Respectfully submitted,

TARTER KRINSKY & DROGIN LLP

By: _____
Andrew N. Krinsky (AK 0997)
Linda S. Roth (LR 8255)
1350 Broadway
New York, New York 10018
(212) 216-8000