UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRUCE M. MEISEL, | ) | C.A. No. 07 Civ. 11610 (PKL) |
| Plaintiff, | ) | |
| | ) | |
| against | ) | |
| | ) | |
| MICHAEL GRUNBERG, | ) | |
| FANNY GRUNBERG, | ) | |
| and ARIEL GRUNBERG, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**ROSENBERG & GIGER P.C.**
*Attorneys for Plaintiff*
Matthew H. Giger (MG3731)
John J. Rosenberg (RG1206)
488 Madison Avenue, 10th Floor
New York, NY 10022
Tel (212) 705-4824
Fax (212) 593-9175

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... iii

Preliminary Statement ........................................................................................................... 1

Plaintiff's Factual Allegations ............................................................................................... 2

    The Partnership Agreement ............................................................................................. 2

    Negotiation of the Buy-Out ............................................................................................. 3

    The Buy-Out Agreement ................................................................................................. 6

    The Grunbergs' Immediate Sale of the Properties ........................................................ 7

    Plaintiff's Claims for Relief ............................................................................................ 8

Argument ............................................................................................................................... 9

I.    The Legal Standards Governing Defendants' Motion. ............................................... 10

II.    The Allegations of Plaintiff's Complaint Far Exceed the Minimal Standards to Avoid
Dismissal Under Rule 12(b)(6). ................................................................................ 10

    A.    The Complaint More Than Adequately Alleges Concerted
Action Among the Defendants to Defraud Plaintiff. ..................................... 10

    B.    The Complaint Adequately Alleges Breach of Fiduciary Duty ..................... 15

    C.    The Complaint Adequately Alleges Fraud. ................................................... 16

    D.    The Complaint Adequately Alleges Negligent Misrepresentation. ............... 17

III.    Nearly All of Defendant's Asserted Arguments are Fact-Bound,
Contrary to the Allegations of the Complaint and Inappropriate for
a Motion to Dismiss. ................................................................................................. 17

    A.    The Complaint Clearly Pleads the Existence of a Fiduciary Duty. ............... 17

    B.    Defendants' "Reasonable Reliance" Arguments Are Entirely Fact-Bound ... 19

IV.    Defendants' Few Legal Arguments Are Meritless. ................................................... 23

    A.    Michael's Misrepresentations and Material Omissions Concerning
the Sale and Renovation of the Properties are Actionable as Fraud ............. 23

B. Plaintiff Did Not Waive His Claims Founded on Michael's Misrepresentation of the "1031 Opportunity." ................................................................24

Conclusion ................................................................................................................................25

## TABLE OF AUTHORITIES

Page

### Federal Cases

ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,
   957 F. Supp. 1308 (S.D.N.Y. 1997) ...................................................................... 17, 19

Andre Emmerich Gallery, Inc. v. Segre,
   No. 96 Civ. 889 (CSH), 1997 U.S. Dist. LEXIS 16899 (S.D.N.Y. Oct. 29, 1997) ..................... 12, 16

Banque Franco - Hellenique de Commerce Int'l et Mar v. Christophedes,
   106 F.3d 22 (2d Cir. 1997). ................................................................................. 21

Bazzano v. L'Oreal, S.A.,
   93 Civ. 7121 (SHS), 1996 U.S. Dist. LEXIS 6529 (S.D.N.Y. May 14, 1996) ...................... 25

Bell Atl. Corp. v. Twombly,
   127 S. Ct. 1955 (2007) ...................................................................................... 10

Beneficial Commercial Corp. v. Glick,
   601 F. Supp. 770  (S.D.N.Y. 1985) ......................................................................... 18

British American  & Eastern Co. v. Wirth, Ltd.,
   592 F.2d 75 (2d Cir. 1979) .................................................................................. 14

Camarillo v. Carrols Corp.,
   No. 06-4909, 2008 U.S. App. LEXIS 2814 (2d Cir. Feb.8, 2008) ...................................... 2

Chrysler Capital Corp. v. Century Power Corp.,
   778 F. Supp. 1260 (S.D.N.Y. 1991) ....................................................................... 12

David Tunick, Inc. v. Kornfeld,
   91 Civ. 7027 (DNE), 1993 U.S. Dist. LEXIS 16160 (S.D.N.Y. Nov. 16, 1993) ................... 23

Diduck v. Kaszycki & Sons Contractors, Inc.,
   974 F.2d 270 (2d Cir. 1992) ................................................................................. 16

DiVittorio v. Equidyne Extractive Indus.,
   882 F.2d 1242 (2d Cir. 1987) ............................................................................... 16

DuPont v. Perot,
   59 F.R.D. 404 (S.D.N.Y. 1973) ............................................................................ 25

Gordon P. Getty Family Trust v. Peltz,
   93 Civ. 3162, 1998 U.S. Dist. LEXIS 3945 (S.D.N.Y. March 27, 1998) .......................... 17, 19

Hecht v. Commerce Clearing House, Inc.,
   897 F.2d 21 (2d Cir. 1990) .................................................................................. 12

Hotel Constructors, Inc. v. Seagrave Corp.,
   99 F.R.D. 591 (S.D.N.Y. 1983) ...................................................................................14

In re Ames Dep't Stores, Inc.,
   274 B.R. 600 (Bankr. S.D.N.Y. 2002) .......................................................................18

Jaghory v. New York State Dep't of Educ.,
   131 F.3d 326 (2d Cir. 1997) ......................................................................................10

JP Morgan Chase Bank v. Winnick,
   406 F.Supp.2d 247 (S.D.N.Y. 2005) ..........................................................................12

Keywell Corp. v. Weinstein,
   33 F.3d 159 (2d Cir. 1994) ........................................................................................21

Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Systems, Inc.,
   176 F. Supp. 2d 1997 (S.D.N.Y. 2001) ........................................................................7

Manufacturers Hanover Trust Co. v. Yanakas,
   7 F.3d 310 (2d Cir. 1993) ..........................................................................................22

Metro. West Asset Mgmt., LLC v. Magnus Funding, Ltd.,
   03 Civ. 5539 (NRB), 204 U.S. Dist. LEXIS 11761 (S.D.N.Y. June 24, 2004) ...................15

Mitland Raleigh-Durham v. Myers,
   807 F. Supp. 1025 (S.D.N.Y. 1992) ...........................................................................12

Monahan Ford Corp. v. Ford Motor Co.,
   340 B.R. 1 (Bankr. E.D.N.Y. 2006) .......................................................................12, 16

Newburger, Loeb & Co. v. Gross,
   563 F.2d 1057 (2d Cir. 1977) ...............................................................................18, 20

Ouaknine v. MacFarlane,
   897 F. 2d 75 (2d Cir. 1990) .......................................................................................16

Pittman v. Grayson,
   149 F.3d 111 (2d Cir. 1998) ......................................................................................11

Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,
   507 F.3d 117 (2d Cir. 2007) ......................................................................................10

Sedona Corp. v. Ladenburg Thalmann & Co.,
   No. 03 Civ. 3210 (LTS), 2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005) ...............12

Sieger v. Zak,
   No. 06-CV-3313 (DRH), 2007 U.S. Dist. LEXIS 60010 (S.D.N.Y. Aug. 15, 2007)...............14

Solow v. Conseco Inc.,
   06-CV-5988 (BSJ), 2008 U.S. Dist. LEXIS 9234 (S.D.N.Y. Jan. 11, 2008)........................19

U.S. West Fin. Servs., Inc. v. Tollman,
    786 F. Supp. 333 (S.D.N.Y. 1992) ...................................................................................23

Vacold LLC v. Cerami,
    00 Civ. 4024 (AGS), 2002 U.S. Dist. LEXIS 1895 (S.D.N.Y. Feb. 7, 2002) ...........7, 10, 24

Volvo North America Corp. v. Men's International Professional Tennis Council,
    857 F.2d 55 (2d Cir. 1988) .............................................................................................12

