UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

BRUCE M. MEISEL,

                             *Plaintiff,*

          -against-

MICHAEL GRUNBERG, FANNY GRUNBERG, and
ARIEL GRUNBERG,

                        *Defendants.*

-------------------------------------------------------------------- x

07 Civ. 11610 (PKL)

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*
Andrew N. Krinsky (AK 0997)
Linda S. Roth (LR 8255)
1350 Broadway
New York, New York 10018
(212) 216-8000

## Preliminary Statement

Defendants, Michael Grunberg ("Michael"), Fanny Grunberg ("Fanny") and Ariel Grunberg ("Ariel") submit this supplemental memorandum of law in further support of their motion to dismiss the complaint herein. More particularly, Michael, Fanny and Ariel submit this memorandum of law in support of their motion to dismiss the fraud and negligent misrepresentation claims asserted by plaintiff, Bruce Meisel ("Bruce") because a series of written communications between Bruce and Jerome Block ("Block"), a professional real estate appraiser and consultant, make it absolutely clear that, in deciding to sell his Partnership interest to Michael and Ariel, Bruce did not rely on (mis)representations allegedly made to him by Michael. As the communications – primarily emails – demonstrate, during the protracted negotiations between Bruce and Michael regarding the sale of Bruce's Partnership interest, Bruce was in regular contact with Block, who advised Bruce with respect to the value of his Partnership interest and strategy in negotiating with Michael. In addition, Bruce repeatedly expressed both his distrust of Michael and his own views regarding the value of his Partnership interest. In sum, the communications, which were produced by Bruce in the early stages of discovery and which, upon information and belief were available to Bruce at the time the Complaint herein was prepared and filed, preclude any possible allegation of "reasonable reliance" by Bruce. Accordingly, the fraud and negligent misrepresentation claims should be dismissed. *See, Keywell Corp. v. Weinstein*, 33 F. 3d 159, 164 (2d Cir. 1994) (when a party is aware that certain representations may be false, that party cannot reasonably rely on those representations).

## Summary of the Complaint

Plaintiff's Claims are summarized in Defendants' Memorandum of Law in Support of Their Motion to Dismiss dated February 29, 2008 and the Court is respectfully referred thereto. The gravamen of the Complaint, however, is that Michael made misrepresentations to Bruce during their negotiation of the sale of Bruce's Partnership interest to Michael and Ariel and that Michael gave Bruce an inaccurate valuation of Partnership assets (namely two adjacent apartment buildings) in the range of $22,375,000 and $33,375,000. Bruce claims that he reasonably relied on Michael's representations and the inaccurate valuation in deciding to sell his Partnership interest and, as a result, has been damaged. As the undisputed documentary evidence shows, nothing could be farther from the truth.

## Argument

### POINT I

### BRUCE DID NOT RELY ON REPRESENTATIONS MADE TO HIM BY MICHAEL

Allegations of reasonable reliance are required in order to properly state a claim for fraud and/or negligent misrepresentation. ***Lama Holding Company v. Smith Barney***, 88 N.Y. 2d 413, 421, 646 N.Y.S. 2d 76, 668 N.E. 2d 1370 (1996); ***Ackerman v. Price Waterhouse***, 252 A.D. 2d 179, 683 N.Y.S. 2d 179 (1st Dep't 1998). Thus, Bruce alleges in paragraphs 75 and 80 of the Complaint that he "reasonably relied" on defendants' misrepresentations and omissions in agreeing to sell his Partnership interest for $7.8 million. His documented communications with Block, however, belie any possible claim of reliance. While we urge the Court to read in full the communications attached to the Affidavit of Linda S. Roth sworn to on August 14, 2008 ("Roth Aff.") and submitted herewith, highlights from those communications are set forth below.

In a memorandum to Block dated January 9, 2005, Bruce, referring to Michael wrote:

> ***I assume he would like to buy me out at a deep discount.***
> I would like to get him to sell the whole property or if he
> doesn't want to do that but he wants me out then we have
> to arrive at a price that is reasonable, which I think is going
> to be hard for him. [Emphasis added.]

(Roth Aff. Ex. B).

After a meeting with Michael and after conferring with Block, on March 23, 2004 Bruce

wrote Block again and this time said:

> Yesterday's meeting with Michael was the first time we
> actually had a constructi[ve] partnership meeting. ***Implicit***
> ***in the meeting was their abandonment of a strategy of***
> ***hoping that I was ignorant of the market place valuations.***
>
> \*               \*               \*               \*
>
> ***The thought occurred to me that they have now realized***
> ***that with every passing day and increase in rental income,***
> ***the value of my interest, which they now understand that I***
> ***know is pegged to gross rent roll, increases.*** Therefore,
> time is not on their side. On the other hand, I don't want to
> push this too far as the market could easily start to turn as
> interest rates rise. [Emphasis added.]

(Roth Aff. Ex. C).

Just a few days later, on March 26, 2004, Bruce wrote Block another email and indicated

that Michael's statements reflect his own "subjective reality" rather than the "real world."

