UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRUCE M. MEISEL,

               Plaintiff,

   - against -

MICHAEL GRUNBERG, FANNY GRUNBERG,
AND ARIEL GRUNBERG,

            Defendants.

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8 31 09**

**OPINION AND ORDER**

07 Civ. 11610 (PKL)

**APPEARANCES**

ROSENBERG & GIGER P.C.
488 Madison Avenue
New York, New York  10022
Matthew H. Giger, Esq.
John J. Rosenberg, Esq.

Attorneys for Plaintiff

TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY  10018
Andrew N. Krinsky, Esq.
Linda S. Roth, Esq.

Attorneys for Defendants

**LEISURE, District Judge:**

Bruce Meisel ("Meisel" or "plaintiff") brings this diversity action against Michael Grunberg ("Michael"), Fanny Grunberg ("Fanny"), and Ariel Grunberg ("Ariel") (collectively, "defendants")[1] for breach of fiduciary duty, fraud, and negligent misrepresentation. Plaintiff claims that defendants misrepresented and omitted material facts in order to induce him into selling his minority interest in the 15 and 19 West 55th Street Realty Company (the "Partnership") at a price significantly below actual value. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.     FACTS

For purposes of this motion, the Court accepts all well-pleaded factual allegations in the complaint as true. Holmes v. Grubman, 568 F.3d 329, 332 (2d Cir. 2009) (citing Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008).

In September of 1976, plaintiff entered into a written partnership agreement (the "Agreement") with Fanny and her late husband, establishing the Partnership. (Compl. ¶ 13.) The express purpose of the Agreement was "to acquire, improve, manage and operate two (2) adjacent apartment house buildings" (id. ¶ 14) located at 15 and 19 West 55th Street, New York, New York (the "Properties") (id. ¶ 1). When Fanny's husband died in 1991, Fanny succeeded to his Partnership interest for a total interest of 70%; plaintiff continued to own her original 30%. (Id. ¶ 17.) Fanny also succeeded to her late husband's management responsibilities under the Agreement, which included (i) inspecting the Properties; (ii) making all capital improvements,

---

[1] To distinguish the three defendants, all of whom are family members who share the last name Grunberg, the Court will refer to each defendant by their first name. The Court intends no disrespect to any defendant.

repairs, and replacements necessary or advisable in order to maintain the Properties as a first-class apartment building; (iii) preparing reports of operations for the partners and other interested parties; and (iv) using her best efforts to dispose of vacant space in the buildings. (Id. ¶¶ 18-19.) However, the Agreement explicitly required the prior written consent of all partners for the Partnership to undertake certain actions, including (i) selling, exchanging, leasing, or otherwise disposing of any part of the Properties, and (ii) making repairs, alterations, or capital improvements (a) that, for any one item, exceeded $10,000, or (b) which, in any fiscal year of the Partnership, exceeded $60,000 in the aggregate. (Id. ¶ 20.) Additionally, the Agreement prohibited the partners from selling or transferring their interest in the Partnership without the written consent of all partners. (Id. ¶ 21.) Plaintiff asserts that in or about 2000, Michael began to manage the day-to-day affairs of the Partnership "on behalf of [Fanny] and as her agent." (Id. ¶ 10.)

Around 2002, disputes arose between plaintiff and defendants over whether the Partnership was fully utilizing the Properties. (Id. ¶¶ 22-23.) Plaintiff contends that there were numerous vacant apartments, many of which required renovation; that apartments were being rented at below-market rates; and that Fanny personally rented two apartments at a significant discount. (Id. ¶ 23.) In an attempt to rectify these problems and increase the Partnership's profits, plaintiff recommended renovating apartments and making other physical improvements to the Properties; taking more aggressive steps to rent vacant apartments; and/or converting the Properties into condominiums to take advantage of a bullish condominium market. (Id. ¶ 25.) However, defendants declined to implement any of plaintiff's suggestions, and plaintiff was unable to act alone pursuant to the Agreement. (Id. ¶ 25.)

In 2005, plaintiff began proposing possible ways of winding up the Partnership. (Id. ¶¶ 27, 29.) Although plaintiff suggested selling the Properties or allowing one partner to purchase the other's Partnership interest (id. ¶ 29), Michael, acting on behalf of and as agent for Fanny and Ariel (id. ¶ 28), represented that defendants would only consider the family's purchase of plaintiff's 30% interest (id. ¶ 32). Specifically, Michael informed plaintiff that "[t]he buildings are not for sale" (id. ¶ 30), "we [i.e., the Grunbergs] are not sellers" (id.), and "[y]ou own a 30% interest that you do not control or manage and you can't sell to anyone but us" (id. ¶ 47).

In order to determine a purchase price for plaintiff's 30% interest in the Partnership, Michael commissioned an "Opinion of Value" (the "Knakal Opinion") from Massey Knakal Realty Services ("Massey Kanakal"). (Id. ¶ 33.) Based on gross annual income ("GAI") and net operating income ("NOI") figures provided by defendants (id. ¶ 36), the Knakal Opinion estimated the Properties' value to be between $22,375,000 and $33,375,000 (id. ¶ 35). When plaintiff sought a second opinion on the fair market value of the Properties through the New York real estate firm Grubb & Ellis, Michael threatened Grubb & Ellis with legal action and demanded that the firm inform any potential buyers that the Properties were not for sale. (Id. ¶¶ 39-40.)

On March 21, 2005, Michael informed plaintiff by e-mail that he had just sold another property and thus had acquired liquid funds (the "1031 Exchange Funds") that would enable him to purchase plaintiff's Partnership interest. (Id. ¶ 42.) Michael stressed that he would have only a short period of time under the Internal Revenue Code to roll the proceeds into a "like-kind exchange" in order to avoid paying capital gains taxes. (Id. ¶ 43.) Specifically, Michael communicated to plaintiff that a "window of opportunity has just opened and may last only

3

days." (Id.) Plaintiff claims that, through these statements, defendants represented that they lacked sufficient liquid assets other than the 1031 Exchange Funds with which to purchase plaintiff's Partnership interest. (Id. ¶¶ 45.) These statements left plaintiff with the impression that there was a sense of urgency to the negotiations. (See id. ¶¶ 41.)

On June 23, 2005, plaintiff signed a letter agreement with Michael and the Partnership (the "Letter Agreement") in which Michael agreed to buy out plaintiff's 30% interest for $7.8 million (the "Buy-Out"). (Id. ¶ 51.) The Letter Agreement confirmed that it was "intended to memorialize the agreement" reached among plaintiff, Michael, and the Partnership, and that the parties agreed to execute such other and further documentation as necessary to effectuate the agreement. (Meisel Decl. Ex. A at 1.) Michael signed the Letter Agreement "individually, and as authorized representative of Fanny Grunberg and the Partnership" (id. at 2), which consented to the sale and admission of a new partner (id. at 1). By letter dated July 11, 2005, defendants' counsel informed plaintiff that defendants had decided to use the 1031 Exchange Funds for another purpose. (Compl. ¶ 53.) Plaintiff contends this letter reveals that defendants possessed sufficient funds to purchase his Partnership interest all along, and Michael's claimed "window of opportunity" was a sham designed to induce plaintiff into a quick acceptance of defendants' offering price. (Id. ¶¶ 53-54.) Nonetheless, on July 22, 2005 and in accordance with the terms of the Letter Agreement, plaintiff, Michael, and Ariel signed an agreement entitled "Purchase, Assignment & Assumption of Partnership" (the "Buy-Out Agreement"), pursuant to which plaintiff sold his Partnership interest to Michael and Ariel for $7.8 million (the "Buy-Out Price"). (Id. ¶¶ 10, 49.) At the time plaintiff sold his minority interest in the Partnership, the sale was subject to Fanny's approval. (Compl. ¶¶ 17, 21.) Fanny consented to and signed the Buy-Out Agreement individually and as general partner of the Partnership. (Id. ¶ 56.)

4

On October 21, 2005, only ninety days after the Buy-Out and contrary to their prior representations to plaintiff, defendants offered the Properties for sale through Massey Knakal. (Id. ¶ 57.) The offering materials stated (1) an asking price of $64 million, which was approximately 250% higher than the value of the Properties contained in the appraisal presented to plaintiff during the Buy-Out negotiations, and significantly higher than the range contemplated in the Knakal Opinion (id. ¶¶ 4, 59); (2) higher "projected" GAI and NOI figures than those included in the Knakal Opinion (id. ¶ 59); (3) that "plans are in place to combine the lobbies and add additional retail space," despite defendants' rejection of plaintiff's prior suggestions to renovate the buildings (id. ¶ 60); and (4) that the buildings would be "PERFECT FOR CONVERSION!!!", despite defendants' rejection of plaintiff's prior suggestion to convert the Properties into condominiums (id. ¶ 61). Ultimately, defendants sold the Properties for $52 million, double the amount of the valuation of the Properties that was used for determining the Buy-Out Price. (Id. ¶¶ 5, 62.)

