Andrew N. Krinsky (AK 0997)
Linda S. Roth (LR 8255)
**TARTER KRINSKY & DROGIN LLP**
1350 Broadway
New York, New York  10018
(212) 216-8000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BRUCE MEISEL,                              :     07 Civ. 11610 (BSJ)
                                           :
                    Plaintiff,             :
                                           :     **DEFENDANTS' PROPOSED**
        -against-                          :     **JURY CHARGES**
                                           :
MICHAEL GRUNBERG and                       :
FANNY GRUNBERG,                            :
                                           :
                    Defendants.            :
-----------------------------------------------------------x

        Defendants Michael Grunberg and Fanny Grunberg, by their attorneys Tarter Krinsky &

Drogin LLP, submit the following proposed jury charges in connection with the trial of this

action, which is currently scheduled to commence on March 7, 2011.   Defendants expressly

reserve their rights to amend and/or supplement these proposed charges.

Dated: New York, New York
        February 18, 2011

                                        Respectfully submitted,

                                        **TARTER KRINSKY & DROGIN LLP**
                                        *Attorneys for Defendants*

                                        By: _____
                                            Andrew N. Krinsky (AK 0997)
                                            Linda S. Roth (LR 8255)
                                            1350 Broadway
                                            New York, New York  10018
                                            (212) 216-8000

## I.   PROPOSED CHARGES TO BE GIVEN
##      PRIOR TO THE PRESENTATION OF EVIDENCE

### Parties
### (New York Pattern Jury Instruction 1:2)

The party who brings a lawsuit is called the plaintiff. In this action the plaintiff is Bruce Meisel and he is suing to recover damages that he allegedly sustained in connection with the sale of his partnership interest in an entity known as "15 and 19 West 55th Street Realty Company." The parties against whom the suit is brought are called the defendants.  In this action the defendants are Michael Grunberg and Fanny Grunberg.

### Openings and Evidence
### (New York Pattern Jury Instruction 1:3)

When I have completed these opening instructions to you, the attorneys will make opening statements to you in which each will outline for you what (he, she) expects to prove. The purpose of such opening statements is to tell you about each party's claims so that you will have a better understanding of the evidence as it is introduced.  What is said in such opening statements is not evidence.  The evidence upon which you will base your decision will come from the testimony of witnesses here in court or in examinations before trial, or in the form of photographs, documents, or other exhibits introduced as evidence.  Plaintiff makes an opening statement first, followed by defendant.  After the opening statements, plaintiff will introduce evidence in support of his claim.  Normally a plaintiff must produce all of his witnesses and complete his entire case before defendant introduces any evidence, although exceptions are sometimes made to that rule in order to accommodate a witness.  After plaintiff has completed the introduction of all of his evidence, defendants may present witnesses and exhibits.  If they do so, plaintiff may be permitted to offer additional evidence for the purpose of rebutting

defendants' evidence.  Each witness is first examined by the party who calls that witness to testify, and then the opposing party is permitted to question the witness.

**Objections, Motion, Exceptions**
(New York Pattern Jury Instruction 1:4)

At times during the trial, an attorney may object to a question or to the introduction of an exhibit or make motions concerning legal questions that apply to this case.  Arguments in connection with such objections or motions are sometimes made out of the presence of the jury. Any ruling upon such objections or motions will be based solely upon the law and therefore you must not conclude from any such ruling or from anything I say during the course of the trial that I favor any party to this lawsuit.  After such a ruling, you may hear one of the attorneys taking what we call an exception to it.  Exceptions have nothing to do with your role in this case and I mention the procedure to you so that you will not be confused if you hear the word during the trial.

**Summations**
(New York Pattern Jury Instruction 1:5)

Upon completion of the introduction of evidence, the attorneys will again speak to you in a closing statement or summation.  In summing up, the lawyers will point out what they believe the evidence has shown, what inferences or conclusions they believe you should draw from the evidence and what conclusions they believe you should reach as your verdict.  What is said by the attorneys in summation, like what is said by them in their opening statements, or in the making of objections or motions during the trial, is not evidence.  Summations are intended to present the arguments of the parties based on the evidence.

### Function of Court and Jury
(New York Pattern Jury Instruction 1:6)

After the summations, I will instruct you on the rules of law applicable to the case and you will then retire for your deliberations.  Your function as jurors is to decide what has or has not been proved and apply the rules of law that I give you to the facts as you find them to be.  The decision you reach will be your verdict.  Your decision will be based on the testimony that you hear and the exhibits that will be received in evidence during the trial.  You are the sole and exclusives judges of the facts and nothing I say or do should be taken by you as any indication of my opinion as to the facts.  As to the facts, neither I nor anyone else may invade your province.  I will preside impartially and not express any opinion concerning the facts.  Any opinions of mine on the facts would, in any event, be totally irrelevant because the facts are for you to decide.  On the other hand, and with equal emphasis, I instruct you that in accordance with the oath you took as jurors you are required to accept the rules of law that I give you whether you agree with them or not.  You are not to ask anyone else about the law.  *[If a lawyer or judge is a member of the jury, the following should be added:* including the lawyer or judge serving as a juror.]

You should not consider or accept any advice about the law from anyone else but me.

### Note-Taking by Jury
(Modern Federal Jury Instructions 71-16)

*If note-taking is permitted:*  If you want to take notes during the course of the trial, you may do so.  If you do take notes, be sure that your note-taking does not interfere with your listening to and considering all of the evidence.  Also, if you take notes, do not discuss them with anyone before or during your deliberations.  Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror

and your notes are not to be shown to any other juror during your deliberations. If, during deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.

*If note-taking is not permitted:* You may not take notes during the trial. The main reason for this is that it is difficult to take notes at the same time you are trying to pay attention to what a witness is saying. In addition, some of you may be better note-takers than others and there is a risk that the jurors who do not take good notes will depend on the notes of the others. The jury system depends on all twelve jurors paying close attention and arriving at a unanimous decision. If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the office trial transcript which is being made of these proceedings be read to you.

## Consider Only Competent Evidence
(New York Pattern Jury Instruction 1:7)

As the sole judges of the facts, you must decide which of the witnesses you believe, what portion of their testimony you accept and what weight you give to it. At times during the trial I may sustain objections to questions and you may hear no answer, or, where an answer has been made, I may instruct that it be stricken or removed from the record and that you disregard it and dismiss it from your minds. You may not draw any inference or conclusion from an unanswered question nor may you consider testimony which has been stricken or removed from the record in reaching your decision. The law requires that your decision be made solely upon the evidence before you. Such items as I exclude them from your consideration will be excluded because they are not legally admissible.