Whitney v. Citibank, N.A.,
    782 F.2d 1106 (2d Cir. 1986) ..........................................................................................13

Wight v. Bankamerica Corp.,
    218 F.3d 79 (2d Cir. 2000) .............................................................................................13

### State Cases

Abrahami v. UPC Constr. Co.,
    224 A.D.2d 231, 638 N.Y.S.2d 11 (1st Dep't 1996) .........................................................21

American Ref-Fuel Co. v. Resource Recycling, Inc.,
    281 A.D.2d 574, 722 N.Y.S.2d 571 (2d Dep't 2001) .......................................................15

Bichler v. Eli Lilly & Co.,
    55 N.Y. 2d 571, 450 N.Y.S.2d 776 (1982) ......................................................................11

Blue Chip Emerald LLC v. Allied Partners, Inc.,
    299 A.D.2d 278, 750 N.Y.S.2d 291 (1st Dep't 2002) ...........................................13, 14, 21, 22

Channel Master Corp. v. Aluminium Ltd. Sales, Inc.,
    4 N.Y.2d 403, 151 N.E.2d 833 (1958) ............................................................................23

Clearview Concrete Prods. Corp. v. Gherardi,
    88 A.D.2d 461,453 N.Y.S.2d 750 (2d Dep't 1982) .........................................................25

Danann Realty Corp. v. Harris,
    5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959) ........................................................................22

Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.,
    68 N.Y.2d 954, 502 N.E.2d 1003 (1986) ........................................................................23

Drucker v. Mige Assocs. II,
    225 A.D.2d 427, 639 N.Y.S.2d 365 (1st Dep't 1996) ................................................13, 18

Ettlinger v. Nat'l Surety Co.,
    221 N.Y. 467, 117 N.E. 945 (1917) .................................................................................25

Global Minerals & Metals Corp. v. Holme,
  35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dep't 2006)...............................................18, 19, 20, 21

Kirk/Marshland Adver., Inc. v. Cunard Line Ltd.,
  188 A.D.2d 440, 591 N.Y.S.2d 1013 (1st Dep't 1992) ...........................................................24

Lindsay v. Lockwood,
  163 Misc. 2d 228, 625 N.Y.S. 2d 393 (Sup. Ct. Monroe Cty. 1994) ......................................11

Lobel v. Maimionides Medical Center,
  39 A.D.3d 275, 835 N.Y.S.2d 28 (1st Dep't 2007) ................................................................22

Sabo v. Delman,
  3 N.Y. 155, 164 N.Y.S.2d 714 (1957)...................................................................................22

Shea v. Hambros PLC,
  244 A.D.2d 39, 673 N.Y.S.2d 369 (1st Dep't 1998)..............................................................20

Williams v. Sidley Austin Brown & Wood LLP,
  No. 600808/05, 2006 N.Y. Misc. LEXIS 2581 (Sup. Ct. N. Y. Cty. Sept. 22, 2006) .......................11

## Federal Rules

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 25

Fed. R. Civ. P. 9(b) ...........................................................................................................16

Plaintiff Bruce M. Meisel opposes the meritless Motion to Dismiss (the "Motion") filed by defendants Michael, Fanny and Ariel Grunberg on February 29, 2008, and submits this Memorandum of Law in support of his Opposition.

## Preliminary Statement

Disregarding the detailed allegations of the Complaint, defendants' Motion asserts numerous, largely fact-bound, arguments that are not only unavailing, but are entirely inappropriate for resolution on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Complaint very clearly alleges an archetypal scheme by all three defendants, acting in concert, to fraudulently induce Mr. Meisel to sell his minority interest in his partnership with defendant Fanny Grunberg, the mother of the other two defendants and founder of the Grunberg family real estate business.

As alleged in the Complaint, defendants' scheme had two phases: <u>first</u>, defendant Michael Grunberg, acting on his own behalf and as agent for the Partnership and co-defendants Fanny and Ariel Grunberg, induced Mr. Meisel to sell his Partnership interest to Michael and Ariel through misrepresentation, omission and breach of fiduciary duty (the "Buy-Out"); <u>second</u>, almost immediately following the Buy-Out, all three defendants consolidated their partnership interests and offered for sale the Partnership's only asset – two adjoining buildings located in mid-town Manhattan (the "Properties") – for more than double the price that had served as the predicate for the fraudulently induced Buy-Out.

Dispensing with the well-settled rule that a motion to dismiss is limited to analysis of the allegations of the Complaint (and inferences drawn therefrom), defendants' Motion is dominated by fact-bound arguments that purport to contradict the Complaint's meticulous allegations of defendants' fraudulent scheme. In this regard, for example:

- Plaintiff alleges that defendants acted in concert to carry out their scheme to defraud him out of his interest in the Partnership. (Compl. ¶¶ 1, 28, 66.) Indeed, this is the central thesis of the entire Complaint. Ignoring plaintiff's allegations, defendants

argue – as a matter of unsupported factual averment – that they acted independently of each other and in their individual capacities. (Mem.[1] at 5, 15.)

- Plaintiff alleges that Michael was acting as the agent of Fanny and Ariel in carrying out defendants' scheme to defraud. (Compl. ¶ 28.) Defendants once again counter with a conclusory factual assertion, that Michael "could not have been acting as her agent." (Mem. at 5.)

- Plaintiff alleges that he reasonably relied on Michael's misrepresentations and omissions, made on behalf of defendants and the Partnership. (Compl. ¶¶ 71, 73, 78, 79.) Advancing numerous factual assertions nowhere alleged in the Complaint, defendants argue that Mr. Meisel's reliance was not reasonable. (Mem. at 6-11.)

The Court should disregard defendants' factual arguments, which make up most of their Motion, as improper for consideration on a Rule 12(b)(6) dismissal motion. As to the few legal arguments that defendants do raise, they are directly contrary to New York law and should be rejected. For these reasons, as further discussed below, the Court should deny defendants' Motion.

## Plaintiff's Factual Allegations

While plaintiff relies on the entirety of his Complaint in opposition to the Motion, the following summary digests plaintiff's core allegations for purposes of this memorandum.[2]

## The Partnership Agreement

In 1976, Mr. Meisel entered into a written Partnership Agreement with defendant Fanny Grunberg ("Fanny") and her late husband, Zvi Grunberg, establishing the "15 and 19 West 55th Street Realty Company" (the "Partnership"). (Compl. ¶ 13). The express "purpose" of the Partnership was, inter alia, "to acquire, improve, manage and operate" the Properties. (Id. ¶¶ 14, 15.) The term of the Partnership was to run through December 31, 2025, but would terminate earlier in the event of a "sale or exchange of all or substantially all of the Partnership property" or the "withdrawal . . . of all the partners." (Id. ¶ 16.)

---

[1] "Mem." refers to defendants' Memorandum of Law in support of the Motion, filed on February 29, 2008.

[2] As defendants concede (Mem. at 2), and yet ignore, the Court must assume the truth of all of the factual allegations set forth in plaintiff's Complaint and resolve all inferences in plaintiff's favor in addressing the Motion. See Camarillo v. Carrols Corp., No. 06-4909, 2008 U.S. App. LEXIS 2814, at *3 (2d Cir. Feb. 8, 2008).

Following Zvi Grunberg's death in or about 1991, Fanny succeeded to his interest and thereafter owned a 70% interest in the Partnership. Mr. Meisel continued to hold the remaining 30% interest. This relative ownership continued through the Buy-Out in 2005. (Id. ¶ 17.) Fanny was the managing partner of the Partnership, with the attendant obligation "to devote so much of [her] time as may be reasonably necessary to manage the activities and business affairs of the Partnership." (Id. ¶¶ 18, 19.) The Partnership Agreement, however, required "the prior written consent of all the Partners" for the Partnership to take certain significant actions, including (a) to "sell, exchange, lease or otherwise dispose of any of" the Properties, or (b) to "make repairs, alterations or capital improvements" to the Properties above modest cost thresholds. (Id. ¶ 20.) Similarly, none of the partners could "sell, transfer, assign or encumber his or her interest" without the written consent of all other partners. (Id. ¶ 21.)