> I was pretty tired yesterday after my meeting with MG
> because when you meet with that type of person it takes
> everything out of you just trying to stay on course and keep
> the exchanges in the real world and not the world they
> would like to create. ***The way they negotiate, and I am***
> ***sure you understand this from your experience, is that***
> ***they try to create their own subjective reality that touches***
> ***on fact but then materially deviates from it in reaching a***
> ***conclusion.***

> *I operate from logic and reason.* Simply put, their number for my interest assumes a multiple of roll that is in the 8 to 10x range. For a triple A location, 10 to 12x has always been a constant so I can always get that. They are telling me that it is exuberant market but they essentially don't want to recognize that in valuing my interest only theirs, Interesting. Frankly, instinctively, the number I threw out of $29 to $30m split the difference traditional valuation and exuberant valuation and is absolutely fair, which is probably the problem for them. The suggestion is grounded in logic and the long and short term market realities. [Emphasis added.]

(Roth Aff. Ex. D).

On March 27, 2004, Bruce wrote to Block yet again and expressed his skepticism about the Massey Knakal Opinion of Value. Block wrote back and confirmed Bruce's thoughts.

> Correct me if I am wrong, but when I read the Massey-Knakal report, it appears to me that the $2,085,828 annual rent roll does NOT include 8 vacancies in building 15 and one vacancy and a supt.'s 6th floor apartment in building 19. The vacancies are all in the A line units, which are the largest and most desirable units. In fact, that is the unit Fanny Grunberg occupies although her unit is listed as "vacant" in the report along with the other two units on the 8th floor so the entire 8th floor in building 15 is listed as vacant. If these units were in fact rented at an average of as low as $3,500 to $4,000 a month, another $375,000 to $430,000 would drop to the bottom line, making the ann[ua]l rent roll closer to between $2,460,000 and $2,517,000.

Block wrote in part:

> The multiples found in the Massey Knakal show that the latest sales bespeak of values far higher than a 12x gives them for a $24M value. Bob Knakal told me to my face not two weeks ago about the sale of 25 Fifth Avenue at almost 20x gross income ....and I think our location is even better.

(Roth Aff. Ex. E).

In another email, Block told Bruce that he read a letter from Michael that Bruce forwarded to him and then, referring to Michael says, "He certainly sounds like a sarcastic and vindictive person, but that's OK ... it's just talk and bluster." (Roth Aff. Ex. F).

Finally, in emails dated May 11 and May 12, 2004, Bruce and Block discuss the sale of two buildings on West 55th Street for a total of $22 million and consider how this sale compares to the value of the properties owned by the Partnership at 15 and 19 West 55th Street.    In particular, they conclude that 19x multiple and not the lower multiple suggested by Massey Knakal should apply to the properties owned by the Partnership (Roth Aff. Ex. G).

Needless to say, the communications between Bruce and Block are telling.    They demonstrate that Bruce was relying on his own business sense and the advice he received from Block regarding the value of the buildings owned by the Partnership and, hence, the value of his Partnership interest and, more importantly, that he in no way trusted the Massey Knakal Opinion of Value or anything else that Michael told him. Allegations to the contrary are pure fabrication. Without reasonable reliance, the fraud and negligent misrepresentation claims fail and should be dismissed.[1]    ***Hunt v. Alliance North American Gov. Income Trust Inc.***, 159 F. 3d 723, 730 (2d Cir. 1998) (no reasonable reliance where prospectuses available to plaintiffs contradicted fraudulent advertising materials); ***484 Associates, L.P. v. Moy,*** 2007 WL 683999 (S.D.N.Y March 5, 2007) (no reasonable reliance where plaintiff had appraisal that contradicted document

---

[1]    The arguments regarding reliance (or, the lack thereof) set forth in this supplemental memorandum are in addition to the arguments regarding reliance set forth in Defendants' Memorandum of Law in Support of Their Motion to Dismiss previously submitted by Michael, Fanny and Ariel. In their initial brief, defendants argued that Bruce could not have and did not rely on any statements made by Michael because Bruce is an attorney, a banker and an experienced and sophisticated real estate developer and because Bruce and Michael were engaged in arms length business negotiations between a buyer and a seller. Defendants also argued that Bruce could not have and did not rely on any statements made by Michael because Bruce had been engaged in years and years of litigation with Fanny regarding the Partnership and thus, Bruce's relationship with Michael, Fanny and Ariel was strained and adversarial.

on which plaintiff allegedly); ***Brown v. E.F. Hutton Group, Inc.,*** 991 F. 2d 1020, 1032-33 (2d Cir. 1993) (no reasonable reliance where offering materials contradicted oral misrepresentations by brokers); ***Granite Partners, L.P. Bear Stearns & Co.,*** 58 F. Supp. 2d 228, 259 (S.D.N.Y. 1999) (no reasonable reliance where plaintiffs' investment advisors where under a duty to produce written evaluations of plaintiff's securities holdings, which would have revealed falsity of defendants' fraudulent valuations, despite advisors' failure to do so); ***Marine Midland Bank v. Palm Beach Moorings, Inc.,*** 403 N.Y.S. 2d 15, 17 (1st Dep't 1978) (no reasonable reliance where plaintiff failed to take advantage of unlimited access to corporation's records before purchasing corporation and guaranteeing notes).

## Conclusion

It is plain that Bruce did not rely on any statements or representations made by Michael when he decided to sell his interest in the Partnership. Accordingly, his trumped up claims of fraud and negligent misrepresentation should be dismissed.

Dated: New York, New York
      August 15, 2008

Respectfully submitted,

**TARTER KRINSKY & DROGIN LLP**

By: _____
      Andrew N. Krinsky (AK 0997)
      Linda S. Roth (LR 8255)
      1350 Broadway
      New York, New York 10018
      (212) 216-8000