## II.   THE PARTIES' ALLEGATIONS

On December 28, 2007, plaintiff commenced this action against defendants for damages arising from defendants' alleged breaches of fiduciary duties, fraud, and negligent misrepresentation. Generally, plaintiff contends that defendants acted in concert to plan and implement a scheme to induce him into selling his Partnership interest at a below-market price so they could profit on a subsequent sale of the Properties. (Id. ¶¶ 1, 28, 66, 74.) At all times during the Buy-Out negotiations, Michael is alleged to have acted on behalf of and as agent for Fanny and Ariel (id. ¶ 28); in this vein, plaintiff imputes any acts or omissions alleged in the complaint to all three defendants. Plaintiff seeks to recover the additional profit he allegedly would have realized if he still had his minority interest in the Partnership when the Properties were sold.

Defendants move to dismiss the complaint for failure to state a claim, principally

contending:  (1) plaintiff has failed to plead fraud with the particularity required by Federal Rule

of Civil Procedure 9(b), cannot demonstrate justifiable reliance, and has alleged no statements

actionable as fraud; (2) defendants did not owe a fiduciary duty to plaintiff in connection with

plaintiff's sale of his partnership interest; and (3) there was no special relationship between

plaintiff and Michael that would support a claim of negligent misrepresentation.

**DISCUSSION**

The Court begins by addressing the standards applicable to a motion to dismiss and to

allegations of fraud.  The Court then assesses the sufficiency of each of plaintiff's allegations as

asserted against each individual defendant.

## I.    STANDARD OF REVIEW

### A.    Rule 12(b)(6) Standard

"On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to

support the claims.'" Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam) (quoted

reference omitted).  In assessing the sufficiency of plaintiff's complaint, the Court is guided by

the Supreme Court's recent decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)

and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  In Bell Atlantic, the Supreme Court disavowed

the familiar statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) that "a complaint should

not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." See Bell Atl., 550

U.S. at 561-63 (announcing that Conley's "no set of facts" language had "earned its retirement").

Instead, the Bell Atlantic Court explained that, in order to withstand a motion to dismiss, a

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at

570.

6

In Iqbal, the Supreme Court further explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949. Determining the facial plausibility of a complaint is a "context-specific task" that requires this Court to "draw on its judicial experience and common sense." Id. at 1950. "'[N]aked assertion[s]' devoid of further factual enhancement" will not suffice; the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949.

Well-pleaded factual allegations—but not legal conclusions couched as factual allegations—are accepted as true for purposes of determining whether a complaint states a plausible claim for relief. Id. at 1949-50; see Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (Jacobs, J.); Patane, 508 F.3d at 111. In adjudicating defendant's Rule 12(b)(6) motion, the Court "confine[s] its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted).[2]

---

[2] Defendants filed on August 15, 2008 a "Supplemental Memorandum of Law in Support of Their Motion to Dismiss." (See Dkt. No. 18.) Plaintiff opposed the Court's consideration of the supplemental briefing. (See Dkt. No. 20; see also Defendants' Reply, Dkt. No. 21.) Defendants' supplemental brief includes excerpts from e-mails between plaintiff and his real estate agent (the "Correspondence") that allegedly disprove plaintiff's allegation that he reasonably relied on Michael's misrepresentations. However, the Court will exclude the Correspondence from its consideration of defendants' motion to dismiss. When considering a motion under Fed. R. Civ. P. 12(b)(6), courts may consider only the allegations of the complaint, any document attached to the complaint or incorporated by reference, and any document rendered "integral" to the complaint by the complaint's heavy reliance on its terms and effects. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); cf. Rule 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Plaintiff's complaint does not rely on the Correspondence in any way. Accordingly, defendants' supplemental brief presents matters outside the pleadings that the Court will not consider at this time.

7

**B.    Rule 9(b) Pleading Standard**

However, plaintiff's claims in this action are subject to a heightened pleading standard. "Claims of common law fraud must satisfy the requirements of Rule 9(b)." Trinity Bui v. Indus. Enters. of Am., 594 F. Supp. 2d 364, 371 (S.D.N.Y. 2009) (citing Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006)); accord  Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) ("By its terms, Rule 9(b) applies to 'all averments of fraud.'"(quoting Fed. R. Civ. P. 9(b))); Tuosto v. Philip Morris USA Inc., No. 05 Civ. 9384, 2007 WL 2398507, at *8 (S.D.N.Y. Aug. 21, 2007) (Leisure, J.) ("[T]he Court applies Rule 9(b) of the Federal Rules of Civil Procedure to its analysis of the New York state law fraud claim.").[3]  Also, to the extent that the breach of fiduciary duty claims are based on fraud, allegations concerning the predicate acts of fraud must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). See Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 245 (S.D.N.Y. 1996) ("Kolbeck II"), aff'd 152 F.3d 918 (2d Cir. 1998).[4]  Finally, because plaintiff's allegations in support of its negligent misrepresentation claim are based on the same set of facts upon which plaintiff's fraud claim is grounded, that claim must be pleaded with particularity pursuant to Rule 9(b). See Rombach, 355 F.3d at 171; In re Parmalat Secs. Litg., 479 F. Supp. 2d 332, 340 n. 30 (S.D.N.Y. 2007) ("[Plaintiff's] claim for negligent misrepresentation 'realleges and incorporates by reference' all prior allegations, including those alleging fraud.  It thus alleges intentional, not negligent, misrepresentation and is subject to Rule 9(b).").

---

[3] However, for a conspiracy to commit fraud claim, the allegations of conspiracy are measured against the pleading standard of Rule 8. See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n. 4 (2d Cir. 1990).

[4] In addition, with respect to aiding and abetting a breach of fiduciary duty, "[t]o the extent the underlying primary violations are based on fraud, the allegations of aiding and abetting liability must meet the particularity requirements of [Rule] 9(b)." Kolbeck II, 939 F. Supp. at 245.

The heightened pleading standard of Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  In accordance with Rule 9(b), a claim for fraud must allege "the time, place, speaker, and sometimes even the content of the alleged misrepresentation." Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990); accord Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (stating that plaintiff alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (internal quotation marks and citation omitted)).  Although intent to defraud may be averred generally, plaintiff must allege facts giving rise to a "strong inference" of fraudulent intent. Ouaknine, 897 F.2d at 80.  Plaintiff can satisfy this requirement by alleging "facts showing a motive for committing fraud and a clear opportunity for doing so," Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995) (internal quotation marks and citations omitted), or "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (citation omitted).

"Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (citing Natowitz v. Mehlman, 542 F. Supp. 674, 676 (S.D.N.Y. 1982) (Duffy, J.)); accord Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) ("When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant." (citing Ellison v. Am.

9

Image Motor Co., 36 F. Supp. 2d 628, 640 (S.D.N.Y.1999))), aff'd, 2 F. App'x 109 (2d Cir.

2001); Daly v. Castro Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) ("Where multiple

defendants are involved, the complaint is required to describe specifically each defendant's

alleged participation in the fraud." (citing DiVittorio, 822 F.2d at 1247 )).

## II.    PLAINTIFF'S CLAIMS

Plaintiff's claims in this case arise under state law. As a general matter, a district court

sitting in diversity jurisdiction applies the choice-of-law rules of the state in which it sits. See

Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Lee v. Bankers Trust Co., 166

F.3d 540, 545 (2d Cir. 1999) (McLaughlin, J.). However, because the parties rely upon New

York law in their briefs, they have impliedly consented to the application of New York law to

this motion. See Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 175 (2d Cir. 2000)

(deeming parties' consent to application of New York law where no party challenged choice of

New York law); Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The

parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to

establish choice of law.'" (quoting Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-

McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989))); Lehman v. Dow Jones & Co., 783 F.2d

285, 294 (2d Cir. 1986) (Friendly, J.) (declining to determine whether there was a difference

between the substantive law of New York and California, and instead applying New York law,

where the parties solely cited New York case law). Consequently, the Court applies New York

law to the instant claims. See Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d

Cir. 1997) (Winter, J.) ("[W]here the parties have agreed to the application of the forum law,

their consent concludes the choice of law inquiry." (citation omitted)).