**Weighing Testimony**
(New York Pattern Jury Instruction 1:8)

The law does not, however, require you to accept all of the evidence I shall admit.  In deciding what evidence you will accept you must make your own evaluation of the testimony given by each of the witnesses, and decide how much weight you choose to give to that testimony.  The testimony of a witness may not conform to the facts as they occurred because he or she is intentionally lying, because the witness did not accurately see or hear what he or she is testifying about, because the witness's recollection is faulty, or because the witness has not expressed himself or herself clearly in testifying.  There is no magical formula by which you evaluate testimony.  You bring with you to this courtroom all of the experience and background of your lives.  In your everyday affairs you decide for yourselves the reliability or unreliability of things people tell you.  The same tests that you use in your everyday dealings are the tests that you apply in your deliberations.  The interest or lack of interest of any witness in the outcome of this case, the bias or prejudice of a witness, if there be any, the appearance, the manner in which the witness gives testimony on the stand, the opportunity that the witness had to observe the facts about which he or she testifies, the probability or improbability of the witness' testimony when considered in light of all the other evidence in the case, are all items to be considered by you in deciding how much weight, if any, you will give to that witness' testimony.  If it appears that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy can be reconciled by fitting the two stories together.  If, however, that is not possible, you will then have to decide which of the conflicting stories you will accept.

**Conduct During Recess**
(New York Pattern Jury Instruction 1:9)

The purpose of the rules I have outlined for you is to make sure that a just result is reached when you decide the case. For the same purpose, you should keep in mind several rules governing your own conduct during any recess.

**Discussion With Others – Independent Research**
(New York Pattern Jury Instruction  1:11)

In fairness to the parties to this lawsuit, it is very important that you keep an open mind throughout the trial. Then, after you have heard both sides fully, you will reach your verdict only on the evidence as it is presented to you in this courtroom, and only in this courtroom, and then only after you have heard the summations of each of the attorneys and my instructions to you on the law. You will then have an opportunity to exchange views with each member of the jury during your deliberations to reach your verdict.

Please do not discuss this case either among yourselves or with anyone else during the course of the trial. Do not do any independent research on any topic you might hear about in the testimony or see in the exhibits, whether by consulting others, reading newspapers, books or magazines, or conducting an internet search of any kind. All electronic devices, including any cell phones, Blackberries, iPhones, iPads, laptops, or any other personal electronic devices must be turned off while you are in the courtroom and while you are deliberating after I have given you the law applicable to this case. [*In the event that the court requires the jurors to relinquish their devices, the charge should be modified to reflect the court's practice*].

It is important to remember that you may not use any internet services, such as Google, Facebook, Twitter or any others to individually or collectively research topics concerning the trial, which includes the law, information about any of the issues in contention, the parties, the

lawyers or the court. After you have rendered your verdict and have been discharged, you will be free to do any research you choose, or to share your experiences, either directly, or through your favorite electronic means.

For now, be careful to remember these rules whenever you use a computer or other personal electronic device during the time you are serving as a juror but you are not in the courtroom.

While this instruction may seem unduly restrictive, it is vital that you carefully follow these directions. The reason is simple. The law requires that you consider only the testimony and evidence you hear and see in this courtroom. Not only does our law mandate it, but the parties depend on you to fairly and impartially consider only the admitted evidence. To do otherwise, by allowing outside information to affect your judgment, is unfair and prejudicial to the parties and could lead to this case's having to be retried.

Accordingly, I expect that you will seriously and faithfully abide by this instruction.

### Discussion by Others
(New York Pattern Jury Instruction 1:12)

Please do not permit any person who is not a juror to discuss this case in your presence, and if anyone does so despite you telling the person not to, report that to me as soon as you are able. You should not, however, discuss with your fellow jurors either that fact or any other fact you feel necessary to bring to my attention.

### Conversation With Parties or Attorneys
(New York Pattern Jury Instruction 1:13)

Although it is normal human tendency to talk to people with whom one comes in contact, please do not, during the time you serve on this jury, talk, whether in or out of the courtroom, with any of the parties or their attorneys or any witness. By this I mean not only do not talk

about the case, but do not talk to them at all, even to pass the time of day.  In no other way can all parties be assured of the absolute impartiality they are entitled to expect from you as jurors.

### Alternate Jurors
(New York Pattern Jury Instruction 1:13A)

Under the law only six jurors will deliberate on this case when it is submitted for consideration.

We have selected additional jurors.  Alternate jurors are selected to serve because a regular juror may be prevented from continuing to serve by some emergency such as a serious illness or death.  Although this seldom happens during a trial, there are cases where we do call on the service of alternates.  Alternates are required to pay the same careful attention to the trial as the regular jurors, so that if needed they will be fully familiar with the case.

The fact that there are alternate jurors does not mean that any regular juror is free to excuse himself or herself from the case.  As a duly chosen juror it is your obligation to be available throughout the trial.

### Conclusion
(New York Pattern Jury Instruction 1:14)

The description of trial procedure, the rules governing your conduct and the legal principles I have discussed with you will, I believe, make it easier for you to understand the trial as it goes on and to reach a just result at its conclusion.

## II.   PROPOSED CHARGES TO BE GIVEN AFTER THE PRESENTATION OF EVIDENCE

### Introduction
(New York Pattern Jury Instruction 1:20)

Members of the jury, we come now to that portion of the trial when you are instructed on the law applicable to the case and after which you will retire for your final deliberations.  You

have now heard all the evidence introduced by the parties and through arguments of their attorneys you have learned the conclusions which each party believes should be drawn from the evidence presented to you.

### Review Principles Stated
(New York Pattern Jury Instruction 1:21)

You will recall that at the beginning of the trial I stated for you certain principles so that you could have them in mind as the trial progressed. Briefly, they were that you are bound to accept the law as I give it to you, whether or not you agree with it. You are not to ask anyone else about the law. [*If a lawyer or judge is a member of the jury, the following should be added:* including the lawyer or judge serving as a juror.] You should not consider or accept any advice about the law from anyone else but me. Furthermore, you must not conclude from my rulings or anything I have said during the trial that I favor any party to this lawsuit. Furthermore, you may not draw any inference from an unanswered question nor consider testimony which has been stricken from the record in reaching your decision. Finally, in deciding how much weight you choose to give to the testimony of any particular witness, there is no magical formula which can be used. The tests used in your everyday affairs to decide the reliability or unreliability of statements made to you by others are the tests you will apply in your deliberations. The items to be taken into consideration in determining the weight you will give to the testimony of a witness include the interest or lack of interest of the witness in the outcome of the case, the bias or prejudice of the witness, if there be any, the age, the appearance, the manner of the witness as the witness testified, the opportunity the witness had to observe the facts about which he or she testified, the probability or improbability of the witness' testimony when considered in the light of all the other evidence in the case.

## Falsus in Uno
(New York Pattern Jury Instruction 1:22)

If you find that any witness has willfully testified falsely as to any material fact, that is as to an important matter, the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.   You are not required, however, to consider such a witness as totally "unbelievable."  You may accept so much of his or her testimony as you deem true and disregard what you feel is false.   By the processes which I have just described to you, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of their testimony you accept and what weight you will give it.