## Negotiation of the Buy-Out

In or about 2002, certain disputes arose between Mr. Meisel and defendants concerning the Partnership and the Properties, including disputes arising from the Partnership's failure to fully utilize the Properties; the existence of numerous vacant apartments; the need for renovations; and the renting of certain apartments, including two to Fanny, at significantly reduced rates. (Id. ¶¶ 22, 23.) Mr. Meisel proposed to Fanny and Michael a number of alternatives to rectify these problems and increase Partnership profits, including apartment renovations and other improvements to the Properties; more aggressive efforts to rent vacant apartments; and conversion of the Properties to condominiums. (Id. ¶¶ 24, 25.) As the minority partner, Mr. Meisel was unable to implement any of those steps without Fanny's approval and consent, but Fanny refused. (Id. ¶¶ 26, 31.) In the face of that refusal, the parties entered into discussions concerning possible approaches to the winding up of the Partnership, including defendants' purchase of Mr. Meisel's Partnership interest. (Id. ¶ 27.)

### *(i) Defendants' Concerted Action.*

The negotiations for Mr. Meisel's Buy-Out – including the misrepresentations of fact alleged in the Complaint – were pursued on behalf of defendants, and in furtherance of their scheme, principally by Michael. The Complaint specifically avers that defendants acted "in concert . . . in fraudulently induc[ing] Mr. Meisel to sell his minority interest in the Partnership" (<u>id.</u> ¶ 1) and that, "at all times during these discussions and the ensuing negotiations, [Michael] acted on behalf of, and as an agent for, F. Grunberg and A. Grunberg" (<u>id.</u> ¶ 28).

More than merely alleging defendants' concerted action and Michael's capacity as agent for his co-defendants, the specific factual allegations of the Complaint describe a scheme to defraud in which all three defendants participated, but in which Michael acted as defendants' point person. Thus, in response to Mr. Meisel's proposals concerning the winding up or restructuring of the Partnership, Michael represented unequivocally, in an e-mail dated April 1, 2005, that "[t]he buildings are not for sale." (<u>Id.</u> ¶ 30.) As Michael (in his individual capacity) concededly held no personal interest in the Partnership or the Properties at that time, he could only have been speaking on behalf of Fanny and the Partnership in making this pronouncement. Similarly, Michael represented to Mr. Meisel that the Grunbergs would not part with their interest in the Partnership, stating that "*we* are not sellers," referring to defendants *en masse*. (<u>Id.</u> ¶ 30; emphasis added.)[3]

In an effort to further pressure Mr. Meisel into selling his Partnership interest, Michael also represented that Fanny, the general partner, would not consent to Mr. Meisel's sale of his interest to a third party and admittedly spoke on behalf of all defendants when he advised Mr. Meisel, via e-mail on April 12, 2005: "You own a 30% interest that you do not control or manage and you can't sell to anyone but *us*." (<u>Id.</u> ¶ 47; emphasis added.) Similarly, in a May 20, 2005 e-mail to Mr.

---

[3] As discussed below (at 7), these representations on behalf of all defendants were false: defendants jointly placed the Properties on the market directly following the Buy-Out.

4

Meisel's counsel, Michael stressed that "whatever the future holds, the majority interest [i.e., the Grunbergs] will determine how the business is managed." (Id. ¶ 48.) In addition, once again acting on behalf of all defendants, Michael actively quashed an attempt by Mr. Meisel to obtain a third-party offer to purchase the Properties, writing that "these properties were not on the market nor have they been on the market for decades." (Id. ¶¶ 39, 40.)

### (ii) *The Massey Knakal Report.*

In negotiating the Buy-Out of Mr. Meisel's interest, Michael – again clearly acting on behalf of all defendants and in furtherance of their overarching scheme – commissioned an "Opinion of Value" prepared by Massey Knakal Realty Services (the "MK Report"). Defendants (or Michael on behalf of defendants) provided Massey with the revenue data and other financial information used in the preparation of the MK Report. (Id. ¶ 36.) Michael provided the MK Report to Mr. Meisel in March of 2005 and repeatedly referred to that document in his negotiations with Mr. Meisel. (Id. ¶ 33.) By applying various formulae to the "gross annual income" ("GAI") and "net operating income" ("NOI") figures provided by defendants, the MK Report represents the value of the Properties to be between $22,375,000 and $33,375,000, depending on which valuation method is employed. (Id. ¶ 35.) As discussed below, when – almost immediately following the Buy-Out – defendants offered the Properties for sale, the GAI and NOI figures set forth in that offer were significantly higher than those defendants provided to Mr. Meisel pre-Buy-Out.

### (iii) *Defendants Manufacture a False Sense of Urgency.*

Michael also made certain representations and engaged in related tactics during his negotiations with Mr. Meisel that were designed to bring a false sense of urgency to the negotiations. On March 21, 2005, Michael informed Mr. Meisel by e-mail that Michael had come into liquid funds that may create an "opportunity to resolve our differences (by buying you out)." (Id. ¶ 42.) In particular, Michael stressed that he would have only a certain period of time under the Internal Revenue Code before he was required to roll those funds (the "1031 Exchange Funds") into a "like-

kind exchange" in order to avoid paying certain taxes.  (Id. ¶ 43.)  According to Michael, this gave rise to a "window of opportunity [that] has just opened and may last only days."  (Id.)  During the negotiation of the Buy-Out, Michael repeatedly referenced this supposedly fleeting "1031 opportunity."  (Id. ¶ 44.)

As the Complaint alleges, the intended and clear implication of these representations was that defendants lacked sufficient liquid assets – other then the short-lived 1031 Exchange Funds – with which to purchase Mr. Meisel's interest in the Partnership.  (Id. ¶¶ 44, 45.)  As Mr. Meisel learned later – albeit only after entering into a binding letter agreement to sell his Partnership interest – Michael's representations, and the sense of urgency that they created, were false.  (Id. ¶¶ 45, 53, 54.)

## The Buy-Out Agreement

After months of negotiations, Mr. Meisel ultimately agreed to sell his Partnership interest to Michael and Ariel, with Fanny's consent, for $7.8 million.  (Id. ¶ 49.)  As the Complaint alleges, in reaching this decision, Mr. Meisel relied, inter alia, on (1) the MK Report and its detailed representations regarding the value of the Properties; (2) defendants' repeated representations that they did not intend to sell, and would not authorize the sale of the Properties; (3) defendants' refusal to convert the Properties to condominiums, undertake necessary renovations, lease vacant apartments, sell the Properties or take any other steps suggested by Mr. Meisel to maximize the investment return on the Properties; (4) Mr. Meisel's inability under the Partnership agreement to force defendants to implement any of the aforementioned profit–maximizing steps; (5) Mr. Meisel's inability under the Partnership agreement to sell his 30% interest to a third party without the consent of F. Grunberg, which she refused to provide; and (6) the supposedly limited "window of opportunity" for a sale arising from Michael's representation that he must use the short-lived 1031 Exchange Funds to close the Buy-Out.  (Id. ¶ 50.)

Based on the foregoing, on June 23, 2005, Mr. Meisel signed a letter agreement with Michael and the Partnership (the "Letter Agreement"), in which Michael "agreed to buy from Meisel, all of Meisel's thirty percent (30%) interest in the Partnership for the sum of $7.8 Million Dollars . . . payable in cash on or before August 15, 2005." (Meisel Decl., Ex. A, at 1.)[4] The Letter Agreement confirmed that it was "intended to memorialize the agreement" reached among plaintiff, Michael and the Partnership. Significantly (in light of defendants' present argument that Michael was acting only in his individual capacity), Michael executed the Letter Agreement "individually, and as *authorized representative of Fanny Grunberg and the Partnership*." (Id., at 2; emphasis added.)