### A.    Agency

Central to plaintiff's complaint are allegations that Michael acted as the agent of Fanny and Ariel, and that Ariel also acted as Fanny's agent, in the course of the negotiation and purchase of plaintiff's Partnership interest. (Compl. ¶ 1.)  Defendants' dispute these allegations. (Def.'s Mem. 5, 15.)  Therefore, the Court will first consider whether plaintiff's allegations of agency liability are sufficient to survive a motion to dismiss.

### 1.    Applicable Law

Under New York agency law,[5] "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C., 266 F.3d 112, 122 (2d Cir. 2001) (citation omitted).  "Such authority to act for a principal may be actual or apparent." Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 318 (S.D.N.Y. 2006).  Actual authority arises from a direct manifestation of consent from the principal to the agent. Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, 758 F. Supp. 908, 919 (S.D.N.Y. 1991) (Leisure, J.); see Minskoff v. Am. Express Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996) ("[Actual] authority may be express or implied, but in either case, it exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." (citation omitted)); Cromer Finance Ltd. v. Berger, 245 F. Supp. 2d 552, 560 (S.D.N.Y. 2003) ("The consent for actual authority may be either express or implied from 'the parties' words and conduct as construed in light of the surrounding circumstances.'" (quoting Riverside Research Inst. v. KMGA, Inc., 108 A.D.2d 365, 370, 439 N.Y.S.2d 220, 223 (N.Y. App. Div. 1985))).  The existence of actual authority

---

[5] There is no discernable difference between federal common law principles of agency and New York agency law. See Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 318 (S.D.N.Y. 2006); Cromer Finance Ltd. V. Berger, 245 F. Supp. 2d 552, 559 n.5 (S.D.N.Y. 2003).  The Court may thus rely on both sources.

11

"depends upon the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship." Cromer, 245 F. Supp. 2d at 560.

Apparent authority, however, is created through "the 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him,' . . . and cannot be established by the actions or representations of the agent." Minskoff, 98 F.3d at 708 (internal quoted reference and citations omitted). A principal thus may be held liable only when it was responsible for the appearance of authority in the agent, and a third party's reliance on apparent authority must be justified. Carte Blanche, 758 F. Supp. at 921 (citations omitted). In addition, under a ratification theory, in the absence of actual or apparent authority, "a party may be held liable as a principal 'as a result of his affirmance of an act done by one who purports to be acting for the ratifier.'" Id. (quoted reference omitted).

If an agency relationship exists, "knowledge acquired by an agent acting within the scope of its agency is imputed to the principal even if the information was never actually communicated." Cromer, 245 F. Supp. 2d at 559. Furthermore, both the agent and principal are liable for tortious acts committed by the agent within the scope of its agency. See Sec. Pac. Mortgage & Real Estate Servs., Inc. v. Herald Ctr., Ltd., 891 F.2d 447, 448 (2d Cir. 1989) (per curiam) (stating it is an "established rule of agency law that a principal is liable to third parties for the acts of an agent operating within the scope of the agent's real or apparent authority" (citing British Am. & E. Co. v. Wirth, Ltd., 592 F.2d 75, 80 (2d Cir. 1979) (stating agent serves under control and supervision of principal, and so long as agent acts within the scope of his authority, he binds the principal))); see also Citibank N.A. v. Nyland (CF8) Ltd., 878 F.2d 620, 624 (2d Cir. 1989) ("[A] principal is liable for an agent's fraud though the agent acts solely to

benefit himself, if the agent acts with apparent authority." (citing Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp., 456 U.S. 556, 566 (1982))); 2A N.Y. Jur. 2d Agency & Indep. Contractors § 290 ("[A] principal is liable for the fraudulent acts of his or her agent committed within the scope of the agent's authority."); id. § 291 ("[L]iability for an agent's fraud or misrepresentation applies even where the principal had no knowledge of the misrepresentation or fraud and intended no fraud.").

2.     Application

For purposes of this motion, the initial question is whether plaintiff has made specific allegations from which an agency relationship can be inferred.[6]  The Court is mindful that, at this point, the issue is not whether plaintiff has demonstrated the existence of an agency relationship, but only whether plaintiff is entitled to offer evidence to prove an agency relationship existed. Cromer, 245 F. Supp. 2d at 560 ("The question of whether an agent relationship exists is a 'mixed question of law and fact' . . . ." (quoted reference omitted)).

Without specifying which theory of agency he relies on[7] (see Pl.'s Mem. Opp'n 14-15), plaintiff asserts that, since 2000, Michael has managed the day-to-day affairs of the Partnership

---

[6] Courts in this District have required that facts establishing agency be pled with Rule 9 particularity where the agency relationship itself was an integral element of the alleged fraud. Kolbeck v. LIT Am., Inc., 923 F. Supp. 557, 569 (S.D.N.Y. 1996) ("Kolbeck I") ("To the extent that plaintiffs claim Schindler and defendants conspired to fraudulently induce plaintiffs to 'invest moneys and property with the Schindler Companies by means of false misrepresentations, untrue statements, omissions of material facts, [and] manipulative and deceptive conduct' . . . and that defendants made Schindler their agent-either under the doctrine of apparent authority, ratification, or agency by estoppel-as part of this intrigue, plaintiffs' claims of agency also must comply with Rule 9(b)."); see Dover, 423 F. Supp. 2d at 319-20; see also In re Parmalat Sec. Litig., 375 F. Supp. 2d 278, 290-92 (S.D.N.Y. 2005) (Kaplan, J.) (considering whether allegations of agency in a securities fraud complaint must be stated with particularity and concluding that agency was a basis on which plaintiffs sought to impose vicarious liability, and was not so closely intertwined the with the claim of securities fraud that it was a circumstance of the fraud itself). Here, it appears that plaintiff seeks to hold Fanny and Ariel vicariously liable, and does not assert the existence of an agency relationship was an integral part of any alleged fraud. Thus, the Court need not apply a heightened pleading standard to plaintiff's allegations of agency, but rather measures the allegations of agency under the minimal standard required by Federal Rule of Civil Procedure 8.

[7] It appears at this time that plaintiff relies on a theory of actual, rather than apparent, authority. However, the proper basis under New York agency law will be fleshed out on summary judgment, or at trial, after discovery is completed.

"on behalf of [Fanny] and as her agent." (Compl. ¶ 10.) Drawing all reasonable inferences in plaintiff's favor, there are numerous allegations in the complaint from which the existence of an agency relationship between Michael and Fanny can be inferred. Most compelling is the fact that Michael signed the Letter Agreement "individually, and as authorized representative of Fanny Grunberg and the Partnership." (Meisel Decl. Ex. A at 2.) Also, based on Michael's alleged statements that the property was not for sale (Compl. ¶ 30) or on the market (id. ¶ 40), that "we are not sellers" (id. ¶ 30), that Fanny would not consent to a transfer of plaintiff's Partnership interest or authorize sale of the Properties (id. ¶ 46), that plaintiff "can't sell to anyone but us" (id. ¶ 47), and that the majority interest would determine how to manage the Partnership (id. ¶ 48),[8] it is plausible Michael was involved in those Partnership decisions as Fanny's representative, since Michael had no interest of his own in the Partnership at the time he allegedly made those statements to plaintiff. In addition, because Fanny's management responsibilities under the Agreement included preparing reports for the partners and other interested parties (id. ¶¶ 18-19), it is plausible that Michael was acting as Fanny's agent when he commissioned and received the Knakal Report, and was acting on her behalf and for the Partnership when he disseminated the Knakal Report to plaintiff (id. ¶ 33). Whether or not Michael was, in fact, acting in the scope of his agency in those instances is not a question for the Court at this time, but will ultimately be determined by the trier of fact. The allegation that Michael acted as Fanny's agent with respect to her management duties is sufficient to withstand defendants' motion to dismiss.

---

[8] The Court notes, however, that manifestations of the agent to a third party are insufficient to establish an agent's authority. See Green Door Realty Corp v. TIG Ins. Co., 329 F.3d 282, 290 (2d Cir. 2003); Cromer, 245 F. Supp. 2d at 560; 2A N.Y. Jur. 2d Agency & Indep. Contractors § 80. This determination requires a fact-intensive inquiry that is better addressed on summary judgment, or at trial.