## Burden of Proof – Clear and Convincing Evidence
(New York Pattern Jury Instruction 1:64)

The burden is on the plaintiff to prove his breach of fiduciary duty and fraud claims by clear and convincing evidence.[1]   This means evidence that satisfies you that there is a high degree of probability that there was a breach of fiduciary duty or fraud as I will define it for you.

To decide for the plaintiff it is not enough to find that the preponderance of the evidence is in the plaintiff's favor.  A party who must prove his case by a preponderance of the evidence only need satisfy you that the evidence supporting his case more nearly represents what actually happened than the evidence which is opposed to it.  But a party who must establish his case by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what he claims is what actually happened.

---

[1]   *City of New York v. Tavern on the Green, L.P.*, 427 B.R. 233, 242 (Bankr. S.D.N.Y. 2010) (standard of proof for fraud is clear and convincing evidence); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 646 F. Supp. 2d 385, 389 (S.D.N.Y. 2009) (quoting *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir. 1987) (same); *Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116, 578 N.Y.S.2d 128, 129-30 (1991) (same).

If, upon all the evidence, you are satisfied that there is a high probability that there was (e.g., fraud, malice, mistake, a gift, a contract between the plaintiff and the deceased, incompetency, addition) as I (have defined, will define) it for you, you must decide for the plaintiff.  If you are not satisfied that there is such a high probability, you must decide for the defendant.

### Common Counsel and Counsel Cooperation
(Modern Federal Jury Instructions 71-14)

Although the defendants in this trial are being represented by the same counsel, you are not to treat them as one person.  Each defendant is entitled to your separate consideration.  The question of whether liability has been proven is personal to each defendant and must be decided by you as to each defendant individually.  (*If applicable*:  Similarly, you must decide the amount of damages separately as to each party).

### Breach of Fiduciary Duty
(Adapted from New York Pattern Jury Instruction 3:59)

Plaintiff Bruce Meisel claims that defendants Michael Grunberg and Fanny Grunberg each breached his or her fiduciary duty to Meisel.

Fanny Grunberg was Meisel's partner in the Partnership and a partner has a duty to his or her partner to act in good faith and in the partner's best interest during the period of the partnership.  A fiduciary owes his or her partner an undivided and unqualified loyalty and may not act in any manner contrary to the interest of the partner.  A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed and the fiduciary may not obtain an improper advantage at the other's expense. A partner's fiduciary duty, however, relates only to matters concerning the business of the partnership and does not create a general duty of disclosure. Also, people can be both a partner

with a fiduciary duty and an individual without such a duty and their conduct can be separated accordingly.[2]   Michael Grunberg was not Meisel's partner in the Partnership. However, to the extent that he was acting as Fanny's agent with respect to the Partnership, he owed plaintiff a fiduciary duty. Remember though that people can be both the agent of a partner with a fiduciary duty and an individual without such a duty and their conduct can be separated accordingly.

Meisel claims that Michael Grunberg and Fanny Grunberg did not act in good faith or in his best interests:

a.   by representing that they were "not sellers" of the Properties and by failing to disclose their alleged intention to sell the Properties;

b.   by failing to disclose their discussions with David Swersky about his alleged offer to purchase the Properties;

c.   by providing Meisel with the $37 million dollar Opinion of Value prepared by Massey Knakel;

d.   by failing to disclose to Meisel the higher "projected" GAI and NOI figures incorporated into Massey Knakal's offering materials for the sale of the Properties;

e.   by failing to disclose to Meisel Massey Knakal's "Proposal to Handle the Disposition of 15 and 19 West 55th Street"

f.   by failing to disclose to Meisel their alleged plans for the renovation and improvement of the Properties;

g.   by rejecting Meisel's proposal to convert the Properties to condominiums and failing to disclose their alleged belief that the properties were "perfect for conversion";

h.   by interfering with Meisel's attempts to ascertain the fair market value of the Properties through the solicitation of offers through Grubb & Ellis;

i.   by concealing and failing to disclose Fanny Grunberg's allegedly deteriorating health; and

---

[2]   *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 120-21, 629 N.Y.S.2d 1009, 1013-14 (1995).

j.     by unreasonably withholding permission for Meisel to attempt to sell his Partnership interest at a fair market price to a third party.

Meisel claims that as a result of these breaches, he sustained damages.

Michael Grunberg and Fanny Grunberg deny breaching their fiduciary duties to Meisel and claim that:

a.     when Michael acted for Fanny in connection with the sale of plaintiff's Partnership interest, he primarily acted as her personal agent, not as her agent in her capacity as a partner of the Partnership;

b.     Fanny did not purchase Meisel's interest in the Partnership, Michael and his brother Ariel did in an arm's length business transaction;

c.     when Michael told Meisel that Fanny was not a seller, it was a truthful statement;

d.     there were no substantive discussions with David Swersky about purchasing the Properties at any time before Meisel sold his Partnership interest and inconsequential remarks about a possible purchase of the Properties are not material and do not create a duty to disclose;

e.     the $37 million Massey Knakal Opinion of Value better reflected the value of the Properties to Meisel and Fanny Grunberg as the owners of the Properties because it was not based on projections or fictitious revenues;

f.     Meisel was aware that projections were not included in the $37 million Massey Knakal Opinion of Value and when he asked Michael Grunberg about the absence of projections, Michael told Meisel that adding projections would increase the value of the Properties;

g.     Meisel is an attorney, banker and real estate developer who hired and worked with real estate consultants and attorneys before he elected to sell his Partnership interest and knew before he sold his Partnership interest that the value of the Properties could be $55 million;

h.     there is no evidence that the higher projected "GOI" and "NOI" numbers included in the Massey Knakal offering materials were known to Michael Grunberg or Fanny Grunberg before Meisel sold his Partnership interest;

i.     the "Proposal for the Disposition of 15 and 19 West 55th Street" was not requested by Michael Grunberg but instead was created by Massey Knakal as a marketing tool, Michael Grunberg did not keep the proposal and, at the time the proposal was prepared, Fanny Grunberg had no intention to sell the Properties;

14

j.      Fanny Grunberg had no plans to improve the Properties or create retail space by combining the lobbies;

k.      Fanny Grunberg had no plans to convert the Properties to condominiums and was not required to accept or act on Meisel's preference to convert the Properties, which had been the subject of a prior lawsuit which Meisel lost;

l.      at no time did defendants interfere with Meisel's efforts to get an appraisal of the Properties;

m.      there is no evidence that Fanny Grunberg's health had deteriorated in any significant way before Meisel elected to sell his interest in the Partnership;

n.      Meisel did not ask for a representation in his purchase and sale contract that would preclude a sale of the Properties nor did he ask for a "tail" which would be a supplemental payment to him if the Properties were sold;

o.      Meisel signed a release when he sold his Partnership interest giving up all claims that he had or might have against Michael and Fanny Grunberg.