As contemplated by the Letter Agreement, on July 22, 2005, Mr. Meisel signed a long-form agreement entitled "Purchase, Assignment & Assumption of Partnership" (the "Buy-Out Agreement"). (Compl. ¶ 55.) The Buy-Out Agreement was executed by all three defendants, Michael and Ariel as purchasers and Fanny as the general partner who "consented to" the Agreement "individually and as General Partner of 15 and 19 West 55th Street Realty Company." (Id. ¶ 56.)

## The Grunbergs' Immediate Sale of the Properties

Contrary to Michael's repeated representations to Mr. Meisel – made to induce Mr. Meisel to enter into the Buy-Out Agreement – on October 21, 2005, only ninety days after the Buy-Out, all of the defendants – who now jointly owned the Partnership – collectively offered the Properties for sale. (Id. ¶ 57.) The Complaint specifically alleges that defendants acted "in concert" to dispose of the Properties, and it could not be otherwise, as they each owned only a portion of the Properties, through their respective Partnership interests, following the Buy-Out. The Complaint further alleges

---

[4] A copy of the Letter Agreement is attached to the Declaration of Bruce M. Meisel, filed herewith. The Court may consider the Letter Agreement in deciding defendants' motion to dismiss because it is incorporated into the Complaint by reference and is "relied upon and integral to" that pleading. See Vacold LLC v. Cerami, 00 Civ. 4024 (AGS), 2002 U.S. Dist. LEXIS 1895, at *8 (S.D.N.Y. Feb. 7, 2002); Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Sys., Inc., 176 F. Supp. 2d 199, 203 (S.D.N.Y. 2001).

that defendants had secretly intended to offer the Properties for sale at the time that Michael represented precisely the contrary to Mr. Meisel.  (Id. ¶ 58.)

Defendants' offered the Properties for sale at $64,000,000, nearly two-and-a-half times the Buy-Out valuation and almost double the highest value ascribed to the Properties in the MK Report. (Id. ¶ 57.)  Defendants' asking price was based on substantially higher GAI and NOI figures than those reflected in the pre-Buy-Out MK Report.  (Id. ¶ 59.)  Instructively, these higher income figures were not provided to Mr. Meisel by Michael, Fanny or Ariel prior to or at the time of the Buy-Out.  (Id.)  Defendants ultimately sold the Properties, without Mr. Meisel's participation, for $52,000,000 – double the valuation that provided the basis of the Buy-Out price paid to Mr. Meisel. (Id. ¶ 62.)

### Plaintiff's Claims for Relief

The Complaint alleges three separate causes of action against all three defendants: (1) breach of fiduciary duty; (2) fraud; and (3) negligent misrepresentation.

Plaintiff's breach of fiduciary duty claim is founded upon Fanny's breaches of her strict fiduciary duties to her partner, Mr. Meisel, through "the planning and implementation of [defendants'] scheme" and Michael's and Ariel's active participation in those breaches.  (Id. ¶¶ 64–66.)  In this regard, the Complaint identifies certain particular actions and omissions undertaken by Michael (on his own behalf and as agent for his co-defendants), and certain conduct of all defendants, "in connection with and in furtherance of their scheme" (id. ¶ 67), including: (1) misrepresenting that defendants had no intention of selling the Properties; (2) providing to plaintiff the MK Report, including its misleading GAI and NOI figures for the Properties; (3) failing to disclose higher "projected" GAI and NOI numbers; (4) failing to disclose defendants' renovation and improvement plans for the Properties; (5) misrepresenting defendants' beliefs and intentions concerning the possibility of converting the Properties to condominiums; (6) interfering with Mr. Meisel's solicitation of third-party offers for the Properties; (7) withholding in bad faith permission

for Mr. Meisel to sell his Partnership interest to a third party; and (8) misrepresenting the supposed

necessity (and urgency) of using the 1031 Exchange Funds to purchase Mr. Meisel's interest.

In his fraud claim, plaintiff alleges that defendants "knowingly and intentionally"

misrepresented: (1) that they had no intention of selling the Properties; (2) that the value of the

Properties was between $22,375,000 and $33,375,000; and (3) that the only monies available to close

the Buy-Out were the supposedly short-lived 1031 Exchange Funds.  (Id. ¶ 70.)  Plaintiff's fraud

claim is also based on the allegations that defendants' "knowingly and intentionally" failed to

disclose:  (1) that the Properties were worth far more than they represented to Mr. Meisel; (2) that

they intended to sell the Properties immediately following the Buy-Out for significantly more than

the value they represented to Mr. Meisel; (3) that the actual GAI and NOI figures for the Properties

were materially higher than represented to Mr. Meisel; and (4) that defendants had certain plans in

place to substantially renovate and improve the Properties.  (Id. ¶ 72.)

Plaintiff's negligent misrepresentation claim is based on the same misrepresentations and

material omissions as his fraud claim, which the Complaint alleges, "in the alternative," were made

"negligently and with reckless disregard for the truth."  (Id. ¶ 77.)

## Argument

Plaintiff's detailed and exhaustive Complaint alleges each of the requisite elements of the

asserted causes of action and ties all three defendants to those claims through their concerted

participation in and furtherance of the fraudulent scheme.  Lacking a valid legal defense to these

allegations, defendants principally assert in their Motion numerous fact-bound arguments

inappropriate for resolution in the context of a motion to dismiss.  In conjunction with these

improper factual contentions, defendants proffer a handful of legal arguments that are directly

contrary to settled New York law.  As further explained below, the Motion is completely without

merit and should be denied.

## I.    The Legal Standards Governing Defendants' Motion.

In evaluating the Motion, the Court must "accept as true all of the facts alleged in the complaint . . . and draw all reasonable inferences in the light most favorable to the plaintiff." Vacold LLC v. Cerami, No. 00 Civ. 4024 (AGS), 2002 U.S. Dist. LEXIS 1895, at *8 (S.D.N.Y. Feb. 7, 2002) (citing Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)). To defeat the Motion, plaintiff's allegations need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While the Complaint "does not need detailed factual allegations" to satisfy this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

The detailed factual allegations of the Complaint readily satisfy these threshold pleading standards.

## II.    The Allegations of Plaintiff's Complaint Far Exceed the Minimal Standards to Avoid Dismissal Under Rule 12(b)(6).

The Complaint avers facts satisfying each element of the plaintiff's claims, and connects each defendant to those claims through their alleged concerted participation in the scheme to defraud. Far more than "speculative," these allegations paint a compelling portrait of an almost clichéd (but nonetheless insidious) fraudulent scheme to deprive a minority partner of participation in the proceeds of a secretly contemplate sale of the partnership's assets.

### A.    The Complaint More Than Adequately Alleges Concerted Action Among the Defendants to Defraud Plaintiff.

Ignoring the detailed averments of the Complaint, defendants attempt to parse the alleged three-way conspiracy to defraud Mr. Meisel by portraying themselves as three individuals, acting independently. Thus, defendants argue that Michael acted in his individual capacity in negotiating the Buy-Out – not as an agent for Fanny or Ariel – and that Fanny and Ariel therefore cannot be

10

liable for Michael's misrepresentations. (Mem. at 5.) Defendants then attempt to exonerate Michael by arguing that, as he was acting on his own behalf and was a stranger to the Partnership, he owed no fiduciary duty to Mr. Meisel. (Id. at 6-7, 15.) Regrettably for defendants, their fanciful factual arguments – inappropriate for a motion to dismiss – are directly contrary to the Complaint, which unequivocally pleads concerted action liability against all three defendants under New York law.

Concerted action liability is based on the principle that "all those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request or who lend aid or encouragement to the wrongdoer . . . are equally liable with him." Bichler v. Eli Lilly & Co., 55 N.Y.2d 571, 580, 450 N.Y.S.2d 776, 780 (1982) (internal quotations omitted). Under New York law, conspiracy and aiding and abetting reflect two variations on the theme of concerted action liability. See Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citing Lindsay v. Lockwood, 163 Misc. 2d 228, 234, 625 N.Y.S.2d 393, 397 (Sup. Ct. Monroe Cty. 1994)).