However, allegations in the complaint that fall outside the scope of Michael's role as Fanny's agent for management and operation of the Partnership cannot, as a matter of law, be imputed to Fanny.[9] See Riverside Research, 108 A.D.2d at 370, 439 N.Y.S.2d at 224; 2A C.J.S. Agency § 218 (stating the appointment of an agent to operate or manage a business vests the agent with implied authority to act for the principal only with respect to what is usual and customarily done in the business); see also Cromer, 245 F. Supp. 2d at 561 ("Whether an employee was acting within the scope [of employment] at a particular time requires a fact-intensive inquiry . . . [but] can be made as a matter of law in some instances."). Even if Michael purportedly acted as Fanny's agent with respect to her management duties, the Court fails to see how, based on the allegations in the complaint, Michael's conduct surrounding the purchase of plaintiff's Partnership interest (see generally Compl. ¶¶ 49-54) can be attributed to Fanny. First, his purchase of plaintiff's Partnership interest was outside the scope of his authority as Fanny's agent for management and operation of the partnership, as defined in the Agreement. (See id. ¶¶ 18-19.) See also Cromer, 245 F. Supp. 2d at 561. Second, specific allegations in the complaint contradict plaintiff's conclusory claim that Michael acted on Fanny's behalf in purchasing plaintiff's Partnership interest. Plaintiff pleads that Michael approached plaintiff to purchase plaintiff's Partnership interest (Compl. ¶ 42), the only funds available for the purchase were Michael's (id. ¶¶ 43-45, 50), the Letter Agreement states that Michael agreed to buy plaintiff's Partnership interest (Meisel Decl. Ex. A at 1), and the Buy-Out Agreement names Michael and Ariel as purchasers (Compl. ¶¶ 1, 55) and was executed by Michael and Ariel, in their individual capacities (M. Grunberg Aff. Ex. A at 5). Moreover, plaintiff acknowledges in his opposition papers that he agreed to sell his Partnership interest to Michael and Ariel, with Fanny's consent.

---

[9] A principal's ratification or apparent authorization can make a principal vicariously liable for acts outside the scope of an agent's authority, 2A N.Y. Jur. 2d Agency & Indep. Contractors § 273; however, the parties have not raised either argument, nor is there any basis to infer either scenario at present.

(See Pl.'s Mem. Opp'n 6.) Therefore, a more plausible reading of plaintiff's complaint is that, even if it can be inferred Michael was acting as Fanny's agent with respect to certain conduct leading up to the Buy-Out, with respect to the actual Buy-Out, Michael was a principal acting on his own behalf.

Finally, plaintiff's complaint contains insufficient facts from which it can be inferred that Michael acted as Ariel's agent. Cf. Levine v. Levine, 184 A.D.2d 53, 61-62, 590 N.Y.S.2d 439, 444-45 (N.Y. App. Div. 1992) (finding children clearly vested their father with apparent authority to represent the family's interest in cooperative conversion process where it was undisputed that children relied entirely on judgment of their father to make decisions throughout the conversion process and children never challenged any of the decisions). Plaintiff has also failed to adduce any facts that would support a finding of an agency relationship between Ariel and Fanny. Therefore, any claims against Fanny that rely on Ariel's purported agency relationship with her, and any claims against Ariel that rely on Michael's purported agency relationship with him, are insufficient to withstand the instant motion to dismiss.

## B.     Breach of Fiduciary Duty

Plaintiff claims that Fanny, as general partner, and Michael and Ariel, as agents for Fanny, owed a strict fiduciary duty to plaintiff (Compl. ¶ 64) to provide plaintiff with any and all information that could reasonably bear on his consideration of the Buy-Out offer, and to refrain from any misrepresentations bearing on his consideration of that offer (id. ¶ 65). Defendants allegedly breached their fiduciary duties to plaintiff by misrepresenting and omitting information material to his consideration of the Buy-Out offer. (Id. ¶ 67-68.) Specifically, plaintiff claims that defendants breached those duties by (1) misrepresenting defendants' intent not to sell the Properties; (2) providing plaintiff with an "Opinion of Value" based on undervalued GAI and

16

NOI figures for the Properties; (3) failing to disclose the actual higher, "projected" GAI and NOI figures; (4) failing to disclose defendants' plans to renovate and improve the Properties; (5) misrepresenting defendants' beliefs and intentions regarding conversion of the Properties into condominiums; (6) interfering with plaintiff's solicitation of third-party offers for his Partnership interest; (7) withholding in bad faith their consent for plaintiff to sell his Partnership interest to a third party; and (8) falsely representing that the only funds available to purchase plaintiff's interest were the 1031 Exchange Funds, creating the impression that there was a finite "window of opportunity" to close the Buy-Out.  (Id. ¶ 67.)

Alternatively, drawing all reasonable inferences in plaintiff's favor, as the Court must on a Rule 12(b)(6) motion to dismiss, it appears that the complaint may be read as seeking to charge Fanny with a breach of her fiduciary duty as general partner, and to charge Michael and Ariel, who were non-partners at the time, with knowingly participating in her breach of duty.[10] (See Pl.'s Mem. 13-14.)

    1.    Applicable Law

The elements of a breach of fiduciary duty claim are (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach. Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986); Regions Bank v. Wieder & Mastroianni, P.C., 423 F. Supp. 2d 265, 270 (S.D.N.Y. 2006), remanded on other grounds by 253 F. App'x 52 (2d Cir. 2007).

---

[10] The Court notes that plaintiff's complaint consists of three counts, none of which set forth specific causes of action for conspiracy or aiding and abetting. However, since plaintiff generally avers concerted action liability among the three defendants, and under New York law, conspiracy and aiding and abetting are two variations on concerted action liability, see Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted), the Court will read the complaint generously and consider theories of conspiracy, with respect to Count Two, and aiding and abetting, with respect to Count One.

a. Existence of a Fiduciary Relationship

A fiduciary relationship requires "great confidence and trust on the one part and a high degree of good faith on the other part." United States v. Chestman, 947 F.2d 551, 569 (2d Cir. 1991) (internal citation omitted). It is well established that partners owe fiduciary duties to co-partners. See Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 972-73 (2d Cir. 1989) (discussing fiduciary duty of partners under New York law); Birnbaum v. Birnbaum, 73 N.Y.2d 461, 465, 539 N.E.2d 574, 575 (N.Y. 1989) (citing Meinhard v. Salmon, 249 N.Y. 458, 468, 164 N.E. 545, 548 (N.Y. 1928) (Cardozo, J.)); Appell v. LAG Corp., 41 A.D.3d 277, 278, 838 N.Y.S.2d 541, 542 (N.Y. App. Div. 2007) (citing Birnbaum, 73 N.Y.2d at 466, 539 N.E.2d 574); Drucker v. Mige Associates II, 225 A.D.2d 427, 428, 639 N.Y.S.2d 365, 366 (N.Y. App. Div. 1996) ("A partner has a fiduciary obligation to the other partners."); Pace v. Perk, 81 A.D.2d 444, 453, 440 N.Y.S.2d 710, 716 (N.Y. App. Div. 1981) ("[Partners] owe a duty of exercising the utmost good faith, fairness and loyalty to their copartners."). "Absent extraordinary circumstances, however, parties dealing at arm's length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation." Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 460 (S.D.N.Y. 2006) (Leisure, J.) (citation omitted); see DFP Mgf. Corp. v. Northrop Grumman Corp., No. 97-CV-4494, 1999 WL 33458384, at *9 (E.D.N.Y. Mar. 23 1999) ("Generally, commercial transactions do not create fiduciary obligations, absent express language in the contract, or a prolonged prior course of dealings between the parties establishing the fiduciary relationship." (citations omitted)); Dopp v. Teachers Ins. and Annuity Ass'n. of Am., No. 91 Civ. 1494, 1993 WL 404076, at *5 (S.D.N.Y. Oct. 1, 1993) ("The arm's-length relationship of parties in a business transaction is, if anything, antithetical to the notion that either would owe a fiduciary relationship

to the other."); Beneficial Commercial Corp. v. Murray Glick Datsun, Inc., 601 F. Supp. 770, 772 (S.D.N.Y. 1985) ("No fiduciary relationship exists under the facts alleged in the pleadings which show that the two parties were acting and contracting at arm's length."). "[D]ismissal is . . . appropriate where a plaintiff has not, and cannot as a matter of law, plead a fiduciary relationship." Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2003 WL 1858153, at *4-5 (S.D.N.Y. Apr. 10, 2003).