If you find that Fanny Grunberg did not owe a fiduciary duty to Meisel with respect to any of the listed items, you need proceed no further as to that defendant with respect to that item.

If you find that Michael Grunberg did not owe a fiduciary duty to Meisel with respect to any of the listed items, you need proceed no further as to that defendant with respect to that item.

If you find that Fanny Grunberg had a fiduciary duty with respect to one or more of the listed items, you must then consider whether Fanny breached her fiduciary duty with respect to those items. In this regard, you are reminded that a partner's fiduciary duty only pertains to the business of the partnership and, as a matter of law, failure to disclose inconsequential matters, comments or discussions will not support a claim for breach of fiduciary duty.[3] If you find that Fanny did not breach her fiduciary duty to Meisel with respect to any of those items, you need proceed no further, as to Fanny.

---

[3] *Glazer v. Formica Corp.*, 964 F.2d 149, 155 (2d Cir. 1992).

If you find that Michael Grunberg had a fiduciary duty with respect to one or more of the listed items, you must then consider whether Michael breached his fiduciary duty with respect to those items.  In this regard, you are reminded that a partner's fiduciary duty only pertains to the business of the partnership and, as a matter of law, failure to disclose inconsequential matters, comments or discussions will not support a claim for breach of fiduciary duty.[4]  If you find that Michael did not breach his fiduciary duty to Meisel with respect to any of those items, you need proceed no further, as to Michael.

If you find that Fanny Grunberg did breach her fiduciary duty to Meisel, you must then decide whether that breach was the proximate cause of damages allegedly sustained by Meisel. The standard for determining proximate cause is known as the "but for" standard.[5]  This means that before you can find that a breach was the proximate cause of Meisel's alleged damage, you must find that "but for" the breach Meisel would not have acted as he did.  In this case, that means that "but for" the breach Meisel would not have sold his Partnership interest for $7.8 million. In determining whether a breach was the "but for" cause of damages, you may take into consideration Meisel's level of sophistication as a business man, the nature of his relationship with defendants, as well as all other factors that contributed to his decision to sell his Partnership interest.  If you find that a breach by Fanny Grunberg was not the "but for" cause of Meisel's alleged damages, you need proceed no further.  If you find that a breach by Fanny Grunberg was the "but for" cause of Meisel's alleged damages, you must then decide the amount of damages Meisel sustained and I will talk to you in a few minutes about how to calculate damages.

---

[4] *Glazer v. Formica Corp.,* 964 F.2d 149, 155 (2d Cir. 1992).

[5] Because plaintiff is seeking compensatory damages, the "but for" standard rather than the "substantial factor" standard applies. *See, RSL Commc'ns PLC v. Bildirici,* 649 F. Supp. 2d 184, 210 (S.D.N.Y. 2009); *LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.,* 173 F.3d 454, 465 (2d Cir. 1999).

If you find that Michael Grunberg did breach his fiduciary duty to Meisel, you must then decide whether that breach was the proximate cause of any damages allegedly sustained by Meisel. As I said previously, the standard for determining proximate cause is known as the "but for" standard.  This means that before you can find that a breach was the proximate cause of Meisel's alleged damage, you must find that "but for" the breach Meisel would not have acted as he did.  In this case, that means that "but for" the breach Meisel would not have sold his Partnership interest for $7.8 million.  In determining whether a breach was the "but for" cause of damages, you may take into consideration Meisel's level of sophistication as a business man, the nature of his relationship with defendants, as well as all other factors that contributed to his decision to sell his Partnership interest.  If you find that a breach was not the "but for" cause of Meisel's alleged damages, you need proceed no further.  If you find that a breach by Michael Grunberg was the "but for" cause of Meisel's alleged damages, you must then decide the amount of damages Meisel sustained and, as I said, I will talk to you in a few minutes about how to calculate damages.

### Breach of Fiduciary Duty -- $47 Million Massey Knakal Opinion

In addition to the claims for breach of fiduciary duty that I have already talked about, Meisel claims that defendants breached their fiduciary duty to him by failing to disclose the $47 million Opinion of Value prepared by Massey Knakal.  It has previously been determined that defendants owed Meisel a duty with respect to the $47 million Opinion of Value prepared by Massey Knakal and that they breached that duty when they failed to disclose the opinion to Meisel.  It has not, however, been determined if that breach was the proximate cause of any damage to Meisel and it will be up to you, and you alone, to decide that issue. You should not assume or infer from the prior findings regarding this one claim of breach that defendants owed a

fiduciary duty to Meisel with respect to any of the other conduct that forms the basis of plaintiff's claim for breach of fiduciary duty, that defendants breached any such duty or that Meisel sustained any damages at all as a result of defendants' conduct.

### Fraud
(Adapted from New York Pattern Jury Instruction 3:20)

The plaintiff Bruce Meisel seeks to recover damages that he claims were caused by a fraud committed by the defendants Michael Grunberg and Fanny Grunberg. As you have heard, Meisel had no communications with Fanny Grunberg in 2004 and 2005 and his claims against her for misrepresentations are based on his allegation that Michael Grunberg was acting as her agent. Before you can find that Fanny Grunberg is liable to Meisel for fraud you must determine whether any alleged misrepresentation made by Michael Grunberg was made in his capacity as Fanny Grunberg's agent. If you find that any misrepresentation made by Michael was made while acting in his personal capacity then you may not find Fanny liable to Meisel for fraud with regard to that alleged misrepresentation; you may only consider whether Michael personally is liable to Meisel with regard to that alleged misrepresentation.

Further, before he can recover, Meisel must prove -- by clear and convincing evidence -- that Michael Grunberg and Fanny Grunberg made a material representation of fact; that the representation was false; that Michael Grunberg and Fanny Grunberg knew it was false or made the representation recklessly without regard to whether it was true or false; that Michael Grunberg and Fanny Grunberg made the representation to induce Meisel to rely upon it; that Meisel did rely upon it and acted reasonably in doing so; and that as a result, Meisel sustained damages.

Meisel claims that Michael Grunberg and Fanny Grunberg made the following misrepresentations:

a.    that they did not intend to and would not sell the Properties or their interest therein;

b.    that the Properties were worth between $22,375,000 and $33,375,000 in March of 2005;

c.    that they would not renovate or otherwise invest in improving the Properties or increasing the Partnership income; and

d.    against Michael Grunberg only, that he falsely represented to Meisel that the only monies available to fund the purchase of Meisel's Partnership interest were 1031 Exchange Funds.

Meisel also claims that Michael Grunberg and Fanny Grunberg failed to disclose to him:[6]

a.    their discussions with David Swersky;

b.    that a feasibility study had been done to combine the lobbies and add rental space to the Properties; and

c.    that Fanny Grunberg's health had allegedly deteriorated in the period before and during negotiations leading up to the sale of Meisel's Partnership interest.