The Complaint more than sufficiently alleges liability against all three defendants on these two grounds: a conspiracy among all defendants to commit fraud and, through that conspiracy, Michael and Ariel's aiding and abetting of Fanny's breach of fiduciary duty. But the Complaint goes even further, linking all defendants to the asserted conduct through Michael's status as an agent acting on behalf of both Fanny and Ariel.

### (i) Conspiracy to Commit Fraud

To allege civil conspiracy linking several defendants to tortious conduct,[5] a plaintiff must plead the underlying tort and (1) a corrupt agreement between two or more persons; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in furtherance of the plan;

---

[5] While New York does not recognize "civil conspiracy" as an independent cause of action, allegations of conspiratorial conduct, if proved, may be employed to "connect the allegations of separate defendants[] with an otherwise actionable tort." Williams v. Sidley Austin Brown & Wood L.L.P., No. 600808/05, 2006 N.Y. Misc. LEXIS 2581, at *3 (Sup. Ct. Sept. 22, 2006).

and 4) resulting damages. See Andre Emmerich Gallery, Inc. v. Segre, No. 96 Civ. 889 (CSH), 1997 U.S. Dist. LEXIS 16899, at *27 (S.D.N.Y. Oct. 29, 1997) (citing Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991)). Conspiracy is subject to the general pleading standard of Rule 8(a), not Rule 9(b)'s more stringent requirements. See Andre Emmerich Gallery, 1997 U.S. Dist. LEXIS 16899 at *24 (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990)).

"A formal agreement to defraud is not necessary to plead conspiracy to commit fraud." Monahan Ford Corp. v. Ford Motor Co., 340 B.R. 1, 36 (Bankr. E.D.N.Y. 2006) (citing Mitland Raleigh-Durham v. Myers, 807 F. Supp. 1025, 1053 (S.D.N.Y. 1992)). The complaint need only allege "some factual basis for a finding of conscious agreement among the defendants." JP Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 252 n.3 (2005) (citing Hecht, 897 F.2d at 26 n.4). "[D]isconnected acts, when taken together, may satisfactorily establish a conspiracy." Monahan Ford, 340 B.R. at 36 (citing Sedona Corp. v. Ladenburg Thalmann & Co., No. 03 Civ. 3210 (LTS), 2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005)). Moreover, the conduct of each conspirator need not be independently fraudulent. See Winnick, 406 F. Supp. 2d at 257, 259.

Plaintiff's Complaint easily meets these threshold pleading requirements. First, the Complaint plainly alleges a "corrupt agreement": as set forth above, the Complaint avers that defendants acted in concert as participants in an unlawful scheme to defraud Mr. Meisel into selling his minority Partnership interest and then retain for themselves the significant profits that they generated by selling the Properties. Second, the Complaint alleges numerous overt acts in furtherance of that agreement, including Michael's alleged misrepresentations and omissions; Michael's interference with Mr. Meisel's solicitation of third-party offers to purchase the Properties;[6]

---

[6] If Michael were truly acting "independently" in squashing the Grub & Ellis offer, as defendants' suggest, it would be actionable by the Partnership as tortious interference with prospective business relations, as he intentionally interfered with the potential sale of the Properties by the Partnership. See Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council, 857 F.2d 55, 59 (2d Cir. 1988)(tortious interference with prospective business relations occurs when "the

Michael's and Ariel's purchase of Mr. Meisel's Partnership interest; Fanny's "consent" to that purchase; and all three defendants' subsequent consolidation of their Partnership interests and joint marketing and sale of the Properties. Third, through these (and other alleged) "overt acts," all three defendants participated in the conspiracy. Fourth, plaintiff has been damaged by relinquishing his Partnership interest at a fraudulently deflated price and through his exclusion from participation in the sales proceeds. As such, all three defendants face liability as a result of their participation in the fraudulent scheme.

### (ii)  Aiding and Abetting Breach of Fiduciary Duty

The Complaint also adequately alleges a breach of fiduciary duty claim against all defendants under an "aiding and abetting" theory. Whether this claim is labeled "aiding and abetting" or "knowingly participating" in a breach of fiduciary duty, the elements of the cause of action are the same: (1) that a fiduciary breached her obligations to another; (2) that the defendant knowingly induced or participated in the breach; and (3) damages. See Wight v. Bankamerica Corp., 218 F.3d 79, 91 (2d Cir. 2000); Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986).

Here, the allegations of Fanny's participation in the fraudulent scheme clearly satisfy the first element. The fiduciary duty arises in this case by virtue of Fanny's partnership with Mr. Meisel. See Drucker v. Mige Assocs. II, 225 A.D.2d 427, 428, 639 N.Y.S.2d 365, 366 (1st Dep't 1996) ("A partner has a fiduciary duty to the other partners"). Thus Fanny owed Mr. Meisel "a duty of undivided and undiluted loyalty" that lasted "until the moment the buy-out transaction closed." Blue Chip Emerald LLC v. Allied Partners, Inc., 299 A.D.2d 278, 279, 750 N.Y.S.2d 291, 294 (1st Dep't 2002). It is "well established that, when a fiduciary, in furtherance of its individual interests, deals with the beneficiary of the duty in a matter relating to the fiduciary relationship, the fiduciary is

defendant interfere[s] with business relations between the plaintiff and a third party, either with the purpose of harming the plaintiff or by means that are dishonest, unfair or improper.") (citation omitted).

strictly obligated to make full disclosure of all material facts . . . [i.e.] any information that could reasonably bear on the consideration of the fiduciary's offer." Id. As alleged in the Complaint, Fanny's fiduciary breaches include, inter alia, (1) her employment of Michael as an agent to defraud Mr. Meisel out of his Partnership interest; (2) her failure to disclose specified material facts to Mr. Meisel; (3) her "consent" to the Buy-Out; and (4) her knowing participation in the subsequent sale of the Properties.

Michael's and Ariel's participation in these breaches through their alleged acts in furtherance of defendants' scheme to defraud, as summarized above, are more than sufficient to satisfy the second element of "aiding and abetting" liability. Finally, plaintiff has clearly alleged damages flowing from defendants' joint conduct through his exclusion from the proceeds of defendants' sale of the Properties. Thus, plaintiff's allegations state a claim against Michael and Ariel for "aiding and abetting" or "knowingly participating" in Fanny's breaches of her fiduciary duty.

### (iii) Michael's Status as Agent

The Complaint also links all three defendants to plaintiff's causes of action through its allegations of Michael's agency status. As Fanny's and Ariel's agent, Michael's misrepresentations are imputed to Fanny and Ariel and render them liable for the tortious acts he committed while acting within the scope of his authority. British American & Eastern Co. v. Wirth, Ltd., 592 F.2d 75, 80 (2d Cir. 1979) (agent acting within the scope of his authority binds the principal); Sieger v. Zak, No. 06-CV-3313 (DRH), 2007 U.S. Dist. LEXIS 60010, at *5 (S.D.N.Y. Aug 15, 2007) (same).[7]

As an agent, Michael is individually liable for his tortious conduct as well. See Hotel Constructors, Inc. v. Seagrave Corp., 99 F.R.D. 591, 592 (S.D.N.Y. 1983) ("An agent is responsible for his own tortious acts, notwithstanding the agency relationship, and regardless of whether the

---

[7] In yet another misplaced factual argument, defendants assert that there was no agency relationship because "Fanny had no control" over Michael's negotiation for, and purchase of, Mr. Meisel's Partnership interest. (Mem. at 15.) This is quite obviously a factual matter (one that Mr. Meisel disputes), which is not capable of resolution in the context of a motion to dismiss under Rule 12(b)(6).

principal is also liable . . .") (citation omitted); see also American Ref-Fuel Co. v. Resource Recycling, Inc., 281 A.D.2d 574, 574, 722 N.Y.S.2d 571, 572 (2d Dep't 2001) ("The fact that an agent acts for a disclosed principal does not relieve the agent of liability for its own negligent acts."). Moreover, as agent for a fiduciary, Michael himself acquired an independent fiduciary duty to Mr. Meisel and can be held liable for his own acts in breach of that duty. See Metro. West Asset Mgmt., LLC v. Magnus Funding, Ltd., 03 Civ. 5539 (NRB), 2004 U.S. Dist. LEXIS 11761, at *31 (S.D.N.Y. June 24, 2004) (finding that defendant, as agent of a fiduciary, stood in a fiduciary relationship to the plaintiff).