### b.  Aiding and Abetting a Breach of Fiduciary Duty

Plaintiff argues that Michael and Ariel aided and abetted Fanny's breach of fiduciary duty. (Pl.'s Mem. Opp'n 11.) To state a claim for aiding and abetting a breach of fiduciary duty under New York law, plaintiff must allege (1) a breach by a fiduciary of obligations to another, (2) defendant's knowing inducement of or participation in the breach, and (3) that the plaintiff suffered damages as a result of the breach. See Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 134 (2d Cir. 2008); Whitney, 782 F.2d at 1115; see also Ackerman v. Nat'l Prop. Analysts, Inc., 887 F. Supp. 494, 508 (S.D.N.Y. 1992) ("To state a claim for aiding and abetting a breach of fiduciary duty, plaintiffs must demonstrate an underlying breach of fiduciary duty, knowledge of that breach by the aider and abettor, substantial assistance by the aider and abettor in the success of the main breach, and a connection between a plaintiff's injury and an aider and abettor's conduct." (citations omitted)).

To participate knowingly means to have "[a]ctual knowledge, as opposed to merely constructive knowledge, . . . and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty." Global Minerals & Metals Corp. v. Holme, 35 A.D.3d 93, 101-02, 824 N.Y.S.3d 210, 217 (N.Y. App. Div. 2006) (citation omitted).  The aider and abettor must also provide

19

substantial assistance to the primary violator. Kaufman v. Cohen, 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (N.Y. App. Div. 2003).  Under New York law, "[s]ubstantial assistance may only be found where the alleged aider and abettor 'affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'" Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43, 50 (2d Cir. 2005) (quoting Kaufman, 307 A.D.2d at 126, 760 N.Y.S.2d at 170).  Inaction constitutes substantial assistance only where the alleged aider and abettor owes a fiduciary duty directly to the plaintiff. Id.; see Kolbeck II, 939 F. Supp. at 247; Global Minerals, 35 A.D.3d 93 at 101-02, 824 N.Y.S.3d at 217.  "To analyze a claim of secondary liability, the court first must determine the contours of the primary violation on which the secondary liability is alleged to be based." Kolbeck II, 939 F. Supp. at 245.

          2.     Application

As a predicate consideration, finding a breach of fiduciary duty requires finding that a fiduciary relationship existed between the parties. See Flickering v. Harold C. Brown & Co., Inc., 947 F.2d 595, 599 (2d Cir. 1991).  With regard to plaintiff's claim that defendants breached a fiduciary duty to him, the complaint identifies the source of Fanny's duty to plaintiff as her a general partnership interest, and the source of Michael's and Ariel's duty to plaintiff as their role as agents of the general partner. (Compl. ¶ 64.)  Plaintiff correctly states that Fanny owed him a duty because partners owe fiduciary duties to other partners. See Birnbaum, 73 N.Y.2d at 465, 539 N.E.2d at 575; see also Blue Chip Emerald LLC v. Allied Partners Inc., 299 A.D.2d 278, 279, 750 N.YS.2d 291, 294 (N.Y. App. Div. 2002) (stating managing co-venturers that purchased plaintiff co-venturer's interest "were fiduciaries of [plaintiff] in matters relating to the [v]enture until the moment the buy-out transaction closed, and therefore owe[d] [plaintiff] a duty

of undivided and undiluted loyalty" (internal quotation marks and citation omitted)). Michael also owed the Partnership, including plaintiff, as minority partner, a fiduciary duty when acting as Fanny's agent for management and operation of the Partnership, as his privity with Fanny in that capacity extends to create a fiduciary relationship with plaintiff. See Metro. W. Asset Mgmt. LLC v. Magnus Funding, Ltd., No. 03 Civ. 5539, 2004 U.S. Dist LEXIS 11761, at *30-31 (S.D.N.Y. June 25, 2004) (denying motion to dismiss noteholders' gross negligence claim against investment manager hired by bond issuers to manage trust collateral because, as agent of fiduciaries, investment manager was in a fiduciary relationship with noteholders and owed them a duty); Mitland Raleigh-Durham v. Myers, 807 F. Supp. 1025, 1060-61 (S.D.N.Y. 1992) (finding agent of sole general partner owed a fiduciary duty to limited partner).

Giving plaintiff the benefit of all reasonable inferences to be drawn from the complaint for purposes of this motion to dismiss, plaintiff has adequately stated a claim for breach of fiduciary duty against Fanny and Michael in Count One. It is plausible that Michael was acting within the scope of his management duties when he allegedly took the actions described in paragraphs 67(a)-(f) of plaintiff's complaint. As a result, those actions can be imputed to both Michael and Fanny at this juncture. However, plaintiff's complaint fails to allege how either Michael or Fanny breached their fiduciary duties to plaintiff with respect to paragraph 67(h), which concerns the funds available for the Buy-Out. Fanny consented to the proposed Buy-Out of plaintiff's Partnership interest, as required under the Agreement (see Compl. ¶¶ 17, 21), but she was not a purchaser (see M. Grunberg Aff. Ex. A at 1, 2, 5). As discussed above, plaintiff fails to allege facts that render it plausible that Michael or Ariel was acting as Fanny's agent during the Buy-Out because they did not purchase plaintiff's Partnership interest on her behalf. Drawing all reasonable inferences in plaintiff's favor, it is therefore not plausible that Fanny

21

violated her fiduciary duties with respect to paragraph 67(h). Similarly, under the facts alleged, no fiduciary relationship exists with Michael with respect to paragraph 67(h) since the conduct alleged falls outside the scope of Michael's role as Fanny's agent; plaintiff and Michael are more properly characterized as "two parties acting and contracting at arm's length" in connection with the Buy-Out, based on the facts set forth in the complaint. Beneficial Commercial, 601 F. Supp. at 772. With respect to the allegation in paragraph 67(g) that Fanny unreasonably withheld her consent from plaintiff for a fair market sale to a third party so that she could profit on a subsequent sale that excluded plaintiff, such action, if true, states a cause of action for a breach of fiduciary duty on Fanny's part. See Kaufman, 307 A.D.2d at 120, 760 N.Y.S.2d at 165 (finding plaintiffs stated causes of action for both actual fraud and breach of fiduciary duty where co-partner told plaintiffs that partnership interest in building was not worth salvaging, though co-partner was secretly agreeing with new partners to reacquire the building out of foreclosure at a significant discount); see also Littman v. Magee, 54 A.D.3d 14,17-18, 860 N.Y.S.2d 24, 26-27 (N.Y. App. Div. 2008); Salm v. Feldstein, 20 A.D.3d 469, 470, 799 N.Y.S.2d 104, 105-06 (N.Y. App. Div. 2005); Blue Chip, 299 A.D.2d at 279-80, 750 N.Y.S.2d at 294-95. Insofar as the complaint alleges Michael relayed such information to plaintiff and actually knew such action was a breach of Fanny's fiduciary duty, the complaint adequately states a cause of action against Michael for aiding and abetting Fanny's breach of fiduciary duty. See Catskill, 547 F.3d at 134; In re Sharp Int'l Corp., 403 F.3d at 50.

As to Ariel, there are no facts in the complaint that would render plausible plaintiff's claim that Ariel owed a fiduciary duty to him based on an agency theory, because, as discussed above, plaintiff has failed to plead facts from which it can be inferred that Ariel acted as Fanny's agent. Therefore, Ariel's involvement in the Buy-Out appears to be that of a party transacting at

arm's length, see Henneberry, 415 F. Supp. 2d at 460, and plaintiff has failed to plead adequately

the existence of a fiduciary relationship with Ariel. Therefore, plaintiff's complaint states no

direct cause of action against Ariel for breach of fiduciary duty.

     Finally, although plaintiff alleges that Ariel had actual knowledge[11] of Fanny's purported

breach of fiduciary duty, plaintiff fails to plead facts from which it can be inferred that Ariel

provided substantial assistance to either Michael or Fanny with respect to the alleged

misrepresentations. See S&K Sales Co. v. Nike, Inc., 816 F.2d 843, 848-49 (2d Cir. 1987);

Kolbeck II, 939 F. Supp. at 246; Kaufman, 307 A.D.2d at 126, 760 N.Y.S.2d at 170; cf.

Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1078 (2d Cir. 1977) (concluding that

partners, in using threats to negotiate and conduct the transfer of partnership assets, breached

their fiduciary obligations to withdrawn general partner, and that agents, acting on behalf of the

partnership, induced and participated in breach of fiduciary duty by making threats (citations

omitted)). Moreover, absent a fiduciary relationship with plaintiff, Ariel had no duty of

disclosure, and no aider and abettor liability may be based on any alleged omissions pled in

Count One of the complaint. See Kaufman, 307 A.D.2d at 126, 760 N.Y.S.2d at 170 (finding no

aider or abettor liability where defendants were alleged to have concealed self-dealing co-

partner's breach of fiduciary duty from plaintiffs, where defendants owed no fiduciary duties to

plaintiffs and thus were under no duty to report co-partner's actions to plaintiffs). Therefore,

plaintiff has failed to plead an aiding and abetting claim against Ariel. Count One of the

---

[11] Plaintiff's generalized assertion that defendants' "knowingly and intentionally" breached their fiduciary duties is also insufficient to demonstrate actual knowledge on the part of the alleged aider and abettors, given the applicability of Rule 9(b). Such allegations must still be accompanied by a statement of the facts upon which such allegations are founded. See Abbott v. Herzfeld & Rubin, P.C., 202 A.D.2d 351, 351, 609 N.Y.S.2d 230, 231 (N.Y. App. Div. 1994) (finding complaint was "ambiguous in alleging that . . . defendants knew that they were participating in a breach of the [primary violators'] fiduciary duty to plaintiffs" (citing H2O Swimwear, Ltd. v. Lomas, 164 A.D.2d 804, 807, 560 N.Y.S.2d 19, 21-22 (N.Y. App. Div. 1990) (holding that plaintiff's claim for aiding and abetting breaches of fiduciary duty was "legally insufficient due to ambiguity in the allegations of [the defendant's] knowledge of [the primary violator's] wrongdoing"))).

23

complaint is dismissed as against Ariel. Defendants' motion to dismiss Count One against Fanny and Michael is denied.

## C.     Fraud

Plaintiff alleges that defendants defrauded plaintiff by knowingly and intentionally misrepresenting (i) their intention not to sell the Properties or their interest therein, (ii) that the value of the Properties in March 2005 was between \$22,375,000 and \$33,375,000, and (iii) that the only monies available to purchase plaintiff's Partnership interest were the supposedly short-lived 1031 Exchange Funds. (Compl. ¶ 70.) Plaintiff also alleges that defendants failed to disclose (i) that they knew the Properties were worth significantly more than the valuation that formed the basis of the Buy-Out Price, (ii) their intent to sell the Properties for significantly more than the valuation of the Properties used to determine the Buy-Out Price, (iii) the accurate and actual GAI and NOI figures for the Partnership, and (iv) their plans to undertake material renovations to the Properties. (Id. ¶ 72.) Plaintiff further alleges that he reasonably relied on these misrepresentations and omissions in agreeing to sell his Partnership interest for \$7.8 million – a price that did not reflect the true value of his interest as known to defendants. (Id. ¶¶ 73-75.) Defendants challenge the allegations in Count Two, asserting that plaintiff fails to plead fraud with particularity, fails to demonstrate his justifiable reliance on defendants' alleged material misrepresentations or omissions, and that certain statements of future intentions cannot support claims of fraud. (See Def.'s Mem. 4-13; Def.'s Reply 8-9.)

### 1.     Applicable Law

Plaintiff claims that the above-mentioned misrepresentations and omissions constituted fraud for which Michael is directly liable, and for which Fanny and Ariel are indirectly liable pursuant to theories of agency (see Pl.'s Mem. Opp'n 14) or civil conspiracy (see id. at 4).

24

### a. Common Law Fraud

Under New York law, the elements of a fraud claim are: "'(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" Manning v. Utils. Mut. Ins. Co., 254 F.3d 387, 400 (2d Cir. 2001) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., 98 F.3d 13, 19 (2d Cir. 1996)); accord Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373 (N.Y. 1996). As to the first requirement, a misrepresentation "must be factual, rather than an expression of an opinion." Green v. Beer, No. 06 Civ. 4156, 2009 WL 911015 at *5 (S.D.N.Y. Mar. 31, 2009) (citation omitted). "[I]nstead of an affirmative misrepresentation, a fraud cause of action may also be premised on acts of concealment where the defendant had a duty to disclose material information." Kaufman, 307 A.D.2d at 119-20, 760 N.Y.S.2d at 165 (citations omitted). "Thus, where a fiduciary relationship exists, 'the mere failure to disclose facts which one is required to disclose may constitute actual fraud, provided the fiduciary possesses the requisite intent to deceive.'" Id. (quoted reference omitted); see Brickhardt v. Ratner, 871 F. Supp. 613, 618-20 (S.D.N.Y. 1994) (Leisure, J.) ("Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations." (internal quotation marks and citation omitted)); see also Jana L. v. W. 129th St. Realty Corp., 22 A.D.3d 274, 277, 802 N.Y.S.2d 132, 134 (N.Y. App. Div. 2005) (stating a duty to disclose may arise either from a fiduciary relationship or from "one party's superior knowledge of essential facts" whose nondisclosure would "render a transaction inherently unfair" (internal quotation marks and citations omitted)).

Plaintiff must also show that his actual reliance on the misrepresentations was reasonable. Stuart Silver Assocs., Inc. v. Baco Dev. Corp., 245 A.D.2d 96, 98, 665 N.Y.S.2d 415, 417 (N.Y. App. Div. 1997); see Turtur v. Rothschild Registry Int'l Inc., 26 F.3d 304, 310 (2d Cir. 1994) ("A plaintiff must show . . . 'reasonable reliance on the [material, false] representation, causing damage to the plaintiff.'" (quoting Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir. 1987))). "In assessing the reasonableness of a plaintiff's alleged reliance, [the Court] considers the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). Although reasonable reliance is largely an issue of fact, see Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd., 383 F. Supp. 2d 428, 452 (S.D.N.Y. 2003) (Leisure, J.), "courts have granted motions to dismiss . . . where a plaintiff failed to examine readily available information, relied on oral representations of information when it could easily have asked for additional information, or failed to properly investigate a transaction." Glidepath, 590 F. Supp. 2d at 459; see Keywell Corp. v. Weinstein, 33 F.3d 159, 164 (2d Cir. 1994) ("[New York] decisions holding that reliance on misrepresentations was not justified are generally cases in which plaintiff was placed on guard or practically faced with the facts." (citations omitted)); Stuart Silver Assocs., 245 A.D.2d at 99, 665 N.Y.S.2d at 417 ("Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations." (citations omitted)); 88 Blue Corp. v. Reiss Plaza Assocs., 183 A.D.2d 662, 664, 585 N.Y.S.2d 14, 16 (N.Y. App. Div. 1992) (finding allegations of misrepresentation deficient where discrepancies were evident in documents appended to contract

and therefore "party ha[d] means available to him for discovering, by the exercise of ordinary intelligence, the true nature of a transaction he [was] about to enter into" (internal quotation marks and citations omitted)).

In addition, failure to fulfill a promise to perform a future act does not give rise to a cause of action for fraud "unless there existed an intent not to perform at the time the promise was made." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (Kearse, J.) (citations omitted); Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956 (N.Y. 1986).

### b. Civil Conspiracy to Commit Fraud

Under New York law, a claim for civil conspiracy may stand only if it is connected to a separate underlying tort. See Alexander & Alexander Inc. v. Fritzen, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 102 (N.Y. 1986); Snyder v. Puente De Brooklyn Realty Corp., 297 A.D.2d 432, 435, 746 N.Y.S.2d 517, 521 (N.Y. App. Div. 2002) ("[C]onspiracy to commit a tort such as fraud is not an independent cause of action in [New York] State but, rather, '[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.'" (quoted reference omitted)). "[P]laintiff may plead the existence of a conspiracy . . . to demonstrate that each defendant's conduct was part of a common scheme." World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514, 532-33 (S.D.N.Y. 2001) (citations omitted). To establish a claim of civil conspiracy, plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and, (4) resulting damage or injury. Id.

While plaintiff need not allege and prove that each defendant committed every element of the underlying tort, see Snyder, 297 A.D.2d at 435, 746 N.Y.S.2d at 521, as noted above, he is

required to demonstrate four elements in addition to the underlying tort, including the existence

of an agreement between the conspirators and that they committed an overt act in furtherance of

the agreement. Indeed, "[a]lthough tort liability may be imposed based on allegations of

conspiracy which 'connect nonactors, who might otherwise escape liability, with the [tortious]

acts of their coconspirators,' . . . more than a conclusory allegation of conspiracy or common

purpose is required to state a cause of action against such nonactor." Schwartz v. Soc'y of the

N.Y. Hosp., 199 A.D.2d 129, 130, 605 N.Y.S.2d 72, 73 (N.Y. App. Div. 1993) (internal citations

omitted) (dismissing conspiracy to defame claims against non-actors because plaintiff failed to

allege any "independent culpable behavior" on their part to link them to the allegedly defamatory

statements); see also Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC, No. 03 Civ. 9471, 2004 U.S.