Michael Grunberg and Fanny Grunberg claim that:

a.    they made no misrepresentations to Meisel;

b.    when Meisel was told that Fanny was not a seller, she was not interested in selling the Properties or her interest therein;

c.    Michael Grunberg and Fanny Grunberg did not make any representations to Meisel regarding the value of the Properties but merely passed along an opinion of value prepared by Massey Knakal based on actual revenue rather than projected revenue;

d.    that in any event, prior to the sale of his interest, Meisel, who was an attorney, banker and real estate developer who worked closely with real estate consultants and attorneys before he elected to sell his Partnership interest and who had been at odds with Fanny and Michael Grunberg for years regarding the Partnership was aware of the projected value of the Properties as reflected in the $47 million Massey Knakal Opinion of Value;

---

[6]  Defendants specifically object to a charge that would include a statement of plaintiff's claims couched both as affirmative misrepresentations and as omissions and have eliminated such duplication in their proposed charge. Allowing plaintiff to state his claim both in terms of an affirmative misrepresentation and as an omission would give plaintiff two bites at the apple and would be prejudicial to defendants.

e.   Fanny Grunberg did not intend to renovate or otherwise invest in improving the Properties or increasing Partnership income and did not represent otherwise to Meisel; and

f.   Michael Grunberg never represented that 1031 Exchange Funds were the only source of available funds to pay for the purchase of Meisel's Partnership interest and, in any event, Meisel knew before he closed on the sale of his interest that 1031 Exchange Funds would not be used and proceeded with the sale anyway.

g.   Meisel did not ask for a representation in his purchase and sale contract that would preclude a sale of the Properties, nor did he ask for a "tail" which would be a supplemental payment to him if the Properties were sold;

h.   Meisel signed a release when he sold his Partnership giving up all claims that he had or might have against Michael and Fanny Grunberg.

Michael Grunberg and Fanny Grunberg further claim that:

a.   before Meisel sold his Partnership interest David Swersky made only a passing remark to Michael Grunberg about purchasing the Properties and did not make an offer to purchase the Properties for a specific price;

b.   Michael Grunberg and Fanny Grunberg had no duty to disclose the Feasibility Analysis to Meisel and had rejected the idea of combining the lobbies as too expensive;

c.   Michael Grunberg and Fanny Grunberg had no duty to disclose anything about Fanny Grunberg's health to Meisel and, in any event, there was nothing significant to report;

Meisel has the burden of proving by clear and convincing evidence with respect to each of his specific allegations:

First, that Michael Grunberg and Fanny Grunberg made a representation of fact to Meisel;

Second, that the representation was material, that it would reasonably make a significant difference in the decision to sell or not to sell, and that it was false;[7]

---

[7] *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 672 (S.D.N .Y. 2009); *Greenberg v. Chuist*, 282 F. Supp. 2d 112, 119 (S.D.N.Y. 2003).

Third, that Michael Grunberg and Fanny Grunberg knew the representation was false or made the representation recklessly without regard to whether it was true or false;

Fourth, that Michael Grunberg and Fanny Grunberg made the representation to induce Meisel to sell his Partnership interest for $7.8 million;

Fifth, that Meisel justifiably relied upon Michael Grunberg and Fanny Grunberg's representation in deciding to sell his Partnership interest for $7.8 million; and

Sixth, that, as a result, Meisel was damaged.[8]

The first question you will be asked to decide is whether Michael Grunberg and Fanny Grunberg made one or more of the representations. A representation is made when by words or deeds an impression is communicated to the mind of another person.[9] Active concealment can also support a claim of fraud but only if defendants had some reason to believe the information that was allegedly concealed was material and relevant to the transaction.[10]    Only representations of fact, however, are actionable.  Representations of opinion or a prediction of something which is hoped or expected to occur in the future is not enough.[11]    Also, representations that are mere "puffery" are not sufficient.[12]

If you find that Michael Grunberg and Fanny Grunberg did make one or more representations to Meisel, you must next decide whether the representation that they made were material and whether they were true or false – at the time they were made.  If the representations

---

[8] *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996).

[9] *Chase Manhattan Bank, N.A. v. Perla*, 65 A.D.2d 207, 411 N.Y.S.2d 66 (1978).

[10] *Commander Terminals, LLC v. Commander Oil Corp.*, 71 A.D.3d 623, 897 N.Y.S.2d 151 (2d Dep't 2010); *Botti v. Russell*, 225 A.D.2d 1016, 640 N.Y.S.2d 285 (3d Dep't 1996).

[11] *Mandarin Trading Ltd. v. Wildenstein*, 65 A.D.3d 448, 884 N.Y.S.2d 47 (1st Dep't 2009).

[12] *Longo v. Butler Equities II, L.P.*, 278 A.D.2d 97, 718 N.Y.S.2d 30 (1st Dep't 2000).

were not material, you need proceed no further.  If the representations were true, you also need proceed no further on the claim of fraud.

If one or more representation was both material and false, you must next decide whether Michael Grunberg and Fanny Grunberg knew the representation was false or made the representation recklessly without regard to whether it was true or false. If you find that Michael Grunberg and Fanny Grunberg did not know that any representation was false and that Michael Grunberg and Fanny Grunberg did not make any representation recklessly, you need proceed no further on the claim of fraud. If defendants had a reasonable basis to believe their representations were true, there is no intent to deceive and you need proceed no further.[13]

If you find that Michael Grunberg and Fanny Grunberg did know one or more representation was false or acted recklessly, you must next decide whether the representation was made to induce Meisel to sell his Partnership interest for $7.8 million.

If you find that Michael Grunberg and Fanny Grunberg did not make the statement to induce Meisel to sell his Partnership interest for $7.8 million, you need proceed no further on the claim of fraud.  If you find that Michael Grunberg and Fanny Grunberg did make the representation to induce Meisel to sell his Partnership interest for $7.8 million, you must next decide whether Meisel was justified in relying on those representations.

Whether the person to whom a representation is made is justified in relying upon it generally depends upon whether the fact represented is one that a reasonable person would believe and consider important in deciding whether to sell his Partnership interest.  The law, however, places an affirmative duty on sophisticated parties in business transactions to protect themselves from misrepresentations and omissions by investigating the details of the

---

[13] *Rich v. Touche Ross & Co.*, 69 A.D.2d 778, 415 N.Y.S.2d 23 (1st Dep't 1979); *Buchall v. Higgins*, 109 A.D. 607, 96 N.Y.S. 241 (2d Dep't 1905).

transactions.[14] And, when the party to whom a misrepresentation is made has hints of its falsity, a heightened degree of diligence is required and he cannot reasonably rely on such representations without making additional inquiries to determine their accuracy.[15] Furthermore, when a party investigates the validity of information provided to him and is aware of their falsity, he will not then be heard to complain that he has been deceived.[16] Reliance is not justified when the facts are known to the person claiming to have been deceived.[17]

If you find that Meisel was not justified in relying on the representations, you need proceed no further on the claim of fraud. If you find that Meisel was justified in relying on the representations, you must next decide whether Meisel was damaged as a proximate result of the fraud.