. . .

In sum, the Complaint properly connects each defendant in at least three separate ways to each of plaintiff's claims. As discussed below, the Complaint also alleges tortious conduct sufficient to plead each element of those separate claims.

### B.     The Complaint Adequately Alleges Breach of Fiduciary Duty.

To state a claim for breach of fiduciary duty, plaintiff must allege (1) a fiduciary duty existing between the parties; (2) the defendants' breach of that duty; and (3) damages suffered by the plaintiff as a result of such breach. Metro. West, 2004 U.S. Dist. LEXIS 11761 at *25 (citations omitted). Plaintiff's allegations easily satisfy these elements.

As discussed above, Fanny and Michael (as Fanny's agent) owed a fiduciary duty to Mr. Meisel. Fanny's failure to disclose the material facts alleged in the Complaint, and her other acts in furtherance of defendants' scheme, constitute breaches of that fiduciary duty. Michael, in addition to aiding and abetting Fanny's breaches (along with Ariel), independently breached both his and Fanny's duties when, acting as Fanny's agent, he engaged in the misrepresentations, omissions, and other acts alleged in the Complaint in furtherance of defendants' scheme. These acts damaged Mr. Meisel by depriving him of his share of the proceeds of defendants' subsequent sale of the Properties. No more need be alleged to sustain this cause of action.

15

C.    **The Complaint Adequately Alleges Fraud.**

The Complaint also more than sufficiently alleges fraud, even under the heightened pleading standards of Fed. R. Civ. P. 9(b).  To state a claim for fraud under New York law, claimant must allege that "the defendant made a material false representation or omission of an existing fact, with knowledge of its falsity and an intent to defraud the plaintiff . . . on which the plaintiff reasonably relied and suffered damages as a result[.]"  Monahan Ford, 340 B.R. at 26 (citing Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 276 (2d Cir. 1992)).  To pass muster under Rule 9(b), the Complaint need only allege the time, place, speaker and content of the alleged fraudulent statement, and explain why the statement was false.  See Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990) (citing DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)); Andre Emmerich Gallery, 1997 U.S. Dist. LEXIS 16899 at *22 (citation omitted).  Scienter, however, need not be alleged with specificity.  See Ouaknine, 822 F.2d at 80 ("allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent") (citations omitted).

Plaintiff's fraud allegations clearly satisfy these standards.  The Complaint quotes the precise language of each misrepresentation made by Michael (e.g., that "we are not sellers" and a "window of opportunity has opened that may last just days") and alleges the date and the manner of the misrepresentation (e.g., letter or e-mail).  (See, e.g., Compl. ¶¶ 30, 43.)  The Complaint also specifies with particularity the omitted material facts that defendants purposefully failed to disclose to Mr. Meisel during the negotiation of the Buy-Out.  (Id. ¶ 72.)  The detailed allegations of defendants' overarching scheme provide a very "strong inference" of fraudulent intent, which plaintiff also alleges directly.  (Id. ¶¶ 70, 72.)  Finally, plaintiff pleads "reasonable reliance" on the alleged misrepresentations and omissions.  (Id. ¶¶ 71, 73.)  Thus, plaintiff has adequately alleged a cause of action for fraud.

16

D.    **The Complaint Adequately Alleges Negligent Misrepresentation.**

Under New York law, to state a claim for negligent misrepresentation, a plaintiff must allege: "(1) carelessness in imparting words (2) upon which others were expected to rely (3) upon which they did act or failed to act (4) to their damage; further, (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound to by some relationship [of] duty or care." See Gordon P. Getty Family Trust v. Peltz, 93 Civ. 3162, 1998 U.S. Dist. LEXIS 3945, at *22 (S.D.N.Y. Mar. 27, 1998) (citing ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F. Supp. 1308, 1333 (S.D.N.Y. 1997)).

The allegations of the Complaint clearly set forth each of the elements described above. The requisite duty of care arises from Fanny's fiduciary duty as Mr. Meisel's partner. The Complaint avers, in the alternative to plaintiff's fraud claim, that Michael made the alleged misrepresentations "negligently and with reckless disregard for the truth." (Compl. ¶ 77.) Finally, the alleged statements were made directly to Mr. Meisel during Michael's pre-Buy-Out negotiations with Mr. Meisel; thus, as alleged, they were clearly made with the intent and expectation that Mr. Meisel would rely upon them, which, it is alleged, he did to his detriment.

III.    **Nearly All of Defendant's Asserted Arguments are Fact-Bound, Contrary to the Allegations of the Complaint and Inappropriate for a Motion to Dismiss.**

Ignoring the allegations of the Complaint (which are more than sufficient to sustain plaintiff's claims), defendants offer a series of meritless fact-bound arguments that are inappropriate for consideration on a motion to dismiss under Rule 12(b)(6).

A.    **The Complaint Clearly Pleads the Existence of a Fiduciary Duty.**

Defendants argue that they owed no fiduciary duty in connection with the negotiation of the Buy-Out. This argument rests on inapposite case law and willful blindness to the clear allegations of the Complaint.

It is beyond dispute that Fanny owed Mr. Meisel a fiduciary duty as his partner in the Partnership. See Drucker, 225 A.D.2d at 428, 639 N.Y.S.2d at 366. Defendants assert, however, that the misrepresentations and omissions alleged in the Complaint were made by Michael "in his separate individual capacity." (Mem. at 15.) As discussed above, this argument is directly contrary to the "concerted action" allegations of the Complaint and, at most, raises a disputed factual issue. The matter is really quite simple: Fanny owed Mr. Meisel a fiduciary duty and, the Complaint alleges, she conspired with her co-defendants, including Michael, her agent, to breach that duty and commit fraud and negligent misrepresentation. Defendants' factual assertions to the contrary are irrelevant to the Motion.

Equally unavailing is defendants' fact-bound argument that they owed no fiduciary duty to Mr. Meisel because, due to "years of disharmony," Mr. Meisel and Michael were "acting and contracting at arms-length to a business transaction." (Mem. at 15.) First, defendants' argument is based on facts that are not alleged in the Complaint. Second, New York law is clear that the existence of an acrimonious relationship between partners or other fiduciaries does not extinguish their fiduciary duties to each other. See Newburger, Loeb & Co. v. Gross, 563 F.2d 1057, 1079 (2d Cir. 1977) ("partners are not relieved of fiduciary duty by strained relations between them"); Global Minerals & Metals Corp. v. Holme, 35 A.D.3d 93, 98, 824 N.Y.S.2d 210, 214-15 (1st Dep't 2006) ("fiduciary duties were not extinguished by [defendant's] acrimonious relationship with [plaintiff]").