Dist. LEXIS 13148, at *9 (S.D.N.Y. July 12, 2004) ("Conclusory claims of conspiracy that are

not pleaded with sufficient factual grounding should be dismissed." (citations omitted)).

### 2.    Application

First, the Court turns to whether plaintiff's allegations of fraud are pled with sufficient

particularity. Plaintiff's complaint attributes numerous false representations and omissions to

"defendants." Plaintiff does not allege that Fanny or Ariel made any statements directly to him

during the negotiations leading up to the Buy-Out, "let alone any that directly contained

falsehoods or misrepresentations." Odyssey, 85 F. Supp. 2d at 293. Rather, plaintiff alleges that

Michael's false representations and omissions should be imputed to Fanny and Ariel, as Michael

was acting as their agent. (See Pl.'s Mem. Opp'n 14.)

Normally, a plaintiff's reliance on blanket references to acts or omissions by all

defendants fails to provide those defendants with fair notice of the nature of their alleged

participation in the fraud. See, e.g., DiVittorio, 822 F.2d at 1247. However, in this case,

28

plaintiff attributes all misrepresentations, omissions, and fraudulent intent to all defendants, based on their relationship with the primary violator, Michael. Therefore, the complaint "gives [d]efendants sufficient notice of the fraudulent actions for which plaintiffs seek to hold defendants either directly or vicariously liable." Green, 2008 WL 911015, at *6 n.13. Thus, the Court proceeds to consider the fraudulent conduct as alleged against each defendant.

As to Michael, plaintiff's complaint meets the specificity requirements of Rule 9(b) and pleads adequately the elements of a New York state fraud claim. Plaintiff alleges the speaker (Michael), where and when the statements were made, and how exactly the statements were fraudulent. For purposes of this motion, plaintiff has pled sufficiently that Michael made some allegedly material misrepresentations during the course of his agency, and those allegations are sufficient, on a motion to dismiss, to attribute Michael's allegedly fraudulent statements to Fanny. Specifically, the allegations in Count II regarding defendants' representations of their intent not to sell the Properties (Compl. ¶ 70(a)), and defendants' representation of the value of the Properties at the time of the Buy-Out (id. ¶ 70(b)), satisfy the requirements of Rule 9(b) and may be attributed to both Michael and Fanny at the motion to dismiss stage.[12] In addition, with respect to those alleged omissions that can be attributed to Michael as managing agent for the general partner, Michael was under a duty to disclose based on the existence of a fiduciary relationship with plaintiff. See Salm, 20 A.D.3d at 470, 799 N.Y.S.2d at 105-06 (reversing grant of summary judgment on fraud and breach of fiduciary duty claims brought by member of limited liability company that owned car dealership against defendant managing member of company who purchased plaintiff's membership interest where defendant misrepresented true value of dealership and nonparty's offer to purchase dealership, which were material facts

---

[12] As explained above, plaintiff's complaint pleads facts from which the allegation concerning the monies available for the Buy-Out (Compl. ¶ 70(c)) may only be imputed to Michael.

defendant had a fiduciary duty to fully disclose); Blue Chip, 299 A.D.2d at 280, 750 N.Y.S.2d at 294 (reversing lower court's dismissal of fraud and breach of fiduciary duty claims where managing members of joint venture "had no right to keep to themselves or misrepresent material facts concerning their efforts to sell or lease the [v]enture's [p]roperty" or the property's true market value); see also Littman, 54 A.D.3d at 17-18, 860 N.Y.S.2d at 28 (voiding general release that plaintiff, a minority shareholder, executed in favor of defendants, managing shareholders of a closely held real estate investment corporation, in connection with sale of plaintiff's interest where defendants withheld information bearing on plaintiff's consideration of defendants' offer that defendants' had an affirmative duty to disclose). Thus, the omissions alleged in Count Two (Compl. ¶ 72) may be imputed to both Michael and Fanny for purposes of this motion to dismiss. Furthermore, the allegation that Michael intended for plaintiff to rely on the aforementioned misrepresentations coupled with the alacrity with which defendants sold the Properties after plaintiff conveyed his interest is sufficient to allege fraudulent intent. See Astroworks, Inc. v. Astroexhibit, Inc. 257 F. Supp. 2d 609, 617-18 (S.D.N.Y. 2003); Salm, 20 A.D.3d at 470, 799 N.Y.S.2d at 106. Accordingly, plaintiff sufficiently alleges Michael's direct liability for fraud and Fanny's indirect liability for fraud pursuant to an agency theory of vicarious liability.

Yet, plaintiff's allegations of fraud against Ariel cannot withstand a motion to dismiss. The unsupported statement that Michael acted as an agent on behalf of Ariel (see Compl. ¶ 28) is insufficient to allege an agency relationship encompassing the authority to make allegedly fraudulent statements. See Schwartz, 199 A.D.2d at 130, 605 N.Y.S.2d at 73. Plaintiff has not pled any facts from which the Court can infer that Ariel controlled Michael's purportedly fraudulent actions in connection with the negotiation and purchase of plaintiff's Partnership

interest. See Green, 2009 WL 911015, at *11. As a result, plaintiff's allegations are insufficient
to support his fraud claims against Ariel under an agency theory of vicarious liability.

Moreover, plaintiff's attempt to establish Ariel's indirect liability under a conspiracy to
commit fraud theory fails because the complaint does not contain facts from which it can be
inferred there was an agreement to engage in a common scheme or plan to defraud plaintiff. In
New York, under any theory of concerted action liability, "the defendant must know the
wrongful nature of the primary actor's conduct." Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir.
1998) (citations omitted) (finding no concerted action liability where airline had no knowledge
mother was removing daughter from country without father's approval). Plaintiff has failed to
allege that Ariel actually knew the information provided to plaintiff was false or misleading, or
to otherwise directly connect Ariel to Michael's allegedly fraudulent conduct. See Odyssey, 85
F. Supp. 2d at 299 (suggesting that where plaintiff connects a co-defendant to other co-
defendant's fraudulent misrepresentations, a cause of action for conspiracy to defraud may lie);
Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n. 4 (2d Cir. 1990) (stating that,
although allegations of conspiracy, as part of a conspiracy to defraud claim, are properly
measured under the more liberal standards of Rule 8(a), the complaint "must allege some factual
basis for a finding of a conscious agreement among the defendants"). In fact, the complaint does
not establish that Ariel engaged in any "independent culpable behavior" connecting him to the
underlying fraud alleged against Michael. See Schwartz, 199 A.D.2d at 130, 605 N.Y.S.2d at 73.
Count Two is therefore dismissed as against Ariel.

Contrary to defendants' contentions, plaintiff's allegation of reasonable reliance on a
material, false representation is sufficient to survive this stage of motion practice. The Court
does not agree that any contentiousness between the parties in the years leading up to the Buy-

31

Out renders plaintiff's reliance on Michael's representations unreasonable. Plaintiff has
sufficiently alleged at this point that a fiduciary relationship existed between him, Fanny, and
Michael during a period of the purportedly fraudulent scheme, so that any contentiousness
between plaintiff, Fanny, and Michael did not relieve them of the "high standards of loyalty and
fair dealing demanded of fiduciaries." Newburger, 563 F.2d at 1079 (stating "partners are not
relieved of fiduciary duties by strained relations between them"); accord Global Minerals, 35
A.D. 3d at 98, 824 N.Y.S.2d at 214-15. Likewise, even if plaintiff (unsuccessfully) approached
Grubb & Ellis to market-test the price of the Properties, defendants have not shown
circumstances that indicate plaintiff was on notice the representations in the Kanakal Report
were inaccurate or misleading, thereby obligating plaintiff to investigate further the accuracy of
the valuation of the Properties. See Keywell, 33 F.3d at 163-64 (finding environmental report
warning of contamination and advising further testing was insufficient to place plaintiff
purchaser of property on notice of the falsity of defendants' representations that no hazardous
materials were disposed on-site because contamination revealed in report was consistent with
accidental spillage that did not contradict defendants' representations). Finally, defendant's
argument that plaintiff's reliance was unreasonable because he was a sophisticated investor with
an affirmative duty to protect himself from misrepresentations during the Buy-Out transaction is
also unavailing. Defendant has not cited facts in the complaint that even hint at plaintiff's
knowledge of the alleged falsity of the representations made to plaintiff, thereby placing a
heightened burden of diligence on plaintiff. Cf. Global Home, 35 A.D. 3d at 100-01, 824
N.Y.S.2d at 214-15 (finding even if defendant shareholder misrepresented material facts and
concealed his breaches of fiduciary duty, corporate plaintiff could not reasonably rely on
defendant's misrepresentations because plaintiff had sufficient knowledge of questionable