If you find that Meisel did not sustain any damage as a proximate result of the fraud, you will find for Michael Grunberg and Fanny Grunberg on the claim of fraud. If you find that Meisel did sustain damage as a result of the fraud, you must next decide the actual monetary loss sustained and I will talk to you in a few minutes about how to calculate damages.

---

[14] *Global Minerals and Metals Corp. v. Holme*, 35 A.D.3d 93, 100, 824 N.Y.S.2d 210, 215 (1st Dep't 2006); *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 234, 638 N.Y.S.2d 11, 14 (1st Dep't 1996).

[15] *Banque Franco-Hellenique de Commerce Int'l et Maritime, S.A. v. Christophides*, 106 F.3d 22, 27 (2d Cir. 1997); *Keywell Corp. v. Weinstein*, 33 F.3d 159, 164 (2d Cir. 1994); *Stuart Silver Assocs. v. Baco Dev. Corp.*, 245 A.D.2d 96, 99, 665 N.Y.S.2d 415, 417-18 (1st Dep't 1997); *88 Blue Corp. v. Reiss Plaza Assocs.*, 183 A.D.2d 662, 664, 585 N.Y.S.2d 14, 16 (1st Dep't 1992).

[16] *Levin v. Gallery 63 Antiques Corp.*, 04 CIV 1504 (KMK), 2006 WL 2802008 (S.D.N.Y. Sept. 28, 2006).

[17] *First Nat. State Bank of NJ v. Irving Trust Co.*, 91 A.D.2d 543, 457 N.Y.S.2d 17 (1st Dep't 1982), *aff'd*, 59 N.Y.2d 991, 466 N.Y.S.2d 682 (1983); *Sternberg v. Citicorp Credit Servs., Inc.*, 69 A.D.2d 352, 419 N.Y.S.2d 142 (2d Dep't 1979), *aff'd*, 50 N.Y.2d 856, 430 N.Y.S.2d 54 (1980); *200 East End Ave. Corp. v. Gen. Elec. Co.*, 5 A.D.2d 415, 172 N.Y.S.2d 409 (1st Dep't 1958), *aff'd*, 6 N.Y.2d 731, 185 N.Y.S.2d 816 (1959).

## Consider Damages Only If Necessary
(Adapted from Modern Federal Jury Instructions 77.01)

If the plaintiff has proven by clear and convincing evidence that either Michael Grunberg or Fanny Grunberg is liable on plaintiff's claim, then you must determine the damages to which the plaintiff is entitled.  However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

## Compensatory Damages
(Modern Federal Jury Instructions 77-3)

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendants' violation of the plaintiff's rights.  If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him or her for any injury proximately caused by the defendants' conduct.

These are known as "compensatory damages."  Compensatory damages seek to make the plaintiff whole – that is, to compensate him or her for the damage suffered

I remind you that you may award compensatory damages only for injuries that a plaintiff proves were proximately caused by a defendants' allegedly wrongful conduct.  The damages that you award must be fair and reasonable, neither inadequate or excessive.  You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he or she is reasonably likely to suffer in the near future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that

difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

## Damages

Plaintiff has the burden of proof with respect to damages. The measure of damages in an action for fraud and in a breach of fiduciary duty action based on fraud is the actual pecuniary loss sustained as a direct result of the wrong. This is known as the "out-of pocket" rule.[18] The "out-of pocket" rule measures loss by calculating the difference between the value of what plaintiff parted with and the value of what plaintiff received. In this case, that means the value of Meisel's 30% minority interest in the Partnership as of July 2005 when he sold his interest to Michael Grunberg and Ariel Grunberg less the $7.8 million dollars he received at the time of the sale.

Plaintiff has the burden of proof with respect to damages just as he has with respect to all other elements of his claims. He must prove his damages by clear and convincing evidence. In computing damages, you are not permitted to speculate or guess. The value of Meisel's 30% minority interest cannot be computed simply by calculating 30% of the value of the Properties as a whole. New York recognizes something called a minority discount and a lack of marketability discount, which means that a partnership interest owned by someone who is not in control of the

---

[18] *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996); *Reno v. Bull*, 226 N.Y. 546, 124 N.E. 144 (1919); Restatement (First) of Torts § 549(a) (1938).

business is worth less.[19]   Only expert testimony is sufficient to prove the value of plaintiff's minority interest as of July 2005.[20]   Plaintiff has not offered such expert testimony and you should take this into consideration as you attempt to calculate damages.  If you find that Meisel has not presented sufficient proof of what the value of his interest as of July 2005 then you cannot calculate damages and you must find in favor of defendants Michael Grunberg and Fanny Grunberg.

If you find that Meisel has presented sufficient proof of what the value of his interest was in July 2005 then you should use that value and subtract $7.8 million to determine Meisel's damages.

## Punitive Damages

If you should find that the defendants are liable for the plaintiff's injuries, then you may consider awarding punitive damages.   Punitive damages may only be recovered where defendants' acts were outrageously, maliciously, oppressively or wantonly done, and where defendants' conduct is aimed at the public generally.[21]   Punitive damages cannot be recovered for a fraud which constitutes only a private wrong.[22]

---

[19] *Haymes v. Haymes*, 298 A.D.2d 117, 748 N.Y.S.2d 542 (1st Dep't 2002); *Halpern v. Goldstein & Halpern, C.P.A.*, 18 A.D.3d 432. 795 N.Y.S.2d 599 (2d Dep't 2005).

[20] *Burns v. Burns*, 84 N.Y.2d 369, 375, 618 N.Y.S.2d 761, 764 (1994); *cf. Ribak v. State*, 38 N.Y.S.2d 869, 873-74 (N.Y. Ct. Cl. 1942).

[21] *Vasilopoulos v. Romano*, 228 A.D.2d 669, 645 N.Y.S.2d 501 (2d Dep't 1996); *Westinghouse Elec. Supply Co. v. Pyramid Champlain Co.*, 193 A.D.2d 928, 597 N.Y.S.2d 811 (3d Dep't 1993); *Diker v. Cathray Constr. Corp.*, 158 A.D.2d 657, 552 N.Y.S.2d 37 (2d Dep't 1990); *Robinson v. Paramount Pictures Corp.*, 122 A.D.2d 32, 504 N.Y.S.2d 472 (2d Dep't 1986); *Kelly v. Defoe Corp.*, 223 A.D.2d 529, 636 N.Y.S.2d 123 (2d Dep't 1996).