Defendants' cited cases on this issue are easily distinguished, as the courts in those cases merely held that, in the *absence* of a partnership or other special relationship, an ordinary arms-length commercial relationship will not independently give rise to a fiduciary duty. See In re Ames Dep't Stores, Inc., 274 B.R. 600, 623-24 (Bankr. S.D.N.Y. 2002) (holding that no agency or trustee relationship existed); Beneficial Commercial Corp. v. Glick, 601 F. Supp. 770, 772 (S.D.N.Y. 1985) (litigants were parties to an arms-length contract with no prior business dealings). Those cases are

18

inapplicable here, where a fiduciary duty arises as a matter of law from Fanny's status as Mr. Meisel's longstanding partner in the Partnership.[8]

**B.    Defendants' "Reasonable Reliance" Arguments Are Entirely Fact-Bound.**

Defendants devote a significant portion of their Motion to arguing that Mr. Meisel's claims are barred because "he could not have and did not justifiably rely on any purported misrepresentations or omissions made by Michael." (Mem. at 6-11.) Plaintiff explicitly alleges in the Complaint that he "reasonably relied" on defendants' misrepresentations. (Compl. ¶¶ 71, 78.) But defendants ask this Court to disregard those allegations in favor of various factual assertions that are incapable of resolution on a motion to dismiss and, in any event, directly contrary to New York law. As such, the Court should reject defendants' "reasonable reliance" arguments.

"Courts applying New York law generally have found that the question of a plaintiff's reasonable reliance raises issues of fact that should not be resolved on a motion to dismiss." ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F. Supp. 1308, 1324 (S.D.N.Y. 1997); see also Solow v. Conseco Inc., 06-CV-5988 (BSJ), 2008 U.S. Dist. LEXIS 9234, at *11 (S.D.N.Y. Jan 11, 2008) (questions of reasonable reliance "raise issues of fact that often make them unsuitable for determination on a motion to dismiss"). Indeed, defendants' own cases recognize that it is "a rare circumstance" when the reasonableness of a plaintiff's reliance can be resolved even following discovery at the summary judgment stage. See Global Minerals, 35 A.D.3d at 99, 824 N.Y.S.2d at 215.

Ignoring this authority, defendants assert several meritless, fact-bound arguments on the issue of plaintiff's reasonable reliance: (1) that there was a "long standing and contentious

---

[8] Moreover, even if there was no partnership relationship in this case, the Court could not resolve such a fact-bound inquiry on defendants' motion to dismiss. New York case law is clear that a fiduciary relationship can arise between contracting parties in certain instances. Courts consider "highly fact specific" factors in making this determination, such as "the sellers unique or special expertise"; "the existence of a relationship of trust or confidence"; and "whether the speaker was aware of the use to which the information would be put, and supplied it for that purpose." Gordon P. Getty Family Trust, 1998 U.S. Dist. LEXIS 3945 at *23.

relationship" between Mr. Meisel and defendants; (2) that Mr. Meisel is a "sophisticated investor" who, with "hints of [the] falsity" of Michael's misstatements, had an obligation to protect himself from defendants' fraud; and (3) that the Buy-Out Agreement's boilerplate merger clause and releases undermine Mr. Meisel's allegations of reasonable reliance. (Mem. at 7-10.) None of these arguments has any merit.

### (i) The Parties' "Contentious" Relationship

Defendants incorrectly argue that the parties' supposedly "contentious" relationship precludes plaintiff from asserting reasonable reliance. First, this argument is entirely fact-bound. While the Complaint alleges that certain disputes arose between the parties regarding the management of the Partnership and the Properties, the Court cannot on the basis of the Complaint, reading reasonable inferences in plaintiff's favor, determine the nature and tenor of these disputes or whether they should have any bearing on the reasonableness of plaintiff's reliance on Michael's misrepresentations. Significantly, defendants' authority in ostensible support of this argument was decided on summary judgment, after discovery, where the Court determined on a developed record that the "acrimony" of the parties' negotiations, among several other factors, undermined plaintiff's allegations of reasonable reliance. See Shea v. Hambros PLC, 244 A.D.2d 39, 46, 673 N.Y.S.2d 369, 374 (1st Dep't 1998). Whether sufficient "acrimony" existed in this case to make plaintiff's reliance on Michael's statements unreasonable is, at best, a factual issue that certainly cannot be resolved at the pleading stage.

Perhaps more importantly, New York law is settled that any contentiousness or acrimony between parties who are bound together by the "uncompromising" duties of partners will not extinguish the fiduciary duty between them. Newburger, 563 F.2d at 1079; Global Minerals, 35 A.D.3d at 98, 824 N.Y.S.2d at 214-15. This authority is entirely dispositive of the matter.

### (ii) *Mr. Meisel's Supposed "Sophistication" and "Hints of Falsity"*

Defendants also argue that the Court should disregard Mr. Meisel's allegations of reasonable reliance because he was a "sophisticated investor" with an "affirmative duty" to protect himself, and he allegedly received "hints of its falsity" requiring him to "make additional inquiry to determine their accuracy." (Mem. at 9.) Again, these are entirely fact-bound arguments (based largely on unplead allegations) that are inappropriate for resolution by the Court at this stage of these proceedings.[9] In any event, New York courts have disregarded such considerations in the context of frauds perpetrated between partners in breach of the strict standards of fiduciary duty. See Blue Chip Emerald LLC v. Allied Partners Inc., 299 A.D.2d 278, 279, 750 N.Y.S.2d 291, 295 (1st Dep't 2002) (rejecting defendant's argument that plaintiff was "commercially sophisticated and advised by counsel" and holding that "a fiduciary cannot by contract relieve itself of the fiduciary obligation of full disclosure by withholding the very information the beneficiary needs in order to make a reasoned judgment whether to agree to the proposed contract.").

### (iii) *Contractual Disclaimers and Releases*

Finally, defendants argue that Mr. Meisel's reliance is unreasonable as a matter of law in light of the Buy-Out Agreement's boilerplate integration clause and general releases. (Mem. at 10-11.) This argument is once again directly contrary to New York law, which holds that such contractual language cannot bar a claim that the very contract at issue containing the subject disclaimers and releases was induced by fraud. In any event, like defendants' other "reasonable reliance" arguments, defendants' argument is, at best, fact-bound and entirely inappropriate for resolution on a motion to dismiss.

---

[9] Each of defendants' cases in support of these arguments was decided on the basis an evidentiary record at the summary judgment stage or after. See Banque Franco-Hellenique de Commerce Int'l et Mar. v. Christophedes, 106 F.3d 22, 24 (2d Cir. 1997) (summary judgment, treated as "trial to the court on a stipulated record"); Keywell Corp. v. Weinstein, 33 F.3d 159, 160 (2d Cir. 1994) (summary judgment); Global Minerals and Metals Corp. v. Holme, 35 A.D.3d 93, 99, 824 N.Y.S.2d 210, 215 (1st Dep't 2006) (summary judgment); Abrahami v. UPC Constr. Co., 224 A.D.2d 231, 231-33, 638 N.Y.S.2d 11, 12 (1st Dep't 1996) (appeal from judgment after non-jury trial).

Under New York law, a general integration clause disclaiming all representations or promises other than those expressed in the language of the contract does not bar a claim based on fraud. <u>See</u> <u>Manufacturers Hanover Trust Co. v. Yanakas</u>, 7 F.3d 310, 315 (2d Cir. 1993) ("even when a contract contains an omnibus statement that the written instrument embodies the whole agreement, . . . a party may escape liability under the contract by establishing that he was induced to enter the contract by fraud") (internal quotations omitted) (citing <u>Danann Realty Corp. v. Harris</u>, 5 N.Y.2d 317, 320, 184 N.Y.S.2d 599, 601-02 (1959)); <u>see also</u> <u>Sabo v. Delman</u>, 3 N.Y. 155, 161-62, 164 N.Y.S.2d 714, 717-19 (1957) (holding that a general merger clause is ineffective to preclude evidence that a party was fraudulently induced to enter into the contract).[10]  Under this settled authority, the Buy-Out Agreement's boilerplate integration language is not sufficient to bar Mr. Meisel's claims. (<u>See</u> Grunberg Aff., Ex. A, ¶¶ 8, 9.)