32

dealings by defendant before it entered into a severance agreement with defendant, so that plaintiff was obligated to undertake additional inquiry to determine the accuracy of such representations or to insert protective language into severance agreement).[13]

With respect to defendants' argument that Michael's alleged misrepresentations concerning the renovation and sale of the Properties were statements of future intention, at this juncture, the Court accepts as true plaintiff's allegations that defendants knew those statements to be false. See Green, 2009 WL 911015, at *7-8 (citing Tribune Printing Co. v. 263 Ninth Ave. Realty, Inc., 457 N.Y.S.2d 785, 444 N.E.2d 35, 35 (N.Y. 1982) (finding that if a promissory statement misrepresents the speaker's state of mind, it is a fact that can be the basis for a fraud claim)); see also Brown v. Lockwood, 76 A.D.2d 721, 732, 432 N.Y.S.2d 186, 194 (N.Y. App. Div. 1980) ("Where a party represents that he intends to act when in actuality he has no such intention, he had made a misrepresentation as to his state of mind and has thus misrepresented a then existing fact."). As such, although those statements concern future events, they are

---

[13] Defendant also argues that plaintiff elected to sell his Partnership interest, even after he was told that the 1031 Exchange Funds would not be used to fund the Buy-Out, and therefore his decision to sell could not have been based on Michael's statements regarding the limited shelf life of the 1031 Exchange Funds. (See Def.'s Mem. 11-12; Def.'s Reply 8-9). Reviewing the four corners of the Letter Agreement, the Court finds it was a fully binding preliminary agreement setting forth the essential terms of the deal reached between the parties, who had agreed on all points of negotiation, including their intent to be bound, but whereby the parties agreed to memorialize their agreement in a more formal document. See Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 548-49 (2d Cir. 1998); Vacold LLC v. Cerami, No. 00 Civ. 4024, 2002 U.S. Dist. LEXIS 1895, at *11 (S.D.N.Y. Feb. 6, 2002). Plaintiff's argument that it was obligated to proceed with the Buy-Out Agreement thus has merit, and by electing to execute the Buy-Out Agreement, plaintiff did not waive any claim for damages arising from Michael's allegedly fraudulent inducement. See, e.g., Clearview Concrete Prods. Corp. v. S. Charles Gherardi, 88 A.D.2d 461, 467, 453 N.Y.S.2d 750, 754 (N.Y. App. Div. 1982) ("Affirmance [of a fraudulently induced contract] does not, of itself, . . . waive recovery of fraud damages or deprive the victimized party of the ability to achieve compensation for the aftermath of the fraud."). Moreover, to the extent that defendants argue the merger clause in the Buy-Out Agreement negates any purported reliance on prior representations (see Def.'s Mem. 10), "even where a contract contains a merger clause, courts permit a party to introduce extrinsic evidence to establish fraud." Solutia v. FMC Corp., 385 F. Supp. 2d 324, 340 (S.D.N.Y. 2005) (citing Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993)). Defendant's arguments regarding the release plaintiff executed in connection with the Buy-Out Agreement (Def.'s Mem. 10-11) is similarly unavailing because a release procured by fraud may be voided "even when it results from prolonged negotiations by represented parties." Lobel v. Maimonides Med. Ctr., 39 A.D.3d 275, 276, 835 N.Y.S.2d 28, 29 (N.Y. App. Div. 2007) (citation omitted). Therefore, defendants have not successfully challenged at this stage of the case plaintiff's assertion that he reasonably relied on Michael's representations.

actionable as factual misrepresentations. See Green, 2009 WL 911015, at *7-8. Defendants

motion to dismiss Count Two against Michael and Fanny is therefore denied.

### D.   Negligent Misrepresentation

In the alternative to his fraud claim, plaintiff contends that his complaint supports a claim

for negligent misrepresentation. Plaintiff argues that Michael made the misrepresentations

discussed above "negligently and with reckless disregard for the truth," and he reasonably relied

on them in agreeing to sell his minority Partnership interest for the unfairly low price of $7.8

million. (Compl. ¶¶ 77-80.)  Defendants argue that plaintiff's claim is meritless for the same

reasons that they contend plaintiff's fraud claim is deficient.   In addition, defendants assert that

plaintiff's complaint lacks a necessary element for a claim of negligent misrepresentation

because no special relationship existed between plaintiff and Michael; to the contrary, their

relationship was one of distrust and dislike caused by years of litigation and disagreement, as

revealed in the complaint.

### 1.   Applicable Law

"Negligent misrepresentation involves most of the same elements as fraud, with a

negligence standard substituted for the scienter requirement." Welch v. TD Ameritrade Holding

Corp., No. 07 Civ. 6904, 2009 U.S. Dist. LEXIS 65584, at *132 (S.D.N.Y. July 27, 2009)

(internal quotation marks and citation omitted).  Under New York law, a claim of negligent

misrepresentation requires plaintiff to demonstrate that: (1) defendants had a duty, as a result of a

special relationship, to give correct information; (2) defendants made a false representation that

they should have known was incorrect; (3) defendants knew plaintiff desired for a serious

purpose the information supplied in the representation; (4) plaintiff intended to rely and act upon

it; and (5) plaintiff reasonably relied on it to his detriment. Hydro Investors, Inc. v. Trafalgar

Power Inc., 227 F.3d 8, 20 (2d Cir. 2000). "[T]he alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." Id. at 20-21 (citation omitted).

The first element of this claim requires the existence of a special relationship between the parties. See, e.g., Accusystems, Inc. v. Honeywell Info. Sys., Inc., 580 F. Supp. 474, 480 (S.D.N.Y. 1984) ("New York courts do not recognize a cause of action for negligent misrepresentation in the absence of some special relationship of trust or confidence between the parties." (citations omitted)). It is from this special relationship that an independent duty to speak with care arises. Kimmell v. Schaefer, 652 N.Y.S.2d 715, 719, 675 N.E.2d 450, 454 (N.Y. 1996) (finding that nature and caliber of relationship between the parties, such as: (1) whether defendant "held or appeared to hold unique or special expertise;" (2) whether the parties had "a special relationship of trust or confidence;" and (3) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose," determines whether a party justifiably relied on a misrepresentation). The determination whether such a duty exists is an issue of law for the courts, and "once the nature of the duty has been determined as a matter of law, whether a particular defendant owes a duty to a particular plaintiff is a question of fact." Id. at 718, 675 N.E.2d at 453.

### 2. Application

Plaintiff has sufficiently alleged that he and Fanny were partners and thus in a relationship of trust and confidence giving rise to a duty to provide information correctly. Plaintiff has also alleged facts from which it can be inferred that Michael was in a fiduciary relationship with plaintiff when acting within the scope of his agency, and thus owed plaintiff a duty of care. In addition, as discussed above, at this stage in the proceedings, plaintiff has also

35

sufficiently pled his reasonable reliance on Michael's alleged misrepresentations of material existing fact, which it can be inferred were made to induce plaintiff to sell his Partnership interest. However, plaintiff's complaint fails to plead a special relationship with Ariel. Therefore, the Court dismisses Count Three against Ariel, and denies defendants' motion to dismiss Count Three against Fanny and Michael.

## III.   LEAVE TO AMEND

Plaintiff requests leave to amend the complaint to cure any deficiencies. (Pl.'s Opp'n Mem. 25.)  Leave to amend is "freely given when justice so requires." Fed R. Civ. P. 15(a); see Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (stating "the usual practice upon granting a motion to dismiss is to allow leave to replead").  Accordingly, the Court grants plaintiff leave to replead in a manner consistent with this Opinion within thirty (30) days of the date this Opinion and Order is entered.

### CONCLUSION

For the reasons stated herein, defendants' motion to dismiss is GRANTED in part and DENIED in part.  The complaint against Ariel Grunberg is dismissed in its entirety.  Plaintiff has thirty (30) days from the date of entry of this Opinion and Order to serve and file an amended complaint in accordance with the Court's analysis herein.  The parties shall appear on October 1, 2009 at 9:30 a.m. in courtroom 18B for a pre-trial conference before this Court.

**SO ORDERED.**

New York, New York
August 31, 2009

U.S.D.J.

36