[22] *Kelly v. Defoe Corp*, 223 A.D.2d 529, 636 N.Y.S.2d 123 (2d Dep't 1996); *Simon v. Ernst & Young*, 223 A.D.2d 506, 637 N.Y.S.2d 375 (1st Dep't 1996); *Barclays Bank of New York, N.A. v. Heady Elec. Co., Inc.*, 174 A.D.2d 963, 571 N.Y.S.2d 650 (3d Dep't 1991); *Mom's Bagels of New York, Inc. v. Sig Greenbaum, Inc.*, 164 A.D.2d 820, 559 N.Y.S.2d 883 (1st Dep't 1990); *Diker v. Cathray Constr. Corp.*, 158 A.D.2d 657, 552 N.Y.S.2d 37 (2d Dep't 1990); *Sorbaro Co. v. Capital Video Corp.*, 168 Misc.2d 143, 646 N.Y.S.2d 445 (Sup. Ct. Dutchess Cty. 1996), *aff'd*, 245 A.D.2d 364, 667 N.Y.S.2d 388 (2d Dep't 1997); *Westinghouse Elec. Supply Co. v. Pyramid Champlain Co.*, 193 A.D.2d 928, 597 N.Y.S.2d 811 (3d Dep't 1993); *RKB Enters. v. Ernst & Young*, 182 A.D.2d

You may only award punitive damages if the plaintiff proves by clear and convincing evidence that the defendant's conduct was aimed at the public and was malicious and reckless, not merely unreasonable.  An act is malicious and reckless if it is done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the rights of others.

### Return to Courtroom
(New York Pattern Jury Instruction 1:24)

If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you have any questions about my instructions to you on the law, you have the right to return to the courtroom for the purpose of having such testimony read to you or have such question answered.

### Consider Only Testimony and Exhibits
(New York Pattern Jury Instruction 1:25)

In deciding this case, you may consider only the exhibits which have been admitted in evidence and the testimony of the witnesses as you have heard it in this courtroom (or as there has been read to you testimony given on examination before trial.  Under our rules of practice an examination before trial is taken under oath and is entitled to equal consideration by you notwithstanding the fact that it was taken before the trial and outside the courtroom).  However, arguments, remarks, and summation of the attorneys are not evidence nor is anything that I now say or may have said with regard to the facts, evidence.

### Juror's Use of Professional Expertise
(New York Pattern Jury Instruction 1:25A)

Although as jurors you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional

---

971, 582 N.Y.S.2d 814 (3d Dep't 1992); *Stegich v. Saab Cars USA, Inc.*, 177 Misc.2d 81, 676 N.Y.S.2d 756. (1st Dep't 1998).

expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.   You may not consider or speculate on matters not in evidence or matters outside the case.

### Exclude Sympathy
(New York Pattern Jury Instruction 1:27)

In reaching your verdict you are not to be affected by sympathy for any of the parties, what the reaction of the parties or of the public to your verdict may be, whether it will please or displease anyone, be popular or unpopular or, indeed, any consideration outside the case as it has been presented to you in this courtroom.   You should consider only the evidence – both the testimony and the exhibits – find the facts from what you consider to be the believable evidence, and apply the law as I now give it to you.   Your verdict will be determined by the conclusion you reach, no matter who the verdict helps or hurts.

### General Instruction – Admission by a Party – By Statement
(Adapted from New York Pattern Jury Instruction 1:55)

Testimony has been introduced that plaintiff personally or through his agents made statements in writing before he sold his Partnership interest concerning: (i) defendants' right to sell the Properties after plaintiff sold his Partnership interest; (ii) plaintiff's knowledge with respect to the value of the Properties; and (iii) plaintiffs' willingness to sell for a discount.   In particular, plaintiff made the following statements:

> "I assume that he would like to buy me out at a deep discount."
> (Defendants' Exhibit N)

> "Implicit in the meeting was their abandonment of a strategy of hoping I was ignorant of the market place valuations."
> (Defendants' Exhibit AA)

"The way they negotiate, and I am sure you understand this from your experience, is that they try to create their own subjective reality that touches on fact but then materially deviates from it in reaching a conclusion."
(Defendants' Exhibit EE)

"They are telling me that it is an exuberant market but they essentially don't want to recognize that in valuing my interest only theirs.  Interesting."
(Defendants' Exhibit EE)

Your position that the A line vacancies are due to a 3 or 4 year lull in the market and don't have rental or conversion value is contrary to market logic and experience is simply not credible."
(Defendants' Exhibit PP)

"If you sincerely believe that $22 million is the top line valuation or event $29,000,000 for that matter, I am fully prepared to sit with you and negotiate for your interest."
(Defendants' Exhibit PP)

"It is simply unreasonable to accept that as a pretty savvy developer you would categorically reject pricing that could easily be moved north of $40,000,000 unless you believed that [ ] the properties have an intrinsically higher present or future value in excess of that amount."
(Defendants' Exhibit PP)

"I fully recognize that the above involves my leaving significant sums on the table in that, literally, the day you acquire my interest were that to be the pricing you could turn around and sell the buildings using the BCRE offer as a starting point and pocket my share of $10,000,000 to $14,000,000 if not more of top line value."
(Defendants' Exhibit PP)

"As clearly indicated above, I am willing to structure a deal that is not only reasonable but substantially discounts my interest and is considerably less than I would receive were the properties sold to a third party now or in the future as a whole and certainly if they were converted.  Again, it is undeniable that just by doing so you would obtain an immediate windfall in terms of current value whether you choose to reserve your position and sell or hold for a bigger windfall upon conversion."
(Defendants' Exhibit PP)

"I know I could have gotten more, but in the end my mental and physical health meant more to me than an extra million or two in the face of an $8.0 million dollar offer."
(Defendants' Exhibit OOO)

Plaintiff admits that he made such statements, but still claims that he was tricked into selling his interest for $7.8 million.

If you find that by making such statements plaintiff, thereby admitted that: (i) he knew defendants might sell the Properties at any time after plaintiff sold his Partnership interest – including immediately after plaintiff sold his Partnership interest; (ii) before he elected to sell his Partnership interest for $7.8 million plaintiff was not relying on defendants' statements or purported representations regarding the value of the Properties; and (iii) plaintiff was willing to sell for a discount, you may consider those statements as evidence that plaintiff was not deceived by defendants, plaintiff did not rely on defendants statements and defendants' conduct did not cause any damage to plaintiff.

In deciding how much weight you will give to the statements, you can consider plaintiff's physical condition at the time the statement was made, the words used, the person to whom the statement was made, the time that passed between the making of the statement and the sale of his Partnership interest, all of the other circumstances and conditions existing at the time and place, and the other facts in evidence, as well as the reasonableness of plaintiff's explanation of the statements. You may consider the statements to be conclusive and binding on plaintiff, or you may ignore it altogether, or you may give it a weight between those two extremes, as you find proper under all the circumstances.

### General Instruction – Circumstantial Evidence
(New York Pattern Jury Instruction 1:70)

Facts must be proven by evidence. Evidence includes the testimony of a witness concerning what the witness saw, heard or did. Evidence also includes writings, photographs, or other physical objects which may be considered as proof of a fact. Evidence can be either direct or circumstantial. Facts may be provided either by direct or circumstantial evidence or by a

combination of both.   You may give circumstantial evidence less weight, more weight, or the same weight as direct evidence.

Direct evidence is evidence of what a witness saw, heard, or did which, if believed by you, proves a fact.  For example, let us suppose that a fact in dispute is whether I knocked over a water glass near the witness chair.  If someone testifies that he saw me knock over the glass, that is direct evidence that I knocked over the glass.

Circumstantial evidence is evidence of a fact which does not directly prove a fact in dispute but which permits a reasonable inference or conclusion that the fact exists.  For example, a witness testifies that he saw this water glass on the bench.  The witness states that, while he was looking the other way, he heard the breaking glass, looked up, and saw me wiping water from my clothes and from the papers on the bench.  This testimony is not direct evidence that I knocked over the glass; it is circumstantial evidence from which you could reasonably infer that I knocked over the glass.

Those facts which form the basis of an inference must be proved and the inference to be drawn must be one that may be reasonably drawn.  In the example, even though the witness did not see me knock over the glass, if you believe his testimony, you could conclude that I did.  Therefore, the circumstantial evidence, if accepted by you, allows you to conclude that the fact in dispute has been proved.

In reaching you conclusion you may not guess or speculate.  Suppose, for example, the witness testifies that the water glass was located equally distant from the court clerk and me.  The witness states that he heard the breaking of glass and looked up to see both the court clerk and me brushing water from our clothes.  If you believe that testimony, you still could not decide on that evidence alone who knocked over the water glass.  Where these are the only proved facts,

it would be only a guess as to who did it.  But, if the witness also testifies that he heard the court clerk say "I am sorry," this additional evidence would allow you to decide who knocked over the water glass.

### General Instruction – Interested Witness – Generally
(New York Pattern Jury Instruction 1:91)

The plaintiff and the defendant both testified before you.  As parties to the action, both are interested witnesses.

An interested witness is not necessarily less believable than a disinterested witness.  The fact that he is interested in the outcome of the case does not mean that he has not told the truth.  It is for you to decide from the demeanor of the witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by his interest.  You may, if you consider it proper under all the circumstances, not believe the testimony of such a witness, even though it is not otherwise challenged or contradicted.  However, you are not required to reject the testimony of such a witness, and may accept all or such part of his testimony as you find reliable and reject such part as you find unworthy of acceptance.

### General Instruction – Use of Pre-Trial Deposition Upon Trial
(New York Pattern Jury Instruction 1:94)

You are about to hear the lawyer for (plaintiff, defendant) read portions of a document referred to as an examination before trial of (plaintiff, defendant, the witness AB).  You may hear the lawyers refer to this document as an EBT or deposition.

At some point before this trial began the (plaintiff, defendant, witness AB), under oath, answered certain questions put to (him, her) by the lawyers for (plaintiff, defendant) put to (him, her) by the lawyer for (plaintiff, defendant, all parties).  A stenographer recorded the questions

and answers and transcribed them into a document which the (plaintiff, defendant, witness AB) later signed before a notary public. The portions of the transcript of the examination before trial that you will hear are to be considered as if (plaintiff, defendant, witness AB) were testifying from the witness stand.

### General Instructions – Special Verdicts
(Adapted from New York Pattern Jury Instruction 1:97)

This case will be decided on the basis of the answers that you give to certain questions that will be submitted to you. Each of the questions asked calls for a "Yes" or "No" answer. While it is important that the views of all jurors be considered, all of you must agree on the answers to each question. When all of you have agreed on any answer, the foreperson of the jury will write the answer in the space provided for each answer and each juror will sign in the appropriate place to indicate (his, her) agreement or disagreement. As you will note from the wording of the questions, you need not consider certain subsequent questions if your answer to a previous question is "No."

When you have answered all the questions that require answers, report to the court.

Do not assume from the questions or from the wording of the questions or from my instructions on them what the answers should be.

### Conclusion
(New York Pattern Jury Instruction 1:28)

I have now outlined for you the rules of law that apply to this case and the processes by which you weigh the evidence and decide the facts. In a few minutes you will retire to the jury room for your deliberations. (Traditionally, Juror No. 1 acts as foreperson. Your first order of business when you are in the jury room will be the election of a foreperson.) In order that your deliberations may proceed in an orderly fashion, you must have a foreperson, but of course, his

or her vote is entitled to no greater weight than that of any other juror.  Your function – to reach a fair decision from the law and the evidence – is an important one.  When you are in the jury room, listen to each other, and discuss the evidence and issues in the case among yourselves.  It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view of reaching agreement on a verdict, if you can do so without violating your individual judgment and your conscience.  While you should not surrender conscientious convictions of what the truth is and of the weight and effect of the evidence and while each of you must decide the case for yourself and not merely consent to the decision of your fellow jurors, you should examine the issues and the evidence before you with candor and frankness, and with proper respect and regard for the opinions of each other.  Remember in your deliberations that the dispute between the parties is, for them, a very important matter.  They and the court rely upon you to give full and conscientious deliberation and consideration to the issues and evidence before you.  By so doing, you carry out to the fullest your oaths as jurors to truly try the issues of this case and render a true verdict.

### Alternate Jurors
(New York Pattern Jury Instruction 1:29)

At this point, I am going excuse our alternate jurors.  As I told you before, your services were required as a safeguard against the possibility that one of the regular jurors might be unable to complete his or her service.  Fortunately this has not occurred.  I commend the alternate jurors for their faithful attendance and attention.  On behalf of the Court and the parties, I thank you for your service.

### General Instruction –Supplemental Charge – To Jury Unable to Agree
(New York Pattern Jury Instruction 1:100)

It is highly desirable that you agree upon a verdict, if you reasonably can.  The case is important to the parties involved, and its presentation has involved expense to both sides.  If you fail to agree upon a verdict, the case will have to be tried before another jury selected in the same manner as you were chosen.  There is no reason to believe that the case will ever be submitted to a jury more competent to you.

By pointing out to you the desirability of your reaching a verdict, I am not, in any way, suggesting that you surrender your conscientious convictions about the truth and about the weight and effect of all the evidence.  However, in most cases, absolute certainly cannot be expected, and each of you must decide the case for yourselves by examining the questions with candor and frankness.  It is your duty to give careful consideration to the opinion and reasoning of your fellow jurors, and they must give similar consideration to all of the evidence, it is your duty to agree upon a verdict, if you can do so without violating your individual judgment and conscience.