Similarly, the general release provisions of the Buy-Out Agreement do not preclude Mr. Meisel's from asserting his fraud or negligent misrepresentation claims.  A release is governed by principles of contract law, and is voidable if, as alleged here, a party is fraudulently induced to execute it. <u>See</u> <u>Lobel v. Maimionides Medical Center</u>, 39 A.D.3d 275, 276, 835 N.Y.S.2d 28, 29 (1st Dep't 2007).  Nor do the Buy-Out Agreements' disclaimer and release provisions bar Mr. Meisel's claim for breach of fiduciary duty, as such provisions can have no effect on a breach of fiduciary duty claim between partners or co-venturers. <u>See</u> <u>Blue Chip</u>, 299 A.D.2d at 280, 750 N.Y.S.2d at 294-95.

---

[10] Only where a contracting party disclaims reliance on a *specific* representation will he relinquish a fraud in the inducement claim based on the particular representation disclaimed.  <u>Yanakas</u>, 7 F.3d at 315 (citing <u>Danann</u>, 5 N.Y.2d at 320-21, 184 N.Y.S.2d 599, 601-02).  Here, the Buy-Out Agreement contains only a general disclaimer and integration clause, and does not refer to any of the specific misrepresentations asserted in the Complaint.

IV.    **Defendants' Few Legal Arguments Are Meritless.**

   A.    **Michael's Misrepresentations and Material Omissions Concerning the Sale and Renovation of the Properties are Actionable as Fraud.**

Defendants argue that plaintiff's allegations concerning "statements Michael made and/or failed to make regarding the renovation and sale of the apartment buildings" are not actionable as fraud because they are "statements of future intentions, promises or expectations" and not "misrepresentations of present material fact." (Mem. at 12.) This argument misconstrues both plaintiff's allegations and New York law.[11]

"[A]n action in fraud is cognizable under New York law where a party makes a promise that it has no present intention of performing, because the undisclosed intention not to perform constitutes an actionable misrepresentation of a material fact." David Tunick, Inc. v. Kornfeld, 91 Civ. 7027 (DNE), 1993 U.S. Dist. LEXIS 16160, at *2 (S.D.N.Y. Nov. 16, 1993). This is so because "a promise . . . made with a preconceived and undisclosed intention of not performing it, . . . constitutes a misrepresentation." Deerfield Communications Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956, 502 N.E.2d 1003, 1004 (1986); see also Channel Master Corp. v. Aluminium Ltd. Sales, Inc., 4 N.Y.2d 403, 407, 151 N.E.2d 833, 835 (1958) ("a statement of present intention is deemed a statement of a material existing fact, sufficient to support a fraud action").

Thus, Michael's false statement that defendants had no intention of selling the Properties is not "promissory," it is *factual*. Plaintiff does not allege that Michael "promised" not to sell the Properties; he alleges that Michael stated "we are not sellers" and "the buildings are not for sale" as inducement for Mr. Meisel's agreement to the Buy-Out, all the while harboring a contrary intention

---

[11] Defendants' argument does not even make sense with respect to the Complaint's allegations that defendants *failed to disclose* plans to renovate or improve the properties. In that case, it is the absence of any disclosure, not a supposed "promise," upon which plaintiff relied.

to sell the Properties promptly upon closing the Buy-Out. These are actionable misrepresentations under New York law.[12]

### B.   Plaintiff Did Not Waive His Claims Founded on Michael's Misrepresentation of the "1031 Opportunity."

Defendants baldly assert, without citation to legal authority, that plaintiff is barred from pursuing the component of his claims based on the misrepresented "1031 Opportunity" because plaintiff closed the Buy-Out with knowledge that the 1031 Exchange Funds would not be used. Defendants are simply wrong. Mr. Meisel relied on Michael's misrepresentations regarding the 1031 Funds in executing the Letter Agreement, which was binding. As a result, Mr. Meisel was already obligated to sell his interest when he learned that Michael's prior claims of urgency were feigned and that Michael and Ariel would not be using the supposedly short-lived 1031 Exchange Funds to purchase his Partnership interest. Under New York law, Mr. Meisel's decision to proceed with that binding transaction did not waive his right to assert a claim on the basis of Michael's fraud.

The Letter Agreement was an enforceable contract to sell Mr. Meisel's Partnership interest. It "memorialize[s]" the "agreement" reached that day by which Mr. Meisel agreed to sell his interest at a fixed price on or before a fixed date, and, by its terms, was "binding upon and [shall] inure to the benefit of heirs, successors, and assigns of the parties and the Partnership." See Vacold, 2002 U.S. Dist. LEXIS 1895 at *11 (finding letter agreement binding).[13] The Complaint alleges that, on July 11, 2005 – eighteen days *after* he became bound by the Letter Agreement to sell his Partnership

---

[12] Defendants' cases are inapposite and apply a rule of New York law that has no bearing on the facts alleged in the Complaint – i.e., that no tort claims lie where an alleged misrepresentation is "promissory rather then factual." U.S. West Fin. Servs., Inc. v. Tollman, 786 F. Supp. 333, 344 (S.D.N.Y. 1992); see also Kirk/Marshland Adver., Inc. v. Cunard Line Ltd., 188 A.D.2d 440, 440, 591 N.Y.S.2d 1013, 1014 (1st Dep't 1992) (refusing to allow tort claims based on promises that were "not a binding commitment"). As discussed, Michael's false statements of defendants' intent is a misrepresentation of fact.

[13] While the Letter Agreement does state that "[t]he parties agree to execute such other and further documentation as may be necessary to effectuate this agreement," New York law is clear that "the need to fulfill certain formalities is not inconsistent with a binding agreement." See Vacold, 2002 U.S. Dist. LEXIS 1895 at *15 (finding letter agreement binding despite its explicit call "for the completion of certain documents and the provision of certain 'standard representations and warranties'").

interest – defendants' attorney notified Mr. Meisel that Michael did not, in fact, need to use 1031 Exchange Funds to buy Mr. Meisel's interest. By executing the formal Buy-Out Agreement on July 22, 2005, and thereby affirming the binding Letter Agreement, Mr. Meisel did not waive, but gave rise to, his claim for damages arising from defendants' fraudulent inducement. See Bazzano v. L'Oreal, S.A., 93 Civ. 7121 (SHS), 1996 U.S. Dist. LEXIS 6529, at *7 (S.D.N.Y. May 14, 1996) (citing Ettlinger v. Nat'l Surety Co., 221 N.Y. 467, 470, 117 N.E. 945, 946 (1917)); see also Clearview Concrete Prods. Corp. v. Gherardi, 88 A.D.2d 461, 466-67, 453 N.Y.S.2d 750, 754 (2d Dep't 1982) (affirmance of a fraudulently induced contract "does not of itself . . . waive recovery of fraud damages"). Defendants' "waiver" argument is completely meritless.[14]

## Conclusion

For all of the reasons set forth above, this Court should deny defendants' Motion to Dismiss. In the alternative, if the Court deems any cause of action in the Complaint deficient as asserted against any defendant, plaintiff respectfully requests that the dismissal of that claim be without prejudice, in order to allow plaintiff to reassert that claim with amplified factual allegations.

Dated:   March 28, 2008
      New York, New York

                ROSENBERG & GIGER P.C.

                By: _____
                    Matthew H. Giger (MG3731)
                    John J. Rosenberg (RG1206)
                488 Madison Avenue, 10th Floor
                New York, NY  10022
                Tel  (212) 705-4824
                Fax  (212) 593-9175
                *Attorneys for Plaintiff*

---

[14] Alternatively, the issue of whether Mr. Meisel's affirmance of the contract should be construed as an "affirmance of the fraud" is, at most, "a matter of intent and a question of fact to be resolved by a jury." DuPont v. Perot, 59 F.R.D. 404, 413 (S.D.N.Y. 1973). Thus, defendants' waiver argument is at best a fact-bound defense inappropriate for resolution on a motion to dismiss under Fed. R. Civ. P. 12(b), and it should be denied for this reason